**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | |
|---|---|
| **DAWN VAN BRUNT**, | Case No. 3:19-cv-00170-BRM-TJB |
| Plaintiff, | Judge Brian R. Martinotti |
| vs. | Magistrate Judge Tonianne J. Bongiovanni |
| **WELLS FARGO BANK, N.A.**, | |
| Defendants. | |

**RESPONSE OF DAWN VAN BRUNT TO DEFENDANT**
**WELLS FARGO BANK, N.A.'S MOTION TO DISMISS**

**DANN LAW**
Javier L. Merino
Marc E. Dann
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: 216-373-0539
Fax: 216-373-0536
notices@dannlaw.com

# I.     TABLE OF CONTENTS

I.   TABLE OF CONTENTS ................................................................................. i

II.  TABLE OF AUTHORITIES ........................................................................ ii

III. FACTUAL BACKGROUND ........................................................................ 1

IV.  LEGAL STANDARD .................................................................................. 2

V.   ARGUMENT .............................................................................................. 3

    A.  VAN BRUNT'S CFA AND COMMON LAW FRAUD CLAIMS MEET THE
       HEIGHTENED PLEADING STANDARD OF FED. R. CIV. P. 9(b) ............................ 3

    B.  VAN BRUNT SUFFICIENTLY PLEADS A CLAIM FOR VIOLATIONS OF
       THE CFA ........................................................................................................ 5

      1.  Van Brunt Plausibly Alleges a Causal Relationship Between
         Wells Fargo's "Calculation Error" and her Ascertainable Losses. ............................. 6

         a.  The Doctrine of Judicial Estoppel and the Exhibits Attached to
            Wells Fargo's Motion Prohibit Wells Fargo from Claiming that the HOA's
            Foreclosure Caused Van Brunt's Damages. ........................................................... 7

         b.  Van Brunt Plausibly Pleads that Wells Fargo's Conduct Resulted in her
            Damages ............................................................................................................. 8

         c.  Van Brunt Has Alleged Facts Within her Knowledge to Support that
            There Is a Causal Nexus Between Wells Fargo's Conduct and her Damages ...... 10

      2.  Van Brunt Plausibly Pleads that Wells Fargo Knowingly Concealed the Faulty
         Calculation Error and Intended that Van Brunt Rely Upon the Concealment ............ 12

    C.  VAN BRUNT SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF THE
       IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ............................ 14

      1.  Wells Fargo Engaged in Conduct Without Good Faith and for the Purpose of
         Foreclosing on Van Brunt's Home. ...................................................................... 15

      2.  Wells Fargo's Conduct Shows that It Did Not Consider Van Brunt's Breach of
         the Mortgage Loan to a Material Breach or Excused Van Brunt's Performance. ...... 16

    D.  VAN BRUNT SUFFICIENTLY ALLEGES A CLAIM FOR COMMON LAW
       FRAUD ......................................................................................................... 18

    E.  VAN BRUNT SUFFICIENTLY ALLEGES A CLAIM FOR INTENTIONAL
       INFLICTION OF EMOTIONAL DISTRESS .................................................. 20

    F.  VAN BRUNT WITHDRAWS HER CLAIMS FOR NEGLIGENT INFLICTION OF
       EMOTIONAL DISTRESS AND NEGLIGENCE ........................................... 22

    G.  THE ECONOMIC LOSS DOCTRINE DOES NOT APPLY TO VAN BRUNT'S
       NON-STATUTORY TORT CLAIMS ............................................................. 22

    H.  VAN BRUNT IS ENTITLED TO PUNITIVE DAMAGES ............................ 26

VI.  CONCLUSION ........................................................................................ 28

## II.    TABLE OF AUTHORITIES

**Cases**

*49 Prospect St. Tenants Asso v. Sheva Gardens*, 547 A.2d 1134 (N.J. App. Div. 1988)............. 22

*Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337 (D.N.J. 2006)........................ 20

*Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282 (D.N.J. 2009)................................................ 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................................................ 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................................... 3

*Biederman v. Mitsubishi Motors Credit of Am.*, 753 A.2d 1251 (N.J. Super. Ct. 2000).............. 17

*Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009) ......................................................... 6

*Bubbles N' Bows, LLC v. Fey Publ'g Co.*,
    Civil Action No. 06-5391 (FLW), 2007 U.S. Dist. LEXIS 60790 (D.N.J. Aug. 20, 2007) ..... 23

*Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988) ........................................... 20, 21

*Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*,
    638 A.2d 1288, (N.J. 1994).......................................................................................... 22, 23, 24

*Cox v. Sears Roebuck & Co.*, 647 A.2d 454 (N.J. 1994)................................................................. 5

*D'Agostino v. Maldonado*, 78 A.3d 527  (N.J. 2013)................................................................... 11

*D'Alessandro v. Ocwen Loan Servicing, LLC*, No. 18-cv-01290 (PGS)(LHG),
    2018 U.S. Dist. LEXIS 86482  (D.N.J. May 23, 2018) ........................................................... 5

*Ferguson v. JONAH*, 143, 136 A.3d 447 (N.J. Super. Ct. 2014)................................................... 11

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).............................................................. 3

*Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997)................................................... 5, 18

*Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103 (N.J. 2011)........................................................ 5

*Graddy v. Deutsche Bank*, No. 11-3038 (RBK/KMW),
    2013 U.S. Dist. LEXIS 41203 (D.N.J. Mar. 25, 2013).......................................................... 14

*Grande Vill. LLC v. CIBC Inc.*, No. 1:14-cv-3495 (NLH/JS),
    2018 U.S. Dist. LEXIS 80662 (D.N.J. Mar. 30, 2018)..................................................... 16, 17

*Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291 (3d Cir. 1995)........................................... 22

*Hankins v. Philadelphia Contributionship Ins. Co.*, 771 F.App'x 148, 151 (3d Cir. 2019)........... 7

*In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198 (3d Cir. 2002) ..................................................... 3

*Jerkins v. Anderson*, 922 A.2d 1279 (N.J. 2007)......................................................................... 24

*Kam Int'l v. Franco Mfg. Co.*, Civil Action No. 2:10-02733,
    2010 U.S. Dist. LEXIS 135455 (D.N.J. Dec. 22, 2010)......................................................... 22

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
    No. 17-13544 (WHW-CLW), 2018 U.S. Dist. LEXIS 147746 (D.N.J. Aug. 29, 2018). ......... 23

*Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136 (3d Cir. 2019) .................................................. 13

*Lone Star Nat'l Bank, Nat'l Ass'n v. Heartland Payment Sys.*,
    729 F.3d 421 (5th Cir. 2013) .............................................................................................. 22, 24

*Maertin v. Armstrong World Indus.*, 241 F. Supp. 2d 434 (D.N.J. 2002) .................................... 25

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    No. 2:12-cv-07849 (WHW), 2013 U.S. Dist. LEXIS 146209  (D.N.J. Oct. 9, 2013) ............... 4

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ...................................................... 6

*Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938........................................................... 25

*Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427 (D.N.J. 2012) .............................................. 6, 11

*Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86 (3d Cir. 2008) .............................................. 16

