<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| | : | |
| DAWN VAN BRUNT, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Case No. 3:19-cv-00170-BRM-TJB |
| | : | |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| | : | **OPINION** |
| Defendant. | : | |
| | : | |

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") seeking to dismiss Plaintiff Dawn Van Brunt's ("Plaintiff") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 34.) Plaintiff opposes the Motion. (ECF No. 36.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendant's Motion to Dismiss is **GRANTED**.

## I.   BACKGROUND

### A.  Factual Background

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the FAC as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194,

1220 (1st Cir. 1996)).

This matter stems from Wells Fargo improperly processing Plaintiff's loss mitigation application. (*See generally* ECF No. 30.) Wells Fargo denied Plaintiff a trial modification based on a "faulty calculation error." (*See id.*) Plaintiff owned the property located at 4101 Dairy Court in Freehold, New Jersey 07728 (the "Property"). (*Id.* ¶ 1.) Plaintiff occupied the Property with her family as her primary residence until they were removed by a Sheriff. (*Id.*) Defendant, a Delaware incorporated business, serviced Plaintiff's executed note and mortgage on the Property (collectively, the "Loan"). (*Id.* ¶¶ 3, 4.)

Pursuant to the Emergency Economic Stabilization Act of 2008, the Home Affordable Modification Program ("HAMP") mandates mortgage servicers, like Wells Fargo, to offer loan modifications to borrowers who meet certain requirements. (*Id.* ¶ 9.) Loan modifications "lower a borrower's mortgage payments to a manageable level . . . and allow the borrower to avoid foreclosure." (*Id.*) Here, Plaintiff satisfied the threshold requirements for a mortgage modification; thus, Wells Fargo was required to offer her a loan modification. (*Id.* ¶ 11.) Nevertheless, Defendant failed to do so and foreclosed on Plaintiff who could not make her monthly payments on-time. (*Id.*)

Between 2010 and 2018, Defendant repeatedly violated HAMP by "fail[ing] to detect multiple systematic errors in its automated decision-making tool[,]" which determined customers' eligibility for mortgage modifications.[1] (*Id.* ¶¶ 12, 13, 15.) In 2010, the Officer of Comptroller of the Currency (the "OCC") found Wells Fargo, among other things, "had failed to devote adequate oversight to its foreclosure process [and] . . . "ensure compliance with applicable laws." (*Id.* ¶ 16.)

---

[1] Plaintiff contends "Wells Fargo failed to detect multiple systematic errors in its automated decision-making tool" because Defendant did not regulate and properly audit the software to comply with the government's requirements. (*Id.* ¶ 13.)

In 2011, Wells Fargo signed two consent orders agreeing to correct these deficiencies. (*Id.* ¶ 18.) In June 2015, the OCC determined Wells Fargo was still not complying with HAMP; therefore, the OCC prohibited Defendant "from growing its residential mortgage servicing business until it brought its operation into compliance with an amended consent order." (*Id.* ¶¶ 23, 24.) Based on Defendant's inadequate compliance procedures, "Wells Fargo failed to catch an error in its mortgage modification software that led [Defendant] to wrongly deny mortgage modifications to 184 customers between March 2013 and October 2014." (*Id.* ¶ 25.)

In October 2015, unbeknownst to the OCC, Wells Fargo discovered another error—one of the main issues in this case—in its mortgage modification software, causing "Wells Fargo to wrongly deny mortgage modifications to 625 customers." (*Id.* ¶ 26.) "[A]fter discovering the 2015 error, Wells Fargo still did not reform its auditing and verification practices[,]" thereby affecting 145 additional customers." (*Id.* ¶ 28.) Due to Defendant consistently failing to reform its auditing & compliance procedures, the OCC determined Wells Fargo engaged "in reckless unsafe or unsound practices and violations of law" since at least 2011. (*Id.* ¶ 30.)

