**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAWN VAN BRUNT,**  Plaintiff, v. **WELLS FARGO BANK, N.A.,**  Defendant. | Civil Action No. 19-170 (ZNQ) (TJB)  **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon a Motion to Dismiss the Second Amended Complaint ("the Motion") by Defendant Wells Fargo Bank, N.A. ("Defendant") pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). (ECF No. 61.) Defendant filed a Brief in Support of its motion. (Moving Br., ECF No. 61-1). Plaintiff Dawn Van Brunt ("Plaintiff") opposed the motion. (Opp'n Br., ECF No. 62.) Defendant filed a reply. (Reply Br., ECF No. 63.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motion.

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.

I.      **FACTUAL BACKGROUND** [2]

Plaintiff was the owner of residential real property, commonly known as 4101 Dairy Court, Freehold, NJ ("the Property") which she occupied as her primary residence until the Sheriff removed Plaintiff and occupying residents from the property. (Second Am. Compl. ¶ 1, ECF No. 48). From approximately July 12, 2007 to July 11, 2017, Defendant was the servicer of a note executed by Plaintiff and of a mortgage on the property securing such note (collectively, "the Loan"), insured by the Federal Housing Authority (the "FHA"). (*Id*. ¶ 2.) Defendant is the nation's largest provider of residential mortgages, servicing home mortgage loans nationwide. (*Id*. ¶ 9.)

Defendant utilizes uniform and standard loan servicing, modification, and foreclosure practices nationwide, mostly reliant upon automated processes, systems, and tools. (*Id*. ¶ 13). Wells Fargo is a pre-approved lender who qualifies for FHA mortgage insurance and must comply with the Department of Housing and Urban Development ("HUD") regulations. (*Id*. ¶ 18).

In 2008, the government began the Troubles Asset Relief Program ("TARP"). (*Id*. ¶ 20.) Defendant received about $25 billion in TARP funds. (*Id*. ¶ 21.) In return, Wells Fargo is required to comply with certain regulations. (*Id*. ¶¶ 21–23). Additionally, Wells Fargo is required to review defaulted loans for modification eligibility prior to proceeding with a foreclosure action. (*Id*. ¶ 24). Wells Fargo is required to offer all eligible-defaulted borrowers a loan modification. (*Id*.) Wells Fargo is required to take a number of specific and non-discretionary steps to determine a consumer's eligibility for modification. (*Id*.) If the borrower is approved and the modified loan would be more profitable than the non-modified loan, Defendant is required to offer a trial period plan modification. (*Id*.)

---

[2] For purposes of this motion, the Court will take all facts alleged in the Amended Complaint as true. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

To request a loan modification, FHA regulations require each borrower to submit various applications and forms. (*Id.* ¶ 25.) If the borrower is eligible for any mandatory modifications, Defendant is required to extend the trial period. (*Id.* ¶¶ 25, 27.)

In 2010, the Office of the Comptroller of the Currency ("OCC") discovered multiple deficiencies and unsafe and unsound practices in Defendant's residential mortgage servicing, modification, and foreclosure programs. (*Id.* ¶ 29.) The OCC determined that Defendant failed to oversee, audit, and test its foreclosure and modification tools and practices. (*Id.* ¶ 29.) As a result, Defendant entered into two consent orders, agreeing to form compliance committees and programs subject to the oversight of the OCC. (*Id.* ¶ 31.) However, Defendant failed to remedy the deficiencies and unsafe and unsound practices as identified by the OCC and failed to adopt adequate oversight programs. (*Id.* ¶ 32.) Defendant additionally failed to detect and/or correct systemwide servicing, modification, and foreclosure process errors. (*Id.* ¶ 32.)

In 2015, the OCC again determined that Defendant was continually failing to adequately oversee, audit, and test its servicing, modification, and foreclosure practices for compliance. (*Id.* ¶ 33.) In early 2018, the OCC found that Defendant's deficiencies and compliance failures constituted reckless and unsafe or unsound practices in violation of federal law and that Defendant failed to implement and maintain an adequate compliance risk management program. (*Id.* ¶ 34.) As a result, Defendant entered a consent cease and desist order with the OCC, again agreeing to adopt system-wide compliance programs and oversight. (*Id.* ¶ 35). The Federal Reserve also issued a consent cease and desist order in early 2018 restricting Defendant's growth until governance, oversight, risk management, auditing, and testing, was improved. (*Id.* ¶ 36.)