*People Express Airlines v. Consol. Rail Corp.*, 495 A.2d 107 (N.J. 1985) .................................. 23

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)............................................................. 3

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998) ................................. 3

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) ................. 7

*Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786 (3d Cir. 1984)......................... 4

*Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997)............................................ 14, 15

*Sun Chem. Corp. v. Fike Corp.*, Civil Action No. 13-4069 (JMV),
   2017 U.S. Dist. LEXIS 202865 (D.N.J. Dec. 11, 2017)........................................................... 6

*Unifoil Corp. v. Cheque Printers & Encoders*, 622 F. Supp. 268 (D.N.J. 1985) ........................ 23

*United Jersey Bank v. Kensey*, 704 A.2d 38 (N.J. Super. Ct. App. Div. 1997)............................ 23

*Varacallo v. Massachusetts Mut. Life Ins. Co.*, 752 A.2d 807 (N.J. Super. App. Div. 2000)........ 7

*Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132 (3d Cir. 2014).................................................. 5

*Wells Fargo Bank, N.A. v. Rivera*, No. A-2042-14T4,
   2016 N.J. Super. Unpub. LEXIS 1285 (N.J. Super. Ct. App. Div. June 6, 2016) ............. 1, 2, 7

*Westmont Dev. Grp., LLC v. Twp. of Haddon*, 625 F. Supp. 2d 178 (D.N.J. 2009).................... 17

*Wilkins v. ING Bank FSB*, Civil Action No. 10-5334 (SRC),
   2011 U.S. Dist. LEXIS 101560 (D.N.J. Sep. 1, 2011) ........................................................... 19

*Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239 (D.N.J. 2001) .................................... 20

**Statutes**

N.J.S.A. § 12A:2-103......................................................................................................................... 15

N.J.S.A. § 2A:15-5.10 ....................................................................................................................... 26

N.J.S.A. § 2A:15-5.12 ................................................................................................................. 26, 28

N.J.S.A. § 56:8-19.............................................................................................................................. 11

**Other Authorities**

Restatement (Second) of Contracts § 241......................................................................................... 16

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................................ 2

Fed. R. Civ. P. 9 ........................................................................................................................... 3, 18

Plaintiff Dawn Van Brunt ("Van Brunt"), through counsel, for her response to the motion to dismiss (D.E. 34-1 or the "Motion") filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), states:

### III.    FACTUAL BACKGROUND

This case concerns material errors when Wells Fargo, in processing a loss mitigation application from Van Brunt, by its own admission, improperly denied Van Brunt a trial modification based on a "faulty calculation error". Wells Fargo then concealed the existence of this serious mistake that Wells Fargo, by its own admissions, knew or should have known about for at least three years after the faulty calculation error was allegedly corrected. In 2009, Van Brunt began experiencing financial difficulties and fell behind on her mortgage note. *See First Amended Complaint* ("FAC") (D.E. 30, ¶ 39). In February 2012, Van Brunt, determined to save the home, sought a loan modification from Wells Fargo. (D.E. 30, ¶ 40).

On November 19, 2012, Wells Fargo filed a foreclosure action in the Ocean County Superior Court, Case No. F-015994-12 (the "Foreclosure Case"). (D.E. 30, ¶ 41). On or about October 11, 2013, Wells Fargo denied Van Brunt for a trial modification that would have allowed her to remain in her home where she resided with her family. (D.E. 30, ¶ 42). On July 1, 2014, Wells Fargo secured Final Judgment in the Foreclosure Case wherein the court stated that Strickland Farm Condominium Association, Inc. (the "HOA") filed a non-contesting answer which did not dispute the priority or validity of Wells Fargo's mortgage. (D.E. 34-8). Artem Rybakov ("Rybakov") purchased the HOA's interest in Van Brunt's home on February 3, 2014, but as indicated by his Motion to Intervene in the Foreclosure Case, could not "redeem [his] house." *Wells Fargo Bank, N.A. v. Rivera*, No. A-2042-14T4, 2016 N.J. Super. Unpub. LEXIS 1285 (N.J. Super. Ct. App. Div. June 6, 2016). A copy of the opinion is attached as *Exhibit 1*. Rybakov

1

"received a sheriff's deed to the property, which noted that the property was still subject to Wells Fargo's mortgage lien." *Id.* at \*4-5. Rybakov "believed he could circumvent the various affordable housing restrictions on resale by purchasing the property at the sheriff's sale, and then wait for the restrictions to be somehow lifted through the mortgage foreclosure action." Id. at \*5. Van Brunt and her family were forced to move out of her home on or about September 3, 2014 because Wells Fargo was granted Final Judgment, not because Rybakov purchased the HOA's interest. (D.E. 30, ¶ 43). Rybakov lost the property in the mortgage foreclosure action against Van Brunt to Wells Fargo when he bought Van Brunt's home on January 5, 2015 at a Sheriff's Sale. (D.E. 34-9); *Rivera*, at \*12. The Foreclosure Case did not conclude until July 11, 2017. (D.E. 30, ¶ 44). On May 16, 2018, Wells Fargo sold Van Brunt's home. A copy of the May 16, 2018 Deed is attached as ***Exhibit 2***.

On or about August 3, 2018, Wells Fargo filed a Form 10-Q where it admitted the existence of the faulty calculation error. (D.E. 30, ¶¶ 45-46). On or about September 20, 2018, Wells Fargo sent correspondence to Van Brunt (the "WF Letter") with the subject: "We made a mistake when we reviewed you for payment assistance." (D.E. 30, ¶ 47; D.E. 30-4). The WF Letter states, "When you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation, and we're sorry. If it had been correct, you would have been approved for a trial modification." (D.E. 30, ¶ 49; D.E. 30-4). Wells Fargo and Van Brunt attended an unsuccessful three hour mediation wherein Wells Fargo failed to disclose any information related to the faulty calculation error. (D.E. 30, ¶ 57).

## IV.   LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept

all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-679.

The FAC meets and exceeds these standards.

## V.   ARGUMENT

### A.   VAN BRUNT'S CFA AND COMMON LAW FRAUD CLAIMS MEET THE HEIGHTENED PLEADING STANDARD OF FED. R. CIV. P. 9(b)

Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) requires allegations concerning the particularity of the circumstances of the alleged fraud. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998). Pleading the date, place, or time of the fraud is not necessary so long as plaintiffs use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Machinery v. Southmost*

3

*Machinery*, 742 F.2d 786, 791 (3d Cir. 1984). Several Courts have held that Rule 9(b)'s heightened pleading standard should be applied with "some flexibility" and the standard should be relaxed in cases based on fraudulent omissions or concealment. *Rolo*, 155 F.3d at 658; *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 2:12-cv-07849 (WHW), 2013 U.S. Dist. LEXIS 146209, at *40 (D.N.J. Oct. 9, 2013). "This is because 'a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" *Majdipour*, 2013 U.S. Dist. LEXIS 146209, at *41.