In February 2018, the Federal Reserve Board ruled "it would prohibit Wells Fargo from expanding its business until it sufficiently improve[d] its governance and controls." (*Id.* ¶ 31.) In response to the Federal Reserve's Cease and Desist Order, Wells Fargo submitted its 'Q2 2018 Form 10-Q' that stated "approximately 625 were incorrectly denied a loan modification between April 12, 2010 and October 20, 2015." (*Id.* ¶ 36.) Additionally, Wells Fargo submitted its next 'Form 10-Q' three months later, which stated "[Defendant] discovered related errors that affected approximately 245 more customers who were incorrectly denied a mortgage modification between March 10, 2010 and April 30, 2018." (*Id.* ¶ 37.) In total, the related errors affected 870 customers. (*Id.*)

3

As a result of Plaintiff experiencing financial hardships, Plaintiff defaulted on the Loan in 2009. (*Id.* ¶ 39.) In February 2012, Plaintiff contacted Wells Fargo to obtain a loan modification. (*Id.* ¶ 40.) On November 19, 2012, Defendant filed a foreclosure action in the Monmouth County Superior Court. (*Id.* ¶ 41.) In October 2013, Wells Fargo notified Plaintiff that she did not qualify for a loan modification. (*Id.* ¶ 42.) In September 2014, Plaintiff and her family were forced to leave the Property. (*Id.* ¶ 43.) In September 2018, Defendant sent Plaintiff a letter with the subject: "We made a mistake when we reviewed you for payment assistance" and provided Plaintiff a $25,000.00 check. (*Id.* ¶ 47, 50; ECF No. 30-4 at 1.) The letter stated:

> We have some difficult news to share. When you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation, and we're sorry. If it had been correct, you would have been approved for a trial modification.

(ECF No. 30 ¶ 49; ECF No. 30-4 at 1.) After Plaintiff and Wells Fargo participated in an unsuccessful mediation to resolve this matter, Plaintiff filed the current matter against Wells Fargo based on the wrongful denial of the loss mitigation application and Defendant's alleged concealment of it for nearly three years. (ECF No. 30 ¶¶ 56, 59.)

### B.  Procedural History

On January 7, 2019, Plaintiff filed her Original Complaint against Wells Fargo. (ECF No. 1.) On February 15, 2019, Defendant filed its Motion to Dismiss Plaintiff's Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b). (ECF No. 9.) On July 1, 2019, Plaintiff filed a Motion for Extension of Time to File Response/Reply as to Defendant's Motion to Dismiss. (ECF No. 26.) On July 11, 2019, Plaintiff filed a Motion for Leave to File her FAC and add three additional claims against Defendant. (ECF No. 27.) On July 16, 2019, the Court ordered that Defendant's Motion to Dismiss and Plaintiff's corresponding Motion for an Extension

of Time be administratively terminated and may be refiled, if appropriate, following a decision on the Motion to Amend. (ECF No. 28.) On July 24, 2019, the Court ordered Plaintiff to file her Amended Complaint by August 2, 2019. (ECF No. 29.)

On July 25, 2019, Plaintiffs filed a six-count FAC against Defendant asserting violations of the New Jersey Consumer Fraud Act ("CFA") (Count One), the covenant of good faith and fair dealing (Count Two), common law fraud (Count Three), intentional infliction of emotional distress (Count Four), negligent infliction of emotional distress (Count Five), and negligence (Count Six). (ECF No. 30 ¶¶ 61–112.) Plaintiff sought actual damages of at least $75,000.00 to be determined at trial, treble and punitive damages, as well as costs and attorney fees. (*Id.* at 21, 22.) On September 13, 2019, Defendant filed a Motion to Dismiss Plaintiff's FAC. (ECF No. 34.) On October 16, 2019, Plaintiff filed an Opposition to the Motion to Dismiss. (ECF No. 36.) On November 6, 2019, Defendant filed its Reply to the Opposition to the Motion to Dismiss. (ECF No. 37.)

On March 9, 2020, Defendant filed a Motion to Stay proceedings pending decision by the Judicial Panel on Multidistrict Litigation ("JPML"). (ECF No. 38.) The next day, the Court granted Defendant's Motion and ordered all proceedings in this matter to be stayed until the JPML ruled on the pending petition to transfer this case and others for consolidated pretrial proceedings pursuant to 28 U.S.C § 1407. (ECF No. 39.) On March 30, 2020, the JPML issued an order denying the transfer. (ECF No. 40-2.) Plaintiff filed a letter on April 6, 2020 requesting the Court reinstate Wells Fargo's Motion to Dismiss Plaintiff's FAC (ECF No. 40). The next day, the Court granted Plaintiff's request lifting the Stay and reinstated the Motion to Dismiss Plaintiff's FAC. (ECF No. 41.)

## II.   LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

### B.  Federal Rule of Civil Procedure 9(b)

Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted). The heightened pleading standard set forth in Rule 9(b) applies to Plaintiff's CFA and common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims).