As a result of the OCC's investigations and resulting consent orders, Defendant was on notice of serious errors, deficiencies, and unsafe and unsound practices in its loan servicing, modification, and foreclosure processes and practices from 2010 through the present. (*Id.* ¶ 37.)

The deficiencies and unsafe and unsound practices resulted in systematic automated calculation errors that affected borrowers. (*Id.* ¶ 38.) From 2010 through 2019, Defendant utilized automated mortgage loan modification underwriting tools to determine which default borrowers were qualified for a mortgage loan modification or repayment plan. (*Id.* ¶ 38.) By its own admissions, Defendant failed to test and audit its automated mortgage loan modification underwriting tool. (*Id.* ¶ 40.) As a result, Defendant wrongfully failed to approve hundreds of borrowers for appropriate mortgage loan modifications and/or repayment plants. (*Id.* ¶ 41.) As a result of its continued failure to implement adequate oversight, auditing, and test controls, Defendant failed to timely identify a number of automated calculation errors in its mortgage software. (*Id.* ¶ 42.)

The OCC reported that between March of 2013 and October of 2014, an unidentified error caused Defendant to fail to offer modifications to 184 borrowers who were entitled to modification trial period plans. (*Id.* ¶ 43.)

As a part of Defendant's parent company's quarterly report, it was revealed that an automated calculation error caused Defendant to wrongfully deny loan modifications and resulted in hundreds of foreclosures of residential mortgage loans in default between April 13, 2010 and October 20, 2015. (*Id.* ¶ 45.)

Loan modification applications under FHA loans, like Plaintiff's, were decided using the SLoaD tool. (*Id.* ¶ 46.) Defendant discovered that it had wrongfully denied mortgage modifications for loans analyzed in SLoaD from 2010 until 2018. (*Id.* ¶ 59.) In total, Defendant

wrongfully denied loan modifications to 824 borrowers and caused over 500 of them to lose their homes.  (*Id*.)

In late 2018 and early 2019, Defendant began sending form letters to customers affected by the calculation error.  (*Id*. ¶ 60.)  The letters typically included a check and informed customers if they were not satisfied with the amount, they could consider mediation through a third-party mediator.  (*Id*.)

In 2009, Plaintiff experienced financial difficulties and defaulted on the Loan.  (*Id*. ¶ 61.) On or about August 19, 2011, non-party The Strickland Farm Condominium Association, Inc. (the "COA") commenced an action against Plaintiff in the Superior Court of New Jersey, Special Civil Part, captioned *The Strickland Farm Condominium Association, Inc. v. Dawn Rivera*, assigned docket number MON-DC-014947-11 (the "COA Action") for over $1,819.00 in unpaid common expense assessments.  (*Id*. ¶ 62.)   On October 13, 2012. A judgment was awarded in the amount of $4,075.15 to the COA.  (*Id*. ¶ 63.)   On October 15, 2013, an Order Permitting the Sale of Van Brunt's Home was entered in the COA Action.  (*Id*.)  In February of 2012, Plaintiff reached out to Defendant to obtain a loan modification to keep the Property.  (*Id*. ¶ 64.)

On November 19, 2012, Defendant filed a foreclosure action against Plaintiff in the Superior Court of New Jersey, Monmouth County, Case No. F-027129-12 (the "Foreclosure Case").  On or about December 18, 2013, Defendant informed Plaintiff that she did not qualify for a loan modification.  (*Id*. ¶ 66.)  Plaintiff appealed the modification denial on December 18, 2013.  (*Id*. ¶ 67.)  Plaintiff noted in her appeal that she was more than capable of paying her mortgage on time every month.  (*Id*. ¶ 67.)  Defendant denied the modification appeal on January 13, 2014.  (*Id*. ¶ 67.)