Wells Fargo admits in the WF Letter that it made a false representation. (D.E. 30-4). Wells Fargo is well aware of what happened and provided the "alternative means of injecting precision and some measure of substantiation" all by itself. (D.E. 30-4). As detailed in the FAC, Van Brunt provides the "most basic information" related to Wells Fargo's representation. On or about October 11, 2013, Wells Fargo made the decision to deny Van Brunt's request for a loan modification because of the faulty calculation error, and then, shortly after, Wells Fargo conveyed this information to Van Brunt. (D.E. 30, ¶ 42). The FAC provides the who (Wells Fargo), what (informed Van Brunt that she was denied a trial modification), when (on or about October 11, 2013), and how (Wells Fargo used a faulty mortgage loan modification underwriting tool) of the events at issue. (D.E. 30, ¶ 42; D.E. 30-3).

Van Brunt provides details as to why it is plausible that Wells Fargo knowingly concealed or omitted the existence of calculation error for at least three years. Wells Fargo entered into consent orders and was subject to strict oversight. (D.E. 30, ¶¶ 12-38). Wells Fargo was required to regularly and properly audit its mortgage modification tool for compliance. (D.E. 30, ¶¶ 13, 19). Wells Fargo had motive to conceal errors to avoid further penalty. (D.E. 30, ¶ 26) ("Well Fargo decided not to tell anybody it had discovered this error—likely as part of an effort to avoid a larger

4

penalty from the OCC and ensure that the OCC would terminate its supervision of the Bank under the 2011 Consent Order and lift the business restrictions it had imposed in 2015."). Wells Fargo admits that the faulty calculation error affected customers as early as April 13, 2010 and continued to cause wrongful denials of trial modifications until October 20, 2015. (D.E. 30-3). Despite discovering the error in October 2015 and the Foreclosure Case not concluding until July 11, 2017, Wells Fargo did not inform the public until June 30, 2018 and Van Brunt until September 2018. (D.E. 30-3; D.E. 30-4). It is certainly plausible that Wells Fargo discovered the faulty calculation error earlier than October 2015 based on the requirement that Wells Fargo regularly audits its loss mitigation procedures, Wells Fargo's motive to avoid penalty, and Wells Fargo's past behavior in failing to disclose the faulty calculation error for three years.

## B.    VAN BRUNT SUFFICIENTLY PLEADS A CLAIM FOR VIOLATIONS OF THE CFA

Since its enactment in 1960, the CFA "is one of constant expansion of consumer protection." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 364 (N.J. 1997). The CFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1114 (N.J. 2011). To state a CFA claim, a consumer must plead: (1) An unlawful practice; (2) an ascertainable loss; and, (3) a causal relationship between the two. *Id.* at 1115. Even if a consumer does not state an ascertainable loss, the consumer "could nonetheless demonstrate a violation of the CFA and, by doing so, recover attorney's fees and costs." *D'Alessandro v. Ocwen Loan Servicing, LLC*, No. 18-cv-01290 (PGS)(LHG), 2018 U.S. Dist. LEXIS 86482, at *14 (D.N.J. May 23, 2018) (quoting *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132, 141 (3d Cir. 2014)); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 465 (N.J. 1994).

Van Brunt's CFA claim alleges that Wells Fargo committed at least four violations: (1) Wells Fargo misrepresented to Van Brunt that she did not qualify for a trial modification, when in fact she did qualify for a trial modification that would have allowed her to remain in her home. (D.E. 30, ¶ 66; D.E. 30-4); (2) Wells Fargo discovered the existence of the faulty calculation error on October 20, 2015, at the latest, but knowingly concealed or omitted its existence from Van Brunt for nearly three years. (D.E. 30, ¶ 70; D.E. 30-3); (3) Wells Fargo failed to correct the faulty calculation error from April 23, 2010 to October 20, 2015. (D.E. 30, ¶ 72); and, (4) Wells Fargo refuses to provide complete information to Van Brunt related to the faulty calculation error and how it corrected the error. (D.E. 30, ¶ 73).

### 1.    Van Brunt Plausibly Alleges a Causal Relationship Between Wells Fargo's "Calculation Error" and her Ascertainable Losses.

"To establish causation … a consumer merely needs to demonstrate that he or she suffered an ascertainable loss as a result of the unlawful practice." *Sun Chem. Corp. v. Fike Corp.*, Civil Action No. 13-4069 (JMV), 2017 U.S. Dist. LEXIS 202865, at *17 (D.N.J. Dec. 11, 2017) (internal quotations omitted). "The CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable.'" *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009).

"CFA causation is not infinitely elastic in a but-for sense; a plaintiff's losses must be particularly proximate to a misrepresentation or unlawful act of the defendant condemned by the [CFA]." *Sun. Chem.*, 2017 U.S. Dist LEXIS 202856, at *17-18 (quoting *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 437 (D.N.J. 2012)); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012). "The Supreme Court of New Jersey has explained that proximate cause is that combination of logic, common sense, justice, policy, and precedent that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery."

*Hankins v. Philadelphia Contributionship Ins. Co.*, 771 F.App'x 148, 151 (3d Cir. 2019) (citations and internal quotations omitted). "So long as the injury or harm suffered was within the realm of reasonable contemplation, the injury or harm is foreseeable." *Id.* "Because the foreseeability determination often requires a close analysis of facts, it is generally a jury issue." *Id.* Van Brunt is required to prove that Wells Fargo's conduct was a cause of her damages, not the sole cause of loss. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 752 A.2d 807 (N.J. Super. App. Div. 2000).

### a. The Doctrine of Judicial Estoppel and the Exhibits Attached to Wells Fargo's Motion Prohibit Wells Fargo from Claiming that the HOA's Foreclosure Caused Van Brunt's Damages.

"Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). "[I]t is designed to prevent litigants from playing fast and loose with the courts." *Id.* (internal quotations omitted). "The basic principle ... is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.*

As an initial matter, although Rybakov purchased the HOA's interest on February 3, 2014, he attempted to intervene in the Foreclosure Case. (D.E. 34-6; *see Rivera, Exhibit 1*). Van Brunt was forced out of her home after Wells Fargo secured final judgment in the Foreclosure Case. (D.E. 30, ¶ 43). Wells Fargo pursued a Sheriff's Sale and bought Van Brunt's home on January 5, 2015. (D.E. 34-9). According to the information that Wells Fargo relies on in support of its Motion, Wells Fargo forced Van Brunt out of her home and pursued the Sheriff's Sale that extinguished her claim to her home. This conclusion is supported by the New Jersey Superior Court's opinion

affirming the denial of Rybakov's attempt to intervene in the Foreclosure Case. *See Rivera, Exhibit 1*. The Court held that Rybakov "did not acquire the condominium association's judgment lien in the first sheriff's sale, but rather what, if anything, remained of [Van Brunt's]s ownership interest in the underlying property. *Rivera*, at *10. Wells Fargo is judicially estopped from trying to claim that the HOA's foreclosure caused Van Brunt to lose her home.