7

### III.   DECISION

#### A.  CFA Claims (Count One)

In the FAC, Plaintiff alleges four violations of the CFA: (i) Wells Fargo misrepresented to Plaintiff that she did not qualify for a trial modification (ECF No. 30, ¶ 66); (ii) Defendant knowingly concealed existence of the faulty calculation error from Plaintiff for approximately three years (*Id.* ¶ 70); (iii) From April 23, 2010 to October 20, 2015, Wells Fargo failed to correct the error; and (iv) Defendant refused to provide Plaintiff with complete information regarding how it corrected the error (*Id.* ¶ 73).

Defendant contends the Court should dismiss Count One of Plaintiff's FAC because Plaintiff fails to state any claims for violations of the CFA. (ECF No. 34-1 at 9.) Plaintiff counters the FAC plausibly pleads all necessary elements for her CFA claims. (ECF No. 36 at 5.) For the reasons set forth below, this Court finds Plaintiff has not adequately pled her CFA claims.

The CFA, N.J. Stat. Ann. § 56:8-1, et seq. states, in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . . .

N.J. Stat. Ann. § 56:8-2.

Courts have interpreted this section to require the following three elements to state a cause of action under the CFA: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff;

8

and 3) a causal relationship between the unlawful conduct and the ascertainable loss."[2] *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.,* 929 A.2d 1076, 1086 (N.J. 2007)).

Defendant argues Count One should be dismissed because Plaintiff has not met the pleading burden on the causal nexus requirement. (ECF No. 34-1 at 10.) Specifically, Defendant contends "[t]he [Homeowner's Association's ("HOA")] foreclosure of the Property undercuts any allegation that Wells Fargo caused the alleged harm" and Plaintiff "fails to plead facts that would establish a causal nexus between the alleged conduct and alleged damages." (*Id.* at 11-12). In response, Plaintiff contends she met her burden of plausibly alleging a causal relationship between Defendant's calculation error and her ascertainable losses. (ECF No. 36 at 10.) Plaintiff states she "sufficiently plead[ed] that Wells Fargo's faulty calculation error [led] to misrepresentations and knowingly omissions, which in turn resulted in Wells Fargo obtaining a final judgment and buying [Plaintiff's] home at a Sheriff's Sale." (ECF No. 36 at 8.)

Under the CFA, Plaintiff must demonstrate that the ascertainable loss was suffered "as a result of" the defendant's unlawful conduct. N.J. Stat. Ann. § 56:8-19 (2004). Plaintiff must set forth allegations sufficient to show those losses are causally connected to Defendant's alleged conduct. It is not sufficient to make conclusory or broad-brush allegations regarding Defendant's conduct; plaintiff must specifically plead those facts. *Torres-Hernandez*, No. 3:08-CV-1057-FLW,

---

[2] An "ascertainable loss" is one that is "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248. (2005). Plaintiffs need only provide enough specificity to give the defendant notice of damages. *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-1057, 2008 WL 5381227, at *7, n.3 (D.N.J. Dec. 17, 2008), and need not "provide evidential material to rebut defendant's contention that [they] sustained ascertainable loss" to overcome a motion to dismiss. *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 503, n.8 (D.N.J. 2009) (quoting *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 111 (App. Div. 2006)). Courts support alleged damages based on an out-of-pocket theory or a benefit of the bargain theory. *See Smajlaj*, 782 F. Supp. 2d 84, 99-103; *Thiedemann*, 183 N.J. at 248.

2008 WL 5381227, at *7. This requires, for example, pleading when and to whom the alleged fraudulent statements were made. *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527 (D.N.J. 2008).

Here, Plaintiff's conclusory allegations do not demonstrate a causal nexus between Defendant's calculation error and Plaintiff losing her home. Because Wells Fargo's error solely pertained to *a trial modification*, not a permanent one, Plaintiff pleads no facts indicating she would have qualified for a permanent modification or made all of the necessary payments under a permanent modification until the mortgage was paid off. (ECF No. 34-1 at 12.) Additionally, Plaintiff "makes no attempt to demonstrate how a permanent modification would have or could have prevented the HOA's legal proceedings against her—which were already underway—nor how such a modification would have resulted in her avoiding the HOA foreclosure and sale of the Property." (*Id.* at 21-22). Based on Plaintiff's generalized contention that she "intended to save her home" without specifically addressing how she would have retained ownership, the Court finds Plaintiff's causal chain too attenuated to satisfy her CFA claims.