5

The COA had scheduled an auction on Plaintiff's home for February 3, 2014. (*Id.* ¶ 68.) As Defendant failed to tender Plaintiff the loan modification that she was entitled to, there was no rational basis for Plaintiff to contest the COA foreclosure or otherwise attempt to resolve it as Defendant held the first lien position mortgage. (*Id.* ¶ 69.) Had Defendant properly tendered the modification offer to Plaintiff, she would have taken steps to resolve the COA Action. (*Id.* ¶ 70.) Had Defendant extended the modification offer to Plaintiff, she would have been able to continue making the payments due and owed under the permanent modification agreement. (*Id.* ¶ 71.)

On February 3, 2014, the COA sold the Property at auction. (*Id.* ¶ 72.) Plaintiff and her family were required to move out of the Property on or about September 3, 2014. (*Id.* ¶ 73.) On July 1, 2014, Defendant obtained its Final Judgment in the Foreclosure Action and scheduled the initial sale date on the Property for December 1, 2014. (*Id.* ¶ 74.) On January 5, 2015, Defendant caused the Property to be sold at auction and acquired title to the property at the January 2015 sheriff's sale. (*Id.*) Defendant maintained ownership to the Property until May 16, 2018. (*Id.* ¶ 75.)

On or about August 3, 2018, Defendant filed a form 10-Q with the United States Securities and Exchange Commission, which identified that 625 customers were incorrectly denied a loan modification and in approximately 400 of those instances, a foreclosure was completed. (*Id.* ¶ 76–77.) On or about September 20, 2018, Defendant sent correspondence to Plaintiff (the "WF Letter") indicating that it made a mistake when it reviewed Plaintiff for payment assistance. (*Id.* ¶ 78.) The WF Letter indicated that Plaintiff's loan modification denial was based upon a faulty calculation and had it been correct, Plaintiff would have been approved for a trial modification. (*Id.* ¶ 80.) Through the WF letter, Defendant provided Plaintiff with a check in the amount of

$25,000. The WF letter also indicated that if Plaintiff did not feel that Defendant had "made things right," then she could consider mediation and still cash the check. (*Id*. ¶ 81–82.)

Plaintiff, having felt that Defendant had not made things right, requested mediation on October 8, 2018. (*Id*. ¶ 83.) Plaintiff supplemented the mediation request form to explain how Defendant's faulty calculation affected her life. (*Id*. ¶ 85, Ex. 33. ECF No. 48-33.)

The parties attended an unsuccessful mediation in an attempt to resolve this matter on December 28, 2018. (*Id*. ¶ 87.) Defendant's representatives who participated in the mediation failed to provide any specifics of the faulty calculation. (*Id*. ¶ 88.)

## II.   PROCEDURAL HISTORY

Plaintiff filed her first complaint against Defendant on January 7, 2019. (*See* ECF No. 1.) Defendant filed a Motion to Dismiss the Complaint on February 15, 2019. (*See* ECF No. 9.) Plaintiff filed a Motion for Leave to file an amended complaint on July 11, 2019. (*See* ECF No. 27.) Defendant's motion to dismiss was administratively terminated on July 16, 2019. (*See* ECF No. 28.) Plaintiff filed an amended complaint on July 25, 2019. (*See* ECF No. 30.)

Defendant filed a Motion to Dismiss First Amended Complaint on September 13, 2019. (*See* ECF No. 34.) On March 9, 2020, Defendant filed a Motion to Stay Proceedings Pending Decision by the Judicial Panel on Multidistrict Litigation. (*See* ECF No. 38.) On March 10, 2020, an order was entered granting Defendant's Motion to Stay and Defendant's Motion to Dismiss was terminated. (*See* ECF No. 39.) On April 6, 2020, Plaintiff requested the court to reinstate Defendant's Motion to Dismiss First Amended Complaint. (*See* ECF No. 40.) On April 7, 2020, Plaintiff's request was granted and the court reinstated Defendant's Motion to Dismiss the First Amended Complaint. (*See* ECF No. 41.)

On December 31, 2020, an opinion and order were filed granting Plaintiff leave to file a second amended complaint.  (*See* ECF Nos. 42–43.)