Additionally, although Van Brunt is not required to show that Wells Fargo is the only party that caused her loss, logic would flow that Van Brunt would have had every incentive to resolve the HOA foreclosure had Wells Fargo offered her the October 2013 modification as they were supposed to. Instead, the Wells Fargo denial extinguished any incentive she had to resolve the foreclosure and prevent the February 2014 sale. Further, Van Brunt requests monetary relief related to Wells Fargo's violations of the CFA, not specific performance of her home. Wells Fargo's argument that the HOA's foreclosure destroys the causal nexus ignores several facts: (1) the incorrect modification denial took place before the HOA sale; and (2) Wells Fargo did not sell Van Brunt's home until May 16, 2018. (D.E. 30, ¶ 42; D.E. 34-6; *Exhibit 2*). A careful review of the filings in the Foreclosure Case indicate that Wells Fargo's request for final judgment is what ultimately caused Van Brunt to be removed from her home.

      **b.**    **Van Brunt Plausibly Pleads that Wells Fargo's Conduct Resulted in her Damages.**

At the pleading stage, Van Brunt's factual allegations and the exhibits to the FAC are to be considered, not Wells Fargo's contradictory statements. Van Brunt sufficiently pleads that Wells Fargo's faulty calculation error lead to misrepresentations and knowingly omissions, which in turn resulted in Wells Fargo obtaining final judgment and buying Van Brunt's home at a Sheriff's Sale and Van Brunt's other pecuniary and non-pecuniary damages.

In the WF Letter, Wells Fargo states: "When you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation, and we're sorry. If it had been correct, you would have been approved for a trial modification." (D.E. 30-4). The WF Letters is an admission by Wells Fargo that it improperly denied Van Brunt for a trial modification. (D.E. 30-4). The FAC provides the date of that decision - on or about October 11, 2013, Wells Fargo informed Van Brunt that she did not qualify for a trial modification. (D.E. 30, ¶ 42). Since Wells Fargo admits that Van Brunt was denied a trial modification based on a "faulty calculation," Van Brunt alleges the date of that decision, and Van Brunt was forced out of her home after Wells Fargo obtained final judgment in the Foreclosure Case, Van Brunt provides factual basis for her allegation that her loss mitigation application denial was impacted by Wells Fargo's calculation error.

Wells Fargo wants to raise the pleading burden to require Van Brunt to make allegations outside of the scope of the instant matter. As discussed, *supra*, the HOA's foreclosure did not result in the superior sale of Van Brunt's home and Van Brunt was only forced to move out of her home after Wells Fargo obtained final judgment. Wells Fargo wants Van Brunt to allege that she would have accepted a trial modification offer, remitted all trial modification payments, remitted all permanent modification payments. (D.E. 34-1, pp. 12-13). However, Van Brunt is required to plead that her claims are plausible, not certain, and Wells Fargo provides no authority that Van Brunt must plead allegations related to every single possible variable. Nonetheless, Van Brunt alleges that she reached out to Wells Fargo, who assured her that she would be approved, in order to secure a loan modification for her first home that she worked very hard to purchase. (D.E. 30, ¶ 40; D.E. 30-6). Van Brunt's allegations indicate that she intended to make the necessary trial modification payments and every single permanent modification payment in order to save her

home. Wells Fargo fails to point to any allegation or exhibit of the FAC to show that Van Brunt did not want to save her home.

> c.   **Van Brunt Has Alleged Facts Within her Knowledge to Support that There Is a Causal Nexus Between Wells Fargo's Conduct and her Damages.**

The FAC points to categories of damages that are directly and proximately caused by Wells Fargo's conduct. Using the "combination of logic, common sense, justice, policy, and precedent" it is clear that Wells Fargo's faulty calculation error is the proximate cause of Van Brunt's damages.

Wells Fargo took away the opportunity for Van Brunt to obtain a permanent modification and remain in her home. (D.E. 30, ¶ 60(A)). This is supported the notion of common sense and certainly "within the realm of reasonable contemplation." Van Brunt's Financial Rationale provides context concerning Van Brunt's commitment to staying in her home. (D.E. 30-6). Van Brunt forfeited her Section 8 eligibility for the opportunity to own a home for her first time. (D.E. 30, ¶ 60(b); D.E. 30-6). Van Brunt reached out to Wells Fargo in February 2012, before Wells Fargo filed the Foreclosure Case, to request a loan modification. (D.E. 30, ¶ 40). Wells Fargo assured Van Brunt that she would be approved for a trial modification but filed for foreclosure before reviewing her application. (D.E. 30, ¶¶ 40-41; D.E. 30-6). Van Brunt had to pay rent that was at least $150.00 per month higher than her mortgage payment. (D.E. 30, ¶ 60(C)). Van Brunt wished to keep her family together in her home. (D.E. 30-6). Van Brunt's words indicate that she would have accepted a trial modification and wanted to remain in her home.

Wells Fargo took away Van Brunt's opportunity to rehabilitate her credit standing. (D.E. 30, ¶ 62(I)). Van Brunt's previous employer would not rehire her and she was forced to accept a large salary reduction due to credit screening. (D.E. 30, ¶ 60(E)). Van Brunt could not obtain an automobile loan and could not be a co-signer on her son's student loans. (D.E. 30, ¶ 60(I)(b)-(c)).

Wells Fargo waited over five years to reach out to consumer reporting agencies to ask them to remove any negative reporting. (D.E. 30-4).

Additionally, Van Brunt suffered extreme emotional distress due to the faulty calculation error, continuance of the foreclosure for approximately four years after the error, loss of her home, and the effects of Wells Fargo's negative credit reporting. (D.E. 30, ¶ 60(H)). Van Brunt's emotional distress required medical treatment for major and minor strokes resulting from the lasting effect of the stress caused by Wells Fargo. (D.E. 30, ¶ 60(G)). While these damages are not traditionally considered to be "ascertainable losses" necessary to bring a CFA claim, they are considered "damages sustained" – i.e. if a plaintiff proves an ascertainable loss, the plaintiff can recover for all damages sustained including non-economic damages. *Ferguson v. JONAH*, 143, 136 A.3d 447, 455-456 (N.J. Super. Ct. 2014). Further, the CFA permits a Court to award "additional damages" in the form of "any other appropriate legal or equitable relief." N.J.S.A. § 56:8-19. "The CFA contemplates that courts will fashion individualized relief appropriate to the specific case, combining legal and equitable remedies in some settings." *D'Agostino v. Maldonado*, 78 A.3d 527, 545 (N.J. 2013). As the CFA does not place any limit on "any other appropriate legal or equitable relief" and taking into consideration Wells Fargo's conduct, Van Brunt believes the award of emotional distress damages is appropriate in the instant matter.