Despite Plaintiff's allegations that "the incorrect modification denial took place before the HOA sale" and Plaintiff moved out of her home after Wells Fargo obtained judgment, the Court finds it implausible that Wells Fargo's calculation error was a cause of Plaintiff's damages (ECF No. 36 at 8.) As such, Plaintiff does not sufficiently assert a causal relationship and therefore fails to state a CFA claim.

Because the CFA is dismissed on these grounds, the Court need not address Defendant's arguments regarding the other elements of the CFA. However, to the extent Defendant argues Plaintiff pleads facts in her CFA claim without the sufficient particularity to satisfy Rule 9(b), the Court agrees.

The heightened pleading standard set forth in Rule 9(b) applies to Plaintiff's CFA claim. *See Dewey v. Volkswagen*, 558 F.Supp.2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to a CFA and common law fraud claims); *see also DeGennaro v. Am. Bankers Ins. Co. of Fla.*, 2017 WL 2693881, at *5 (D.N.J. June 22, 2017). To satisfy the specificity requirement of Rule 9(b), "the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 728 F. Supp. 2d 84, 104 (D.N.J. 2011).

Plaintiff argues it is plausible that Defendant concealed the faulty calculation error for at least three years because Wells Fargo could have been motivated to avoid penalty based on the OCC ordering that Wells Fargo regularly audit its loss mitigation procedures. (ECF No. 36 at 4.) The Court disagrees. Without any specificity, Plaintiff's FAC alleges that "Wells Fargo misrepresented to [Plaintiff] that she had not qualified for the trial modification." (ECF No. 30 ¶ 66.) Plaintiff fails to allege *who* at Wells Fargo "engaged in the wrongful conduct, *how* the alleged misrepresentation was conveyed to her, or *what* precisely she was told." (ECF No. 34-1 at 33 (emphasis added).) Furthermore, because Plaintiff failed to state a CFA claim pursuant to Rule 12(b)(6), her bare FCA claims would not satisfy the stricter standard under Rule 9(b) to withstand Defendant's Motion to Dismiss.

Accordingly, Defendant's Motion to Dismiss Count One is **GRANTED**.

### B.  Implied Covenant of Good Faith & Fair Dealing Claim (Count Two)

Defendant argues Plaintiff's breach of the implied covenant of good faith and fair dealing claim fails because "Wells Fargo's actions were expressly permitted by the contract between the parties, [Plaintiff] does not and cannot allege that she performed under the contract, and she does

not plead causation." (ECF No. 34-1 at 19.) Plaintiff argues the FAC provides a plausible implied covenant claim because "Wells Fargo breached its duty by delaying the loss mitigation process, denying [Plaintiff] the benefit of a trial modification based on the calculation error, and continuing the foreclosure process[,]" which directly and proximately caused Plaintiff to lose her home. (*See* ECF No. 36 at 14.)

Pursuant to New Jersey law, all contracts have an implied covenant of good faith and fair dealing, which prohibits either party from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004) (citations omitted); s*ee Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395–96 (N.J. 2005); *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1145–46 (N.J. 2001). In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must plead: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm. *Wade v. Kessler. Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002).

"A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hill Racquet Club, Inc.*, 864 A.2d at 396; *Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2009 WL 904010 (D.N.J. 2009) ("A defendant who acts with improper purpose or ill motive

12

may be found liable for breaching the implied covenant if the breach upsets the plaintiff's reasonable expectations under the agreement.").

Despite Plaintiff claiming Wells Fargo acted without good faith because it "wrongfully denied [Plaintiff] a trial modification in October 2013 that Wells Fargo admits it would have offered to her" (*see* ECF No. 36 at 15), Plaintiff's implied covenant claim fails because Plaintiff violated the contract by defaulting on the Loan (*see* ECF No. 30 ¶ 39). In *Biederman v. Mitsubishi Motors Credit of Am., Inc.*, the plaintiff argued the defendant deprived her the fruits of a lease agreement because the defendant failed to "prove her with notice of default, opportunity to cure the default and proper notice of sale." 332 N.J. Super. 583, 590 (Law. Div. 2000). The lease stated if the plaintiff defaulted, the contract would be void and the defendant would be allowed to sell the vehicle without providing notice to the plaintiff. *Id.* The court dismissed the plaintiff's complaint because the "clearly expressed clauses [in the contract could not] be overridden by the implied covenant of good-faith and fair dealing." *Id.*

Likewise, the Loan here expressly allowed "Wells Fargo to commence foreclosure proceedings in the event of Plaintiff's default —which is exactly what Wells Fargo did." (ECF No. 34-1 at 20); *see Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995) (holding that "the implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement"); *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 419 (1997) (agreeing with the majority's view "that the implied covenant of good faith and fair dealing cannot override an express termination clause").