Plaintiff filed a Second Amended Complaint on February 8, 2021.  (Second Am. Compl., ECF No. 48.)  The Second Amended Complaint includes allegations that Defendant violated the Consumer Fraud Act ("CFA") contrary to N.J.S.A. § 56:8-2 (Count I), breach of contract (Count II), violation of the Covenant of Good Faith and Fair Dealing (Count III), common law fraud (Count IV), and intentional infliction of emotional distress (Count V).  Defendant's instant motion seeks to dismiss Plaintiff's Second Amended Complaint in its entirety.  (*See* ECF No. 61.)

### III.   LEGAL STANDARD

#### A.   Federal Rule of Civil Procedure 12(b)(6)

Upon reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom."  *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).  If the plaintiff is unable to plead sufficient facts to state a claim to relief that is plausible on its face, a motion to dismiss should be granted.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is sufficient, a court must take three steps.  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 679.  Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Id*. at 679.  In sum, this court's inquiry is normally broken into three parts (1) identifying each element of the claim, (2) striking conclusory allegations, and (3) reviewing

8

the components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. *Malleus*, 641 F.3d at 563.

### B. Federal Rule of Civil Procedure 9(b)

Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id*. at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted). The heightened pleading standard set forth in Rule 9(b) applies to a plaintiff's CFA and common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims).

### IV. DISCUSSION

As a preliminary matter, the Court notes that Plaintiff indicated in her opposition papers that she seeks to withdraw Counts II and III of the Second Amended Complaint. *See* Opp'n Br. at 21. Accordingly, the Court will DISMISS these Counts.

### A. Count I: Whether the Second Amended Complaint Adequately Alleges that Defendants Caused Plaintiff's Loss Under the Consumer Fraud Act

In the Second Amended Complaint, Plaintiff alleges three violations of the Consumer Fraud Act ("CFA"): (i) A 2013 statement by Defendant that allegedly "misrepresented to Van

9

Brunt that she had not qualified for the trial modification, when in fact she had qualified for the trial modification program, which would have allowed her to remain in the property," (Second Am. Compl. ¶ 97); (ii) Defendant was delayed in "remediat[ing]" the calculation errors because it "waited until 2015 to even implement a partial fix" and "three (3) years before disclosing this error to Van Brunt" (*Id.* ¶ 99); (iii) Defendant "knowingly concealed or omitted" "the 'faulty calculation'" from 2013 to 2018 (*Id.* ¶ 100).

The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .

N.J.S.A. § 56:8-2.

"To state a *prima facie* case under the CFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Pavan v. GreenPoint Mortg. Funding*, 681 F.Supp.2d 564, 572 (D.N.J. 2010) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)).

Defendant argues that its conduct did not cause Plaintiff's loss. (Moving Br. at 7). While Plaintiff claims that Defendant's denial of her loan modification caused her to lose her home, Defendant argues that the Second Amended Complaint reveals that Plaintiff lost her home as a result of her failure to pay a year's worth of condominium association fees. (*Id.*) Defendant argues that the Court had previously recognized that her home would have "been foreclosed upon by the HOA [] whether or not Wells Fargo had denied the trial payment plan." (*Id.*) (quoting ECF No.

42.) Defendant argues that despite being granted leave to amend, Plaintiff's causation allegations are still conclusory and speculative. (*Id*.)

Plaintiff, however, insists that Defendant's conduct directly and proximately caused her loss. (Opp'n Br. at 8.) She argues that there would be no reason for her to defend herself in the COA Action or cure the COA fee arrearage until she secured a loan modification from Defendant. (*Id*. at 9.) Plaintiff argues that under *Wells Fargo, N.A. v. Rivera*, No. A-2042-14T4, 2016 N.J. Super. Unpub. LEXIS 1285 (App. Div. June 6, 2016), Defendant (Wells Fargo) had control of the Property. Plaintiff argues that the purchaser of the COA's interest unsuccessfully attempted to intervene in the foreclosure. (Opp'n Br. at 9.) As such, only Defendants could have terminated her ownership interest. (*Id*. at 9–10.)