Wells Fargo's reliance on *Mickens v. Ford Motor Co.,* 900 F. Supp. 2d 427 (D.N.J. 2012) is misplaced because the distinguishable factual circumstances. In *Mickens*, the plaintiff alleged that, if the defendant reported a vehicle defect to the New Jersey Division of Consumer Affairs ("DCA"), a third-party, the DCA would have taken certain actions. *Id.* at 438. Allegedly, those actions would have "dissuaded or prevented" the plaintiff from purchasing the vehicle. *Id.* The Court found no causal link because the plaintiff did not allege that he would have even considered

the guidance of the DCA. *Id.* ("In short, there is no plausible factual allegation that a report to the Division of Consumer Affairs, if it had occurred, would have 'prevented' this purchase."). Further, the plaintiff failed to "allege facts to establish that the Division of Consumer Affairs has the power to take any of the hypothetical remedial actions that he alleges or, having that power, would exercise it." *Id.* at 439. Further highlighting Wells Fargo's misplaced reliance on *Mickens*, the Court states, with respect to the plaintiff's second and third CFA claims:

> **These causation allegations are statements by Mickens about his own knowledge and intent, facts within his control.** They do not share the infirmity of the causation allegations in Count I, which required speculation about intervening actions that the Division of Consumer Affairs would have taken if Ford had reported the defect, and the actions Mickens and other consumers would have taken as a result.

*Id.* at 447 (emphasis added).

Van Brunt's causation allegations are also statements by Van Brunt about her own knowledge and intent, or facts within her control. Van Brunt reached out to Wells Fargo for mortgage assistance and Wells Fargo assured her that she would be approved. Wells Fargo, through the faulty calculation error, took away the opportunity for Van Brunt to remain in her home and caused her to suffer both pecuniary and non-pecuniary damages, and then concealed its malfeasance for at least three years.

### 2. Van Brunt Plausibly Pleads that Wells Fargo Knowingly Concealed the Faulty Calculation Error and Intended that Van Brunt Rely Upon the Concealment.

Although Wells Fargo argues otherwise, Van Brunt's claims based on Wells Fargo's misrepresentation that she did not qualify for a trial modification and Wells Fargo's failure to correct the faulty calculation error before October 2015 do not constitute the knowing concealment, suppression, or omission of material facts. These actions by Wells Fargo are properly classified as a misrepresentation and unconscionable commercial practice, respectfully.

The Third Circuit holds that "malice, intent, knowledge, or other conditions of a person's mind may be alleged generally." *Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136, 140 (3d Cir. 2019). A plaintiff can allege factual information that "lend themselves to a reasonable inference" that the defendant had knowledge of or should have known of a false representation. *Id.* at 140-141. With Van Brunt's two claims that Wells Fargo knowingly concealed, suppressed, or omitted information, Van Brunt has pled facts to support a reasonable inference that Wells Fargo knowingly concealed or omitted the faulty calculation error from Van Brunt for a minimum of three years and Wells Fargo refuses to provide complete information to Van Brunt can related to the faulty calculation error and how it corrected the error. (D.E. 30, ¶¶ 56-58, 70, 73; D.E. 30-3).

Through its Form 10-Q, Wells Fargo admits that it corrected the faulty calculation error on or about October 20, 2015. (D.E. 30-3). Wells Fargo conveniently waited until June 30, 2018 to disclose this information to the public. (D.E. 30-3). Wells Fargo claims that it "substantially completed its internal review" and "accrued $8 million to remediate customers." (D.E. 30-3). Well Fargo corrected the faulty calculation error in 2015, waited three years to complete its internal review, and waited until it had $8 million set aside to inform the public. Wells Fargo then waited over two more months to notify Van Brunt of the existence of the faulty calculation error. (D.E. 30-4). Wells Fargo may have provided Van Brunt with her loan file, but, despite completing an internal review, it has failed to explain how the faulty calculation error impacted the wrongful October 2013 decision or how it corrected the error. Wells Fargo's conduct in waiting to release information related to the faulty calculation error and only providing vague information related to the faulty calculation error supports the inference that Wells Fargo knowingly concealed, suppressed, or omitted this information to avoid further governmental oversight, penalties, and potential legal claims. Van Brunt relied on Wells Fargo's silence as she could not file the instant

matter in 2015 because she lacked any knowledge related to the faulty calculation error. Further, Van Brunt could have addressed these concerns in the Foreclosure Case before it concluded in 2017. Instead of timely addressing potential legal claims when information and witnesses are more readily available, Wells Fargo has delayed resolution of Van Brunt's legal claims.

## C. VAN BRUNT SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In New Jersey, every contract contains an implied covenant of good faith and fair dealing. *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997). Wells Fargo conveniently leaves out an important phrase from its quote of the elements of a claim for breach of the implied covenant of good faith and fair dealing:

> In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract **[unless excused]**; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm.

*Graddy v. Deutsche Bank*, No. 11-3038 (RBK/KMW), 2013 U.S. Dist. LEXIS 41203, at *12 (D.N.J. Mar. 25, 2013) (emphasis added).

Van Brunt alleges that she was in privity of contract with Wells Fargo through her mortgage loan. (D.E. 30, ¶ 77). Van Brunt alleges that Wells Fargo breached its duty by delaying the loss mitigation process, denying Van Brunt the benefit of a trial modification based on the calculation error, and continuing the foreclosure process. (D.E. 30, ¶ 79). As discussed, *supra*, Wells Fargo's conduct directly and proximately caused Van Brunt's actual damages - Wells Fargo's delay of the loss mitigation process, wrongful denial, and continuance of the foreclosure process ultimately resulted in Van Brunt losing her home as well as other pecuniary and non-pecuniary losses.

### 1.     Wells Fargo Engaged in Conduct Without Good Faith and for the Purpose of Foreclosing on Van Brunt's Home.

Good faith is defined as "honesty in fact and the observance of reasonable conduct that does not violate community standards of fair dealing in the trade." N.J.S.A. § 12A:2-103(1)(b). "The obligation to perform in good faith exists in every contract, including those contracts that contain express and unambiguous provisions permitting either party to terminate the contract without cause." *Sons of Thunder*, 690 A.2d 575, 587 (N.J. 1997). The New Jersey Supreme Court holds that there is no requirement to allege a breach of an express term of a contract. *Id.* at 588 (citations omitted).

Van Brunt alleges that Wells Fargo breached the implied duty by delaying the loss mitigation process, wrongfully denying her a trial modification based on the calculation error, and continuing the foreclosure process. (D.E. 30, ¶ 79). Van Brunt reached out to Wells Fargo for mortgage assistance and Wells Fargo assured her that she would be approved. (D.E. 30, ¶ 40; D.E. 30-6). Wells Fargo filed a foreclosure action while Van Brunt had a loss mitigation application pending and continued that foreclosure for years after Wells Fargo discovered and purportedly corrected the faulty calculation error. (D.E. 30, ¶¶ 40-42, 44). Most importantly, Wells Fargo wrongfully denied Van Brunt a trial modification in October 2013 that Wells Fargo admits that it would have offered her. (D.E. 30, ¶¶ 42, 47, 49). Considering Van Brunt's allegations of Wells Fargo's repeated failure to adhere to consent orders to maintain adequate governance and controls to ensure it was properly considering loan modification requests and not improperly moving for foreclosure, it is apparent that Wells Fargo failed to observe "reasonable conduct that does not violate community standards of fair dealing in the trade." N.J.S.A. § 12A:2-103(1)(b).