Finally, Plaintiff improperly centers her implied covenant claim on the premise that Wells Fargo "den[ied] her a trial modification based on a calculation error." (ECF No. 36 at 15.)

Defendant's Reply Brief correctly references *Hernandez v. Bank* (ECF No. 37 at 8, 9), which dismissed the plaintiff's claim that the defendant breached the implied covenant of good faith and fair dealing by not timely responding to the plaintiff's loan modification request. No. 15-470, 2016 WL 816746, at *3 (D.N.J. Feb. 25, 2016). The court noted "[a] lender does not . . . defeat the other party's contractual rights by declining to renegotiate the contract." *Id.*

Accordingly, Defendant's Motion to Dismiss Count Two is **GRANTED**.

### C.  Common Law Fraud Claim (Count Three)

Defendant argues Plaintiff's common law fraud claim should be dismissed because "Plaintiff has not pled any facts to support her assertion that Wells Fargo knew she was qualified for a trial loan modification when it told her she was not." (ECF No. 34-1 at 22.) Additionally, Defendant claims Plaintiff "has not plausibly pled that she relied on the alleged misrepresentation to her detriment." (*Id.*) As for Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff contends Wells Fargo knowingly created false representations because Wells Fargo failed "to notify [Plaintiff] of the 'faulty calculation' for nearly three years after the error was corrected." (ECF No. 36 at 19.)

To state a claim for common law fraud under New Jersey law, a plaintiff must allege "(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). The heightened pleading standard set forth in Rule 9(b) applies to New Jersey common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to

CFA and common law fraud claims).[3]

The FAC does not set forth a viable common law fraud cause of action against Defendant. In *Cent. Reg'l Employees Ben. Fund v. Cephalon, Inc.*, the plaintiffs alleged the defendant, a manufacturer and distributor of prescription drugs, made false representations regarding the use and application of its drug products. No. 09-3418, 2010 WL 1257790, at *1 (D.N.J. Mar. 29, 2010). Despite the plaintiffs alleging that the defendant's "off-label marketing activities included training representatives to make false statements about the dosing and/or efficacy of the prescription drugs," the court granted the defendant's motion to dismiss because the plaintiff did not plead "how this generalized activity affected the plaintiffs in particular." *Id.* at *4.

Likewise, while Plaintiff contends "Wells Fargo was well aware of the myriad of issues with its loss mitigation department, and Wells Fargo failed to notify [Plaintiff] of the calculation error for nearly three years after it was purportedly corrected" (ECF No. 36 at 18), Plaintiff has not plausibly pled she relied on the alleged misrepresentation that Wells Fargo learned about as early as October 2015 (ECF No. 34-1 at 22). Defendant points out that Plaintiff's "alleged forced relocation [to pay off Plaintiff's existing debt] in September 2014 followed the HOA's foreclosure sale of the Property, not Wells Fargo's." (*Id.* at 22-23.) Plaintiff here and the plaintiffs in *Cephalon* similarly fail to plead any nexus connection between the alleged false representations and causation of the alleged damages.[4] *See also In re Schering-Plough Corp. Intron/Temodar*

---

[3] Defendant also argues Plaintiff's common law fraud claim should be dismissed as the FAC fails to allege fraud with particularity. (ECF No. 34-1 at 31-33.) The Court will rely on its previous analysis of Rule 9(b) to conclude Plaintiff fails to plead her common law fraud claim pursuant to Rule 9(b). *See supra* section III.A.

[4] Additionally, as discussed in section III.A. *supra*, the Court relies on the same analysis outlined in granting Defendant's Motion to Dismiss for Count I. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 105 (3d Cir. 2013) (holding that the plaintiffs did not state a common law fraud claim for the same reasons the plaintiffs' CFA claim was inadequate).

*Consumer Class Action*, 2:06-CV-5774(SRC), 2009 WL 2043604, at *33 (D.N.J. July 10, 2009) (holding that "indirect reliance in the context of fraud requires that, where a plaintiff has not actually received and considered an alleged fraudulent misrepresentation, he must prove that he was at least an intended recipient of the misrepresentation").