Defendant's reply maintains that the COA foreclosure sale was the cause of Plaintiff's loss. (Reply Br. at 1.) According to Defendant, in dismissing Plaintiff's First Amended Complaint, the Court already rejected Plaintiff's argument that there was no reason for her to defend the COA Action until she secured a loan modification because Plaintiff would have been foreclosed upon by the COA [] whether or not Defendant had denied the trial payment plan. (ECF No. 42 at 18.) Defendant argues that Plaintiff's reliance on *Wells Fargo, N.A. v. Rivera* is misplaced. (Reply Br. at 2.) Defendant contends that *Rivera* expressly states that it was the third party's purchase, after the COA sale that extinguished the plaintiff's ownership interest. (*Id*.)

Under the CFA, Plaintiff must demonstrate that the ascertainable loss was suffered "as a result of" the defendant's unlawful conduct. N.J. Stat. Ann. § 56:8-19 (2004). Plaintiff must set forth allegations sufficient to articulate how those losses are causally connected to Defendant's alleged conduct. It is not sufficient to make conclusory or broad-brush allegations regarding Defendant's conduct; Plaintiff must specifically plead those facts. *Torres-Hernandez v. CVT*

11

*Prepaid Solutions, Inc.*, Civ. No. 08-1057, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008). This requires, for example, pleading when and to whom the alleged fraudulent statements were made. *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527 (D.N.J. 2008).

Here, the Second Amended Complaint also does not demonstrate a sufficient causal nexus between Defendant's miscalculation of Plaintiff's loan modification application and Plaintiff losing the Property. It alleges that Defendant is required to offer a trial modification period if a borrower qualifies for a loan modification. (Second Am. Compl. ¶ 24.) Only after a borrower completes the trial period is Defendant required to permanently modify the plain. (*Id.* ¶ 24.) Defendant's error pertained only to a trial modification, not a permanent one. (*Id.* ¶ 80.) The Second Amended Complaint pleads no facts indicating that she would have successfully completed the trial period to qualify for a permanent modification, or, that she would have been financially able to make all necessary payments under a trial modification or a permanent one. Even if Plaintiff sufficiently pled that she would have qualified for a permanent modification, she still fails to demonstrate how a permanent modification would have or could have prevented the COA's proceedings against her.

Additionally, Plaintiff fails to demonstrate that the COA foreclosure sale *did not* divest her of an ownership interest. In this respect, Plaintiff's reliance on *Rivera*, 2016 N.J. Super. Unpub. LEXIS 1285[3] is misplaced. Plaintiff claims that Defendant had "full control over the fate of the property" until it transferred ownership of the property in May of 2018. (Opp'n Br. at 10). Plaintiff asserts that Defendant's full control of the Property until May of 2018 makes the determination of

---

[3] *Wells Fargo, N.A. v. Rivera*, No. A-2042-14T4, 2016 N.J. Super. Unpub. LEXIS 1285 (App. Div. June 6, 2016) concerns the same Plaintiff, Defendant, and Property as in the instant matter. There, Appellant Artem Rybakov (the purchaser of the Property after the first sheriff's sale) filed a motion to intervene in the mortgage foreclosure action. *Id.* at *1. The New Jersey Superior Court, Chancery Division denied Appellant's motion and the Appellate Division affirmed, holding that he failed to satisfy New Jersey Court *Rule* 4:33-1. *Id.* at *3.

the COA action irrelevant. *Id*. However, *Rivera* supports the contrary position in providing that the purchaser of the property at the first sheriff's sale (the result of the COA Action) acquired what remained of Plaintiff's ownership interest in the property. 2016 N.J. Super. Unpub. LEXIS 1285 at *10. As such, it is the COA action that first divested Plaintiff of her ownership interest in the Property.

Further, Plaintiff alleges causation depends on the proposition that if Defendants had granted her the loan modification, this would have set in motion certain events that would have resulted in her retaining ownership of the property. This proposition, however, is not enough to plead sufficient causation. *See Mickens v. Ford Motor Co.*, 900 F.Supp. 427 (D.N.J. 2012). The *Iqbal*[4]/*Twombly*[5] distinction between "possibility" and "plausibility" is "especially poignant as to hypothetical allegations about what might have been[.]" *Id*. at 439. Plaintiff does not allege *facts* to establish that a loan modification had the power to take any of the hypothetical remedial actions that she alleges or, having that power, would exercise it. *See id*. Plaintiff alleges that if she were granted the loan modification, she would have taken steps to stop the COA action, including filing a Chapter 13 Bankruptcy Petition to repay the COA arrears. (Second Am. Compl. ¶ 98.) Plaintiff, however, fails to allege that this "logical syllogism" is grounded in fact. *Mickens*, 900 F.Supp. at 439. Plaintiff does not allege that she would have qualified for Bankruptcy under Chapter 13, nor does she allege additional steps she could have taken to stop the COA action. As such, Plaintiff does not sufficiently assert a causal relationship and therefore fails to state a CFA claim.[6]