2.   **Wells Fargo's Conduct Shows that It Did Not Consider Van Brunt's Breach of the Mortgage Loan to a Material Breach or Excused Van Brunt's Performance.**

"Whether the breach of a contract is material is generally an issue of fact." *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008). The New Jersey Supreme Court adopted the factors test of Restatement (Second) of Contracts § 241 to determine whether a breach is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Grande Vill. LLC v. CIBC Inc.*, No. 1:14-cv-3495 (NLH/JS), 2018 U.S. Dist. LEXIS 80662, at *77-79 (D.N.J. Mar. 30, 2018) (internal citations omitted). Four out of the five factors support an inference that Wells Fargo did not treat Van Brunt's breach as a material breach before it wrongfully denied Van Brunt for a trial modification.

First, Wells Fargo could be adequately compensated for the benefit it was deprived, monthly mortgage payments from Van Brunt, through a loan modification that would have allowed Wells Fargo to charge interest on all amounts past due. Second, Van Brunt suffered forfeiture of her home. Third, Van Brunt reached out to Wells Fargo to secure a loan modification which would cure her failure. Fourth, Van Brunt suffered financial distress and was unable to make her monthly mortgage payments – there is no evidence of a lack of good faith on her part. Admittedly, the first factor likely favors Wells Fargo because it did not receive monthly mortgage payments which it reasonably expected to receive. Wells Fargo's conduct shows that the failure to make monthly

16

mortgage payments, without the review of the factual circumstances, is not necessarily a material breach of the mortgage loan.

Even if Van Brunt's failure to make her monthly mortgage payments while awaiting Wells Fargo's decision on her request for mortgage assistance is considered a material breach, Wells Fargo's conduct excused any breach because Wells Fargo itself committed a material breach by violating the implied covenant of good faith and fair dealing. In *Grande Vill. LLC*, the plaintiff failed to make payments under the terms of a loan and the Court held that it was a material breach. 2018 U.S. Dist. LEXIS 80662 at *86-89. The Court denied summary judgment because the plaintiffs claimed that they were excused from making payments because of the defendant's breach of the implied covenant. *Id.* at *88-89. In the instant matter, Van Brunt alleges that Wells Fargo breached the implied duty, before Wells Fargo wrongfully denied Van Brunt a trial modification, by delaying the loss mitigation process and continuing the foreclosure process. (D.E. 30, ¶ 79).

The Court in *Biederman v. Mitsubishi Motors Credit of Am.*, 753 A.2d 1251 (N.J. Super. Ct. 2000), did not discuss whether the defendant observed reasonable conduct that did not violate community standards of fair dealing in the trade. *Biederman* concerned an automobile lease, not a home mortgage loan and a servicer participating in the HAMP program. Further, there are no allegations that the defendant and the plaintiff were engaged in loss mitigation review while the defendant simultaneously pursued recovery of the automobile or wrongfully denied the plaintiff the right to keep the automobile based on a miscalculation. In *Westmont Dev. Grp., LLC v. Twp. of Haddon*, where there was a provision in the contract that "either party's lack of insistence on strict performance did not constitute a waiver of the contract's terms." 625 F. Supp. 2d 178, 196 (D.N.J. 2009). The opposite is true in the instant matter, Wells Fargo's participation in the HAMP

program evidences that Wells Fargo expected some borrowers to default on their mortgage loans and would purportedly work with them before moving for foreclosure.

## D.   VAN BRUNT SUFFICIENTLY ALLEGES A CLAIM FOR COMMON LAW FRAUD

The five elements of common-law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Van Brunt sufficiently alleges each of the five elements. First, she alleges that "Wells Fargo made material misrepresentations of a presently existing or past fact when it misrepresented to Van Brunt in 2013 that she did not qualify for a loan modification." (D.E. 30, ¶ 84). Next, "Wells Fargo was aware of this faulty calculation since at least October 20, 2015 yet continued to conceal this error from Van Brunt until discretely disclosing this information in [its] August 3, 2018 10-Q." (D.E. 30, ¶ 85). Further, "Wells Fargo continues to conceal the details surrounding the 'faulty calculation' error and refuses to provide Van Brunt with more information related to her loss mitigation denial and how Wells Fargo discovered and corrected the error." (D.E. 30, ¶ 86). Since Van Brunt is not currently aware of when Wells Fargo actually discovered the calculation error, Wells Fargo was well aware of the myriad of issues with its loss mitigation department, and Wells Fargo failed to notify Van Brunt of the calculation error for nearly three years after it was purportedly corrected, Van Brunt alleges that Wells Fargo knew that its representation that she did not qualify for a temporary modification was false. (D.E. 30, ¶¶ 85-87). Wells Fargo intended that Van Brunt rely on its misrepresentation and concealment in order to take her home through the

foreclosure process and avoid potential legal claims. (D.E. 30, ¶ 88). Van Brunt reasonably relied on Wells Fargo's misrepresentation and concealment because there was no possible way for her to discover the wrongful denial until she received the September 12, 2018 letter from Wells Fargo. (D.E. 30, ¶ 89). Van Brunt could have addressed these concerns in the Foreclosure Case before it concluded in 2017. Wells Fargo's conduct directly and proximately caused Van Brunt to suffer tort damages in the form of extreme emotional distress damages and reputational injury to her credit. (D.E. 30, ¶ 60(H)-(I)). Van Brunt's emotional distress has manifested as two major strokes and multiple minor strokes. (D.E. 30, ¶ 62(G)).

Van Brunt pleads that Wells Fargo's "inexplicable conduct in failing to notify Van Brunt of the 'faulty calculation' for nearly three years after the error was corrected" indicates that Wells Fargo knew its representations were false. (D.E. 30, ¶ 87). Van Brunt refers to the error as a "faulty calculation" because that is the term that Wells Fargo penned. (D.E. 30-3; D.E. 30-4). Wells Fargo continues to conceal the details related to the faulty calculation and refuses to provide Van Brunt with more information explaining how this calculation caused her to be denied for a trial modification or how Wells Fargo discovered and corrected the error. (D.E. 30, ¶¶ 56-58, 86). Van Brunt alleges that Wells Fargo learned of the error "**<u>since at least</u>** October 20, 2015." (D.E. 30, ¶ 85) (emphasis added). Since Wells Fargo will not provide information related to the faulty calculation and concealed its existence for at least three years, it is plausible that Wells Fargo concealed its existence for much longer. Wells Fargo's reliance on *Wilkins v. ING Bank FSB*, Civil Action No. 10-5334 (SRC), 2011 U.S. Dist. LEXIS 101560 (D.N.J. Sep. 1, 2011), is misplaced because the plaintiff failed to allege the subject and author of the misrepresentation. In the instant matter, Van Brunt clearly pleads (and Wells Fargo admits) that Wells Fargo wrongfully denied Van Brunt a trial modification. (D.E. 30, ¶ 84; D.E. 30-4).

Van Brunt relied on Wells Fargo's wrongful denial because she did not address Wells Fargo's conduct in the Foreclosure Case before it concluded in 2017. (D.E. 30, ¶ 89). Van Brunt relied on Wells Fargo's concealment by abandoning her fight to stop foreclosure and not bringing potential legal claims for years. (D.E. 30, ¶¶ 88-89). Van Brunt could not have reversed Wells Fargo's sale in 2015 after the Foreclosure Case concluded, but she could have sued Wells Fargo for monetary relief. Again, Wells Fargo's wrongful denial caused Van Brunt to lose her home - if Wells Fargo offered Van Brunt a trial modification, Van Brunt intended to meet all the requirements set by Wells Fargo in order to remain in her home. (D.E. 30-4; D.E. 30-6).