Accordingly, Defendant's Motion to Dismiss Count Three is **GRANTED**.

### D.  Intentional Infliction of Emotional Distress Claim (Count Four)[5]

Defendant argues Plaintiff's FAC contains no allegations supporting a plausible claim that defendant engaged in "extreme and outrageous" conduct to support her IIED claim. (ECF No. 34-1 at 25.) Additionally, Defendant argues even if Wells Fargo "failed to properly verify or audit [its] mortgage modification and conceal the calculation error once it was known[,] . . . Wells Fargo could not have been trying to inflict emotional distress on [Plaintiff] by concealing the error." (*Id.* at 26.)  In response, Plaintiff argues she has sufficiently pled that Defendant engaged in "extreme and outrageous conduct" because "it features years of bath faith and gross negligence, coupled with egregious refusals by the company's board of directors to remedy a known problem—even in the face of multiple government orders requiring it to do so." (ECF No. 36 at 21.)

To establish a prima facie claim for intentional infliction of emotional distress in New Jersey, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). "To establish extreme and outrageous conduct, a plaintiff must show

---

[5] In Plaintiff's Opposition Brief, Plaintiff withdrew her claims for negligent infliction of emotional distress (Count Five) and negligence (Count Six) (ECF No. 36 at 22); therefore, the Court will not address them in this Opinion.

conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Buckley*, 544 A.2d at 863 (citation omitted)). One will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair, and unkind." *Id.*

Here, Plaintiff failed to sufficiently allege Defendant engaged in "outrageous conduct." Plaintiff misguidedly relied on Wells Fargo ignoring "multiple consent decrees requiring it to implement adequate testing" and "concealing its discovery of systematic errors from regulators and the customers whose homes were foreclosed upon as a result of the errors." (ECF No. 36 at 21.) In *Dumont v. Litton Loan Servicing, LP*, the plaintiffs similarly relied on consent orders between the defendants and the Federal Reserve to prove abusive practices employed by mortgage loan servicers. *See* No. 12-2677, 2014 WL 815244, at *19 (S.D.N.Y. Mar. 3, 2014). Nevertheless, the Court found the consent orders and regulatory agreements did not insinuate that the defendants engaged in "deceptive and unconscionable practices devised to take advantage of vulnerable homeowners already in distress." *Id.* at *20. Likewise, the Court here will not take an unreasonable step to assume that based on the prior consent orders, Wells Fargo was directly involved in the activities that Plaintiff alleges.

Even if Defendant's conduct was outrageous, Plaintiff fails to establish that Wells Fargo *intended* to inflict emotional distress on Plaintiff by attempting to hide the error from her. "For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress." *Buckley,* 544 A.2d at 863; *see also Fogarty v. Household Fin. Corp. III*, No. 14-4525, 2015 WL 852071 (D.N.J. Feb. 25, 2015) (holding that the defendant's actions of filing a Lis Pendens on the plaintiff's property without conducting an adequate investigation on plaintiff's fraudulent mortgage claim were not "extreme" or "outrageous"). Additionally, since Plaintiff's

FAC admits Wells Fargo made a calculation mistake and Defendant provided Plaintiff with a $25,000.00 check "to make things right," the Court finds the modification calculation does not satisfy New Jersey's standard for "extreme and outrageous" conduct. (*See* ECF No. 34-1 at 27); (ECF No. 30 ¶¶ 49, 50); *see also Decker v. Princeton Packet, Inc.*, 224 N.J. Super. 726, 727 (App. Div. 1988), *aff'd*, 116 N.J. 418 (1989) (holding that the defendant's patent *mistake* of announcing the plaintiff's death in an obituary did not give rise for a claim of intentional infliction of emotional distress).

Plaintiff also fails to plead that Defendant acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Buckley*, 544 A.2d at 863. Plaintiff claims "Wells Fargo should have known that its actions would create a high probability that individuals like [Plaintiff] would lose their homes." (ECF No. 36 at 21.) Nevertheless, the Court rejects this argument because the Property was sold at the HOA's foreclosure sale due to Plaintiff's failure "to pay years' worth of condominium association fees." (ECF No. 34-1 at 7.) Therefore, as Defendant points out in its Motion, Plaintiff would have "been foreclosed upon by the HOA [] whether or not Wells Fargo had denied the trial payment plan." (*Id.*)

Accordingly, Defendant's Motion to Dismiss Count Four is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. An appropriate order will follow.

Date: December 31, 2020                         */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**