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)
[5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)
[6] Defendant cites to and relies upon *DeLuca v. CitiMortgage*, 543 F. Appx 194 (3d Cir. 2013) in its motion to dismiss. (*See* Moving Br. at 10.) While this opinion was decided "only for the parties" and has "no precedential value, *id*. at 196, the Court will nonetheless consider such case as persuasive authority. Defendant additionally relies upon *Slimm v. Bank of America Corp.*, No. 12-5846, 2013 WL 18667035 (D.N.J. May 2, 2013) to support its argument that it did not cause Plaintiff's loss. However, the District Court in *Slimm* found that there was no evidence to suggest that defendants guaranteed or made an express promise of a final loan modification to dismiss plaintiff's promissory

Because the CFA claim is dismissed on these grounds, the Court need not address Defendant's arguments regarding the other elements of the CFA. Generally, however, to the extent Defendant argues Plaintiff pleads facts in her CFA claim without the sufficient particularity to satisfy Rule 9(b), the Court agrees.

Rule 9(b) requires a heightened pleading standard. The heightened pleading standard applies to Plaintiff's CFA claims. *See Dewey v. Volkswagen*, 558 F.Supp.2d 505, 524 (D.N.J. 2008). To satisfy the specificity requirement of Rule 9(b), "the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 728 F. Supp. 2d 84, 104 (D.N.J. 2011).

Given that Plaintiff failed to state a CFA claim pursuant to Rule 12(b)(6), her bare CFA claims would not satisfy the stricter standard under Rule 9(b) to withstand Defendant's Motion to Dismiss.

Accordingly, Defendant's Motion to Dismiss as it relates to Count I of the Second Amended Complaint will be GRANTED.

**B.** **Count IV: Whether the Second Amended Complaint Adequately States a Claim for Common Law Fraud**

Defendant argues that Plaintiff's fraud claim fails because she has not pled any facts to support her assertion that Defendant knew she was qualified for a trial loan modification but told her she did not qualify. (Moving Br. at 22.) Further, Defendant argues that Plaintiff has not plausibly alleged reliance on Defendant's calculation error to her detriment because a separate entity (the COA) caused her departure from the Property. (*Id*. at 23.)

---

estoppel claims. *Id*. at *12. Nothing within the decision addressed how a failure to promise a final loan modification caused plaintiff's loss. As such, the Court does not rely upon the *Slimm* decision here.

Plaintiff, however, argues she states a plausible claim for common law fraud because (1) Defendant admitted Plaintiff should have been approved for a trial modification, but Defendant wrongfully denied her the opportunity; (2) Defendant was aware of what caused the error when it denied Plaintiff for a trial modification, but Defendant wrongfully believed it only affected loans analyzed with Home Preservation Application rather than the SLoaD tool because of its inadequate investigation and correction efforts; (3) Defendant intended that Plaintiff rely on the misrepresentations in order to continue with the foreclosure action and avoid potential legal claims; (4) Plaintiff reasonably relied upon this misrepresentation to not contest the COA Action; and (5) Plaintiff's damages were foreseeable because Defendant knew Plaintiff would lose her home after Defendant improperly denied Plaintiff a loan modification. (Opp'n Br. at 21–22.)

Defendant, in its reply, argues Plaintiff's own allegations "doom" her common law fraud claims. (Reply Br. at 8.) Specifically, Defendant argues that Plaintiff admits her loan was analyzed through the SLoaD tool, and Defendant did not discover the calculation errors for loans analyzed in SLoaD until 2018. (*Id*.) Therefore, Defendant argues, Plaintiff cannot allege that Defendant knowingly concealed the calculation error from her since 2013. (*Id*.)