## E.     VAN BRUNT SUFFICIENTLY ALLEGES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under New Jersey law, to establish a prima facie claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show: "(1) that the defendant intended to cause emotional_distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). "*An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss.*" *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006) (emphasis added).

Van Brunt's fourth claim is for intentional infliction of emotional distress, and the FAC alleges all of these elements. Specifically, Van Brunt alleges that Wells Fargo: (1) engaged in extreme and outrageous conduct; (2) recklessly disregarded the probability that its conduct would cause emotional distress to Van Brunt; and, (3) did in fact cause Van Brunt to suffer severe emotional distress. (D.E. 30, ¶¶ 94-102).

Wells Fargo first argues and cites to decisions in which courts have concluded that mere mistakes do not give rise to a claim for intentional infliction of emotional distress. Here, it is difficult to describe Wells Fargo's conduct in this case as anything but outrageous: it features years of bad faith and gross negligence, coupled with egregious refusals by the company's board of directors to remedy a known problem - even in the face of multiple government orders requiring it to do so. (D.E. 30, ¶¶ 13-38). Over the course of nearly a decade, Wells Fargo repeatedly failed to test the automated decision-making tool on which its customers' homes and wellbeing depended, ignored multiple consent decrees requiring it to implement adequate testing, and then concealed its discovery of systematic errors from regulators and the customers whose homes were foreclosed upon as a result of the errors. (D.E. 30, ¶¶ 13-38). Van Brunt lost her home not because of a good-faith mistake but because of Wells Fargo's repeated refusal to address a known problem.[1]

Wells Fargo next argues they "could not have been trying to inflict emotional distress on Van Brunt by concealing the error, as it would - by definition - have been trying to hide it from her." However, Van Brunt is required to show that Wells Fargo *either* "intend[ed] both to do the act and to produce emotional distress," or acted "in deliberate disregard of a high degree of probability that emotional distress will follow." *Buckley*, 544 A.2d at 863. Van Brunt alleges Wells Fargo concealed its discovery of systematic errors from regulators and borrowers like Van Brunt for several years. (D.E. 30, ¶¶ 13-38). Wells Fargo should have known that its actions would create a high probability that individuals like Van Brunt would lose their homes. The FAC describes that

---

[1] Wells Fargo describes the FAC's details of the bank's repeated failures to test the automated decision-making tool it used to determine borrowers' eligibility for mortgage modifications, even in the face of a consent decree which put Wells Fargo on notice that it needed to implement such testing, as "irrelevant", but Wells Fargo fails to explain how or why the details are irrelevant. These allegations represent an implicit acknowledgment that the bank's deliberate and callous decision to put profits before the law indicate this was a deliberate undertaking preceded by years of inaction as opposed to a mere, singular mistake.

as a result of Wells Fargo's conduct, Van Brunt sought medical treatment for panic attacks and as

a result, Van Brunt should be compensated for the severe emotional distress she suffered due to

years of gross negligence and bad-faith refusals to address known problems in the bank's mortgage

modification and foreclosure practices. *See 49 Prospect St. Tenants Asso v. Sheva Gardens*, 547

A.2d 1134, 1147-1148 (N.J. App. Div. 1988) (Appellate Division found circumstances sufficient

to support a claim for IIED despite concluding that defendants' conduct did not evidence an intent

to inflict severe emotional distress).

## F.   VAN BRUNT WITHDRAWS HER CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE

Van Brunt hereby withdraws Counts Five and Six of the FAC against Wells Fargo.

## G.   THE ECONOMIC LOSS DOCTRINE DOES NOT APPLY TO VAN BRUNT'S NON-STATUTORY TORT CLAIMS

"The economic loss doctrine is a judicially created rule that prevents a party from being

able to collect in negligence for **pecuniary** harm that is unaccompanied by personal injury or

consequential damages to other property." *Kam Int'l v. Franco Mfg. Co.*, Civil Action No. 2:10-

02733, 2010 U.S. Dist. LEXIS 135455, at *11 (D.N.J. Dec. 22, 2010) (emphasis added). "[D]uty

is defined not by the contractual relationship between the parties but by considerations of

foreseeability and fairness." *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*, 638

A.2d 1288, 1295 (N.J. 1994). "The New Jersey Supreme Court has long been a leader in expanding

tort liability." *Lone Star Nat'l Bank, Nat'l Ass'n v. Heartland Payment Sys.*, 729 F.3d 421, 426-

427 (5th Cir. 2013) (quoting *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 295 (3d Cir.

1995) (Becker, J., dissenting)). "Tort principles, such as negligence, are better suited for resolving

claims involving unanticipated injuries, and contract principles are generally more appropriate for

determining claims for consequential damages that parties have or could have address[ed] in their

agreement." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (internal citations omitted). "Tort principles are better suited to resolve claims for personal injuries or damages to other property." *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544 (WHW-CLW), 2018 U.S. Dist. LEXIS 147746, at *42 (D.N.J. Aug. 29, 2018).

"In some circumstances, courts have held that when a plaintiff alleges a tort claim, that plaintiff may sue for both contract and tort remedies if the remedy provided by the tort claim is not available in the contract claim." *Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civil Action No. 06-5391 (FLW), 2007 U.S. Dist. LEXIS 60790, at *30 (D.N.J. Aug. 20, 2007). The economic loss rule has been applied to prohibit fraud claims that are not extraneous to the contract. *See Unifoil Corp. v. Cheque Printers & Encoders*, 622 F. Supp. 268, 271 (D.N.J. 1985). In cases involving "egregious" conduct of a bank, such as " the bank actively encourag[ing a] plaintiff to rely upon its advice and conceal[ing] its self-interest in promoting the transaction involved," such circumstances may support a duty of care. *United Jersey Bank v. Kensey*, 704 A.2d 38, 46 (N.J. Super. Ct. App. Div. 1997).

"Ability to foresee injury to a potential plaintiff ... is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." *Carter Lincoln-Mercury*, 638 A.2d at 1294. "When the plaintiffs are reasonably foreseeable, the injury is directly and proximately caused by defendant's negligence, and liability can be limited fairly, courts have endeavored to create exceptions to allow recovery." *People Express Airlines v. Consol. Rail Corp.*, 495 A.2d 107, 114-115 (N.J. 1985). "Particular knowledge of the economic consequences has sufficed to establish duty and proximate cause." *Id.* at 114. "[A] defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom

defendant knows or has reason to know are likely to suffer such damages from its conduct." *Id.* at 116.

"The question [of whether a duty exists] is one of fairness and policy that 'involves identifying, weighing, and balancing several factors -- the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1294 (N.J. 1994). "The court must examine all of the attendant circumstances in light of those and other relevant considerations and must engage in a fact-based and principled analysis." *Jerkins v. Anderson*, 922 A.2d 1279, 1285 (N.J. 2007).