In New Jersey, to state a claim for common law fraud, a plaintiff must allege the following: "(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). The heightened pleading standard set forth in Rule 9(b) applies to New Jersey common law fraud

15

claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims).

Here, the Second Amended Complaint does not plead sufficient facts state a claim for common law fraud. Count IV of the Second Amended Complaint refers to Defendant's misrepresentation to Plaintiff that she did not qualify for a loan modification. (Second Am. Compl. ¶ 129–135.) Plaintiff alleges that Defendant discovered its faulty calculation errors in August of 2013 and failed to correct the mistake until October of 2015. (*Id*. ¶ 131.) As such, the Second Amended Complaint does allege that Defendant was aware of the faulty calculation in December of 2013 when it misrepresented to Plaintiff that she did not qualify for the loan. (*Id*. ¶ 131.) For the purposes of this Motion the Court assumes the factual allegations pled in the Second Amended Complaint are true. Therefore, the Court must reject, at this stage, Defendant's assertion of the contrary fact that it was ignorant of the defects in SLoaD until 2018.

The Second Amended Complaint, however, suffers from another defect that is fatal to the common law fraud claim; it fails to sufficiently plead that Plaintiff relied on Defendant's alleged misrepresentation. As Defendant correctly indicates, Plaintiff cannot claim reliance on Defendant's calculation error to her detriment where a separate entity (the COA) caused her removal from the Property. Plaintiff here failed to plead any nexus between the alleged false representations and the causation of her injury.[7] *See Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, Civ. No. 09-3418, 2010 WL 1257790, at *4 (D.N.J. Mar. 29, 2010) (dismissing common law fraud claim due to a lack of "any nexus [] to the plaintiffs from which the Court could infer reliance

---

[7] As discussed in section IV.A., *supra*, the Court will rely upon the same analysis in granting Defendant's Motion to Dismiss as it relates to Plaintiff's claims under the Consumer Fraud Act. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 105 (3d Cir. 2013) (holding that plaintiffs failed to state a claim for common law fraud for the same reasons plaintiffs' CFA claim was inadequate).

16

by the plaintiffs or causation of the plaintiffs' alleged damages.")  Accordingly, Defendant's Motion to Dismiss Count IV will be GRANTED.

###  C. Count V: Whether the Second Amended Complaint Adequately States a Claim for Intentional Infliction of Emotional Distress

Defendant argues that Plaintiff's claim for intentional infliction of emotional distress ("IIED) also should be dismissed.  (Moving Br. at 24.)  It contends that the claim must fail due to a lack of causation and extreme and outrageous conduct.  (*Id*.)  Defendant concedes that it made a mistake, but it does not reach the threshold for extreme and outrageous conduct.  (*Id*. at 25–26.)  Additionally, Defendant argues that it could not have been trying to inflict emotional distress by withholding information from Plaintiff, (*Id*. at 26) (citing to *Fogarty v. Household Fin. Corp. III*, Civ. No. 14-4525, 2015 WL 852071, at *55 (D.N.J. Feb. 25, 2015)).

Plaintiff maintains that the Second Amended Complaint states a plausible claim for IIED. (Opp'n Br. at 23.)  She insists that Defendant acted in reckless disregard that probable emotional distress would result by initially ignoring the faulty calculation problem.  (*Id*. at 24.)  Additionally, Plaintiff argues that Defendant's conduct was extreme and outrageous because it failed to correct the calculation error despite consent orders mandating increased vigilance.  (*Id*. at 25.)  Finally, Plaintiff argues that Defendant's actions proximately caused her to suffer severe emotional distress.  (*Id*.)

In its reply, Defendant reiterates that Plaintiff's IIED allegations fall short of New Jersey's high bar.  (Reply Br. at 9.)  Defendant asserts *Buckley v. Trenton Fund Soc'y*, 111 N.J. 355 (1988) is dispositive here, arguing the New Jersey Supreme Court held that it was reluctant to allow compensation for IIED claims resulting from a bank's system malfunction.  (*Id*. at 10.)