Van Brunt seeks recovery for non-pecuniary damages in the form of extreme emotional distress and reputational injury to credit. (D.E. 30, ¶¶ 60(H)-(G), 81, 90, 99). For this reason alone, the economic loss rule does not bar Van Brunt's remaining state law claims. Further, if this Court holds that emotional distress damages are not available under the CFA, Van Brunt will be left without a remedy. *See Lone Star*, 729 F.3d at 426 (5th Cir. 2013) (discussing New Jersey law). The economic loss rule should not be applied to the instant matter because Wells Fargo had an independent duty of care as: (1) The harm to Van Brunt was reasonably foreseeable; (2) Fairness and policy considerations support a duty of care; and, (3) The relationship between the parties required Wells Fargo to fully disclose information related to Van Brunt's wrongful denial and the impact of the faulty calculation error.

Wells Fargo admits that it wrongfully stated that Van Brunt did not qualify for a trial modification. (D.E. 30-4). Van Brunt, and the other borrowers affected by the faulty calculation error, constitute an "identifiable class" because Wells Fargo had reason to foresee that borrowers experiencing financial distress would suffer damage if Wells Fargo improperly handled their loss

mitigation requests. Wells Fargo was aware that its loss mitigation procedures were riddled with errors. (D.E. 30, ¶¶ 12-22). Wells Fargo knew the particular circumstances of a loss mitigation denial would be Van Brunt losing her home, as Wells Fargo was simultaneously pursuing a foreclosure. (D.E. 30, ¶¶ 40-42). Liability is fairly limited because Wells Fargo has already identified who was affected by the faulty calculation error. (D.E. 30-3). If Wells Fargo complied with the 2011 consent orders, it could have easily avoided the risk of causing damage to Van Brunt.

When Van Brunt requested mortgage assistance, she had a lack of bargaining power and Wells Fargo had incentive to continue the foreclosure on her home. *See Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 955 (E.D. Cal. 2015) ("[T]he moral blame factor could easily tip in favor of Plaintiff because of the borrower's lack of bargaining power and the conflicts of interest that exist in the modern loan servicing industry."). The nature of the attendant risk was great as Van Brunt suffered injury when she lost her home. *Id.* ("Wells' decision would determine whether Plaintiff could keep his house, and it was foreseeable that failing to carefully process Plaintiff's loan modification could result in Plaintiff losing his house."). As discussed, *supra*, if Wells Fargo complied with the 2011 consent orders, it could have easily avoided the risk of causing damage to Van Brunt. The public interest in preventing mortgage servicers from taking money from the federal government and failing to properly implement loss mitigation procedures weighs in favor of Van Brunt. *Id.* ("[T]he policy of preventing future harm clearly weighs in favor of Plaintiff after the passing of the HBOR, which 'demonstrates a rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification.'").

"Whether the party has a duty to disclose ... is a question of law." *Maertin v. Armstrong World Indus.*, 241 F. Supp. 2d 434, 461 (D.N.J. 2002). "Because the duty should arise 'where good faith and common decency require it,' the question requires 'a weighing of the relationship of the

parties, the nature of the risk, and the public interest in the proposed solution.'" *Id.* Van Brunt's argument regarding fairness and policy considerations applies to whether or not Wells Fargo had a duty to disclose the existence of the faulty calculation error to Van Brunt before September 2018. Wells Fargo's greater bargaining power, the loss of Van Brunt's home, statute of limitation issues related to Wells Fargo waiting years to disclose, and Wells Fargo's repeated failure to comply with consent orders and government oversight support that Wells Fargo failed to act with good faith and common decency.

## H.     VAN BRUNT IS ENTITLED TO PUNITIVE DAMAGES

"Punitive damages may be awarded [upon proof], by clear and convincing evidence, that the harm suffered was the result … acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. § 2A:15-5.12(a). To determine whether punitive damages should be awarded, the Court must consider all relevant evidence, including: "(1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and, (4) The duration of the conduct or any concealment of it by the defendant." N.J.S.A. § 2A:15-5.12(b). Actual malice is defined as an "intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. § 2A:15-5.10. Wanton and willful disregard is defined as a "deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. § 2A:15-5.10.

In her common law fraud and intentional infliction of emotional distress claims, Van Brunt alleges that her damages, directly and proximately caused by Wells Fargo, were foreseeable as Wells Fargo knew Van Brunt would lose her home after Wells Fargo improperly denied her a trial modification. (D.E. 30, ¶¶ 91, 101). Further, Wells Fargo was simultaneously pursuing foreclosure and reviewing Van Brunt's eligibility for a loan modification, or engaging in dual tracking, a currently prohibited practice. (D.E. 30, ¶¶ 40-42). If Wells Fargo was aware of the faulty calculation error when it denied Van Brunt for a trial modification, a plausible inference considering Wells Fargo concealed information related to the faulty calculation error for years, Wells Fargo's actions were intentional and designed to take Van Brunt's home.

Even if Wells Fargo's actions do not constitute actual malice, Wells Fargo's conduct constitutes wanton and willful disregard because Wells Fargo was aware of the myriad of errors with its loss mitigation process and took a mindset of reckless indifference to the consequences of wrongfully denying Van Brunt for a trial modification and concealing that fact from Van Brunt, Wells Fargo shareholders, and Federal and State Regulators for more than three years. Through the 2011 consent orders, Wells Fargo was required to maintain adequate governance and controls to ensure compliance with HAMP. (D.E. 30, ¶¶ 18-22). However, Wells Fargo continued to defy its compliance obligations until further penalty in June 2015, and it is not clear if Wells Fargo is in compliance presently. (D.E. 30, ¶¶ 23-38).

Only Wells Fargo's words indicate that the faulty calculation error was a "mistake". Without information explaining the nature of the faulty calculation error, Wells Fargo's admitted concealment of the existence of the faulty calculation error for at least three years suggests that Wells Fargo tried to hide the faulty calculation error. Wells Fargo was required to regularly review its loss mitigation procedures - either Wells Fargo knew about the faulty calculation error and

ignored it, or its reckless indifference to the consequences of failing to comply with government regulation resulted in incompetent reviews. Whatever the state of mind, Wells Fargo has had too many chances to comply with government oversight and failed to avoid harming its customers. The four factors of N.J.S.A. § 2A:15-5.12(b) weigh in favor of Wells Fargo being subject to punitive damages.

## VI.    CONCLUSION

Plaintiff Dan Van Brunt has sufficiently pled all of her claims against Defendant Wells Fargo Bank, N.A. with the exception of the negligent infliction of emotional distress which she hereby dismisses and respectfully requests this Court deny the motion to dismiss and all other relief this Court may deem just and proper.

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino
Marc E. Dann
**DANN LAW**
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: 216-373-0539
Fax: 216-373-0536
notices@dannlaw.com
*Counsel for Plaintiff Dawn Van Brunt*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2019, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

<u>/s/ Javier L. Merino</u>
Javier L. Merino
Marc E. Dann
**DANN LAW**
*Counsel for Plaintiff Dawn Van Brunt*