In New Jersey, to establish a prima facie claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2)

17

that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988)). "To establish extreme and outrageous conduct, a plaintiff must show conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Buckley*, 111 N.J. at 366 (citation omitted)). A plaintiff cannot succeed on an IIED claim by merely demonstrating a defendant acted "unjust, unfair, and unkind." *Id.* "It is worth noting that the 'elevated threshold' for finding outrageous conduct is only satisfied in extreme cases under New Jersey law." *Fogarty,* 2015 WL 852071, at *55 (quoting *Griffin v. Tops Appliance City, Inc*., 337 N.J. Super. 15, 23 (App. Div. 2001)).

Although the Court does not agree with Defendant that *Buckley* is dispositive, given the language of the court in that case (see Reply Br. at 10), this Court does find Plaintiff has failed to establish a prima facie claim for intentional infliction of emotional distress.

Here, the Second Amended Complaint fails to sufficiently allege and identify instances where Defendant engaged in "outrageous conduct." *Witherspoon,* 173 F.Supp.2d at 242. The Second Amended Complaint merely alleges that Defendant failed to fix a known error despite repeated warnings from regulators and consent orders mandating increased vigilance, (Second Am. Compl. ¶ 139), Defendant continually failed to oversee, audit, and test its practices, accepting the faulty calculation's risk, (*id*. ¶¶ 140–144), and Defendant failed to mitigate Plaintiff's damages by intentionally waiting until months after selling the home to disclose the faulty calculation to Plaintiff. (*Id*. ¶ 145.) These allegations, however, do not rise to the level of "outrageous conduct" to succeed in an IIED claim. Outrageous conduct must be "so extreme in degree as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 111 N.J. at 366 (quoting Restatement (Second) of Torts § 46 cmt. d).  For example, in *Fogarty*, the Court found no outrageous conduct where the defendants mishandled a plaintiff's paperwork, gave the plaintiff an incorrect phone number to call with further questions, and rejected the plaintiff's request to have the defendants re-examine and rescind a mortgage based on fraud with minimum investigation of the matter.  *See* 2015 WL 852071, at *18.

Additionally, failing to comply with consent orders to maintain vigilance does not rise to the level of "outrageous conduct."  In *Dumont v. Litton Loan Servicing, LP*, the plaintiffs attempted to similarly rely on consent orders between the defendants and the Federal Reserve to prove abusive practices employed by mortgage loan servicers.  *See* Civ. No. 12-2677, 2014 WL 815244, at *19 (S.D.N.Y. Mar. 3, 2014).  The court found the consent orders and regulatory agreements did not contend that the defendants engaged in "deceptive and unconscionable practices devised to take advantage of vulnerable homeowners already in distress." *Id.* at *20.  As such, this Court will not assume that, based on the prior consent orders, Defendant acted with deceptive practices rising to the level of "outrageous conduct."  *See Duncan v. Wells Fargo Bank, N.A.*, Civ. No. 19-00172, 2021 WL 22086, at *8 (D.N.J. Jan. 4, 2021).

The Second Amended Complaint also fails to allege that Defendant intended to inflict emotional distress on Plaintiff by attempting to hide the calculation error.  "For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress." *Buckley,* 111 N.J. at 366.  Additionally, the Second Amended Complaint admits Defendant made a mistake and provided Plaintiff with a check in the amount of $25,000.00. (Second Am. Compl. ¶ 80–81.)  As such, Defendant's faulty modification calculation does not satisfy the standard for "extreme and outrageous conduct."  Accordingly, the Second Amended

Complaint fails to sufficiently plead an Intentional Infliction of Emotional Distress claim.  Count V will therefore also be DISMISSED.

## V. CONCLUSION

For the reasons stated above, the Court will GRANT the Motion and DISMISS the Second Amended Complaint WITHOUT PREJUDICE.[8]  The Court will also permit Plaintiff another opportunity to plead her claims by granting leave to file a Third Amended Complaint within 30 days.  Given Plaintiff's two prior unsuccessful attempts, however, failure to remedy the defects identified by the Court herein may result in dismissal of her claims with prejudice.

Date: **September 21, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[8] Insofar as the Court will grant Defendant's Motion, it does not reach Defendant's argument that Plaintiff's non-statutory tort claims are barred by the economic loss doctrine, nor Defendant's argument that Plaintiff is not entitled to punitive damages under New Jersey Law.  (Moving Br. at 27–30.)