## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAWN VAN BRUNT, | |
| Plaintiff, | Case No. 3:19-cv-00170-ZNQ-TJB |
| v. | |
| WELLS FARGO BANK, N.A., | (Filed Electronically) |
| Defendant. | |

## WELLS FARGO BANK, N.A.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS
## THE THIRD AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ...................................................................................3

LEGAL STANDARD ............................................................................6

ARGUMENT ........................................................................................7

A.   Wells Fargo's Conduct Did Not Cause Van Brunt's Loss. ............................7

B.   Van Brunt Fails to State a Claim for Violation of the New Jersey
     Consumer Fraud Act (Count One). .............................................13

     1.   Van Brunt Cannot Plausibly Allege the Requisite Causal
          Nexus. ...........................................................................14

       (a)   The HOA foreclosure undercuts any claim that Wells
            Fargo caused the alleged harm. ................................15

       (b)   Van Brunt's conclusory, speculative allegations cannot
            establish a causal nexus between Wells Fargo's alleged
            conduct and the alleged damages. ..............................16

C.   Van Brunt Fails to State a Claim for Common Law Fraud (Count
     Two). ........................................................................................19

D.   Van Brunt Fails to Plead Intentional Infliction of Emotional Distress
     (Count Three). ...........................................................................20

E.   Van Brunt Is Not Entitled to Punitive Damages Under New Jersey
     Law. .........................................................................................26

CONCLUSION .....................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allah-Bey v. Roberts*,
  668 F. App'x 419 (3d Cir. 2016) ........................................................16

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009) ...........................................6, 7, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................6, 16

*Banco Popular N. Am. v. Gandi*,
  184 N.J. 161 (2005) ...............................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................6, 7, 26

*Buckley v. Trenton Sav. Fund Soc'y*,
  216 N.J. Super. 705 (Super. Ct. App. Div. 1987).............................22

*Buckley v. Trenton Sav. Fund Soc'y*,
  111 N.J. 355 (1988) ........................................................................21, 22

*Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*,
  No. 09-3418 (MLC), 2010 WL 1257790 (D.N.J. Mar. 29, 2010).....................20

*Cox v. Sears Roebuck & Co.*,
  138 N.J. 2 (1994) ...................................................................................14

*Dabush v. Mercedes-Benz USA, LLC*,
  378 N.J. Super. 105 (App. Div. 2005)................................................14

*Decker v. Princeton Packet*,
  224 N.J. Super. 726 (Super. Ct. App. Div. 1988).............................22

*DeLuca v. CitiMortgage*,
  543 F. App'x 194 (3d Cir. 2013) ........................................................12

*Dumont v. Litton Loan Servicing, LP*,
  No. 12-2677, 2014 WL 815244 (S.D.N.Y. Mar. 3, 2014) ................24

i

*Duncan v. Wells Fargo Bank, N.A.*,
   Civ. No. 19-00172, 2021 WL 22086 (D.N.J. Jan. 4, 2021)................................24

*Fair Wind Sailing, Inc. v. Dempster*,
   764 F.3d 303 (3d Cir. 2014) ................................................................6

*Fogarty v. Household Fin. Corp. III*,
   No. 14-4525 (RBK/JS), 2015 U.S. Dist. LEXIS 23064 (D.N.J. Feb.
   25, 2015) ...........................................................................22, 23

*Frungillo v. Imperia Entm't, Inc.*,
   No. 08-0908 (DRD), 2009 U.S. Dist. LEXIS 89863 (D.N.J. Sep.
   28, 2009) ................................................................................26

*Gasoline Sales, Inc. v. Aero Oil Co.*,
   39 F.3d 70 (3d Cir. 1994) .....................................................................7

*Hoffman v. Liquid Health Inc.*,
   No. 14-01838 (SRC), 2014 WL 2999280 (D.N.J. July 2, 2014)......................19

*Hume v. Bayer*,
   178 N.J. Super. 310 (Law. Div. 1981)...................................................22

*McTernan v. City of York*,
   577 F.3d 521 (3d Cir. 2009) ................................................................6

*Mickens v. Ford Motor Co.*,
   900 F. Supp. 2d 427 (D.N.J. 2012)...............................................*passim*

*Mladenov v. Wegmans Food Markets, Inc.*,
   124 F. Supp. 3d 360 (D.N.J. 2015)......................................................18

*Monday-West v. Wells Fargo Bank, N.A.*,
   No. 20-6381, 2022 WL 16848879 (6th Cir. Nov. 9, 2022)..............................24

*N.J. Citizen Action v. Schering-Plough Corp.*,
   367 N.J. Super. 8 (App. Div.), *cert. denied*, 178 N.J. 249 (2003).....................14

*Rudel Corp. v. Heartland Payment Sys., Inc.*,
   No. 16-2229, 2016 WL 4472944 (D.N.J. Aug. 23, 2016)..........................15, 18

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010) .............................................................6, 7

*Slimm v. Bank of Am. Corp.*,
  2013 U.S. Dist. LEXIS 62849 (D.N.J. May 2, 2013)..........................................12

*Stolba v. Wells Fargo & Co.*,
  No. 10-CV-6014 (WJM)(MF), 2011 U.S. Dist. LEXIS 87355
  (D.N.J. Aug. 8, 2011)...........................................................................................13

*Tafaro v. Six Flags Great Adventure, LLC*,
  No. 17-5607 (FLW)(LHG), 2018 U.S. Dist. LEXIS 53013 (D.N.J.
  Mar. 29, 2018)......................................................................................................27

*Tassel v. Ocean Cty.*,
  No. 16-4761 (BRM) (TJB), 2017 U.S. Dist. LEXIS 190953 (D.N.J.
  Nov. 17, 2017) .....................................................................................................21

*Thiedemann v. Mercedes-Benz USA, LLC*,
  183 N.J. 234 (2005) .............................................................................................15

*Ward v. Barnes*,
  545 F. Supp. 2d 400 (D.N.J. 2008).....................................................................23

*Witherspoon v. Rent-A-Ctr., Inc.*,
  173 F. Supp. 2d 239 (D.N.J. 2001).....................................................................21

**Statutes**

N.J.S.A. § 2A:15-5.10...............................................................................................26

N.J.S.A. § 2A:15-5.12(a) ..........................................................................................26

N.J.S.A. § 56:8-19.....................................................................................................15

N.J. Stat. § 56:8-2.............................................................................................1, 5, 13

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................15, 19, 20

**INTRODUCTION**

Despite three opportunities to salvage her claims, Plaintiff Dawn Van Brunt continues to rely on the same legal theories this Court found deficient when it dismissed her original Complaint, her First Amended Complaint, and her Second Amended Complaint.  Van Brunt repleads her claims against Wells Fargo, all based on her allegation that it wrongly denied her a trial—not permanent—loan modification over seven years ago.  Although Van Brunt has attempted to plead around the Court's two dismissal orders, she is unsuccessful, yet again, because her pleading deficiencies cannot be cured.

This Court dismissed Van Brunt's New Jersey Consumer Fraud Act ("CFA") claim because she did not allege that she lost her home "as a result of" Wells Fargo's unlawful conduct.  ECF No. 65 at 12.  Specifically, this Court held she did not allege facts to indicate she would have successfully completed the trial period to qualify for a permanent modification, been financially able to make the necessary payments under a trial or permanent modification, or that a permanent modification would have prevented her homeowner's association from foreclosing on her.  Van Brunt's Third Amended Complaint ("TAC") does not overcome these defects because Van Brunt's new allegations—that she would have borrowed money to pay off the debt she owed her homeowners association and that she would have filed for Chapter 13 bankruptcy to do the same—remain too speculative and tenuous to be plausible.

1

These same new allegations leave Van Brunt's common law fraud claim hopelessly doomed for want of reliance—namely, Van Brunt cannot claim to have relied on Wells Fargo's calculation error to her detriment where Van Brunt's homeowner's association, and not Wells Fargo, caused her to lose her home.

This Court has already determined that failure to comply with consent orders to "maintain vigilance" does not rise to the level of outrageous conduct required to state an intentional infliction of emotional distress ("IIED") claim. *See* ECF No. 65 at 18. Van Brunt's rephrased factual allegations—that Wells Fargo allowed systematic errors to persist for years, ignored consent decrees, failed to reform its verification and auditing practices, concealed discovery of additional software, failed to identify other related errors, and ignored oversight responsibilities allegedly contained in consent orders—are still all premised on putative breaches of various consent orders and thus do not give rise to the level of outrageous and extreme conduct required to state an IIED claim under New Jersey law.

After four years and four chances to plead her case, Van Brunt's new allegations only reinforce the conclusion that is by now all too familiar: she has no grounds to assert a viable claim against Wells Fargo. The Court should dismiss the Third Amended Complaint with prejudice.

## BACKGROUND

In 2007, Van Brunt obtained a residential mortgage loan (the "Loan") which was secured by property located at 4101 Dairy Court, Freehold, New Jersey, 07728 (the "Property"). TAC ¶¶ 1, 3 & Ex. 1. According to Van Brunt, Wells Fargo serviced the Loan from approximately July 12, 2007 to July 11, 2017. TAC ¶ 3.

After leaving her job in 2009, Van Brunt was not able to meet her payment obligations to Wells Fargo, and she defaulted on the Loan on or about April 1, 2011. TAC ¶ 61; *see also* RJN Ex. A, Wells Fargo Foreclosure Compl.[1] Van Brunt failed to make any payments after this date or otherwise cure this default. *See* RJN Ex. A, Wells Fargo Foreclosure Compl. Wells Fargo initiated foreclosure proceedings based on this default on November 19, 2012. TAC ¶ 65; RJN Ex. A, Wells Fargo Foreclosure Compl. In December 2013, Wells Fargo communicated to Van Brunt that she did not qualify for a trial modification of the Loan. TAC ¶ 66.

The Strickland Farm Condominium Association, Inc.—the homeowners association ("HOA")[2] associated with the Property—initiated legal proceedings against Van Brunt in August 2011 to recoup over 24 months of delinquent condominium assessment payments. *See* TAC ¶ 62, Ex. 22 (Foreclosure Case

---

[1] Wells Fargo has submitted to the Court herewith a Request for Judicial Notice ("RJN") of certain publicly filed court documents.

[2] Van Brunt refers to the Strickland Farm Condominium Association, Inc. as the "COA" in her Third Amended Complaint. Consistent with prior pleadings, Wells Fargo refers the Association as the "HOA."

Docket); Ex. 22 (HOA Complaint).  After Van Brunt failed to resolve her HOA delinquency, the HOA ultimately foreclosed on the Property and sold it, subject to Wells Fargo's mortgage lien, to a third party in February 2014.  TAC ¶ 72.  Van Brunt alleges that she was "forced to move out of the Property on or about September 3, 2014."  TAC ¶ 71.  Wells Fargo, however, did not initiate foreclosure proceedings against Van Brunt until November 2012 and did not execute its own foreclosure judgment until January 2015—at which point Van Brunt had been out of the Property for at least four months, according to the TAC.  *See* TAC ¶¶ 65, Ex. 25 (Foreclosure Case Docket), 74; RJN Ex. B, Wells Fargo Final Judgment of Foreclosure; RJN Ex. C, Foreclosure Report of Wells Fargo Sale; RJN Ex. D, Wells Fargo Sheriff's Deed.  Nonetheless, Van Brunt still blames Wells Fargo for the loss of her Property, forfeiture of her Section 8 housing benefits, emotional distress, salary reductions, and legal fees, among other damages.  TAC ¶ 112.

Van Brunt had no contact with Wells Fargo between April 2015 and September 2018.  *See generally* TAC.  On or about September 20, 2018, she received a letter from Wells Fargo notifying her that it had erroneously denied her a trial loan modification.  TAC ¶ 79, Ex. 31.  A $25,000 check accompanied the letter, along with an offer of mediation if Van Brunt did not "feel that [Wells Fargo] made things right."  TAC ¶¶ 102-103; Ex. 31.  Wells Fargo had publicly disclosed an explanation of the calculation error upon which the letter was premised over a month earlier in

its August 3, 2018 Form 10-Q filing.  TAC ¶ 45.  In October 2018, Van Brunt requested to participate in mediation with Wells Fargo, and the mediation took place on December 28, 2018.  TAC ¶ 108.  The mediation was unsuccessful.  *Id*.

On January 7, 2019, Van Brunt filed this litigation, bringing claims under the New Jersey Consumer Fraud Act ("CFA") and for fraud and breach of the covenant of good faith and fair dealing.  At the direction of the Court, the parties mediated— again unsuccessfully—on May 30, 2019.  Van Brunt then amended her Complaint on July 25, 2019 adding claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.  Wells Fargo moved to dismiss Van Brunt's First Amended Complaint on September 13, 2019.   On December 31, 2020, this Court granted Wells Fargo's Motion to Dismiss with leave to amend.  Van Brunt filed her Second Amended Complaint on February 8, 2021, adding a breach of contract claim.  During motion to dismiss briefing, recognizing that her breach of contract and violation of the covenant of good faith and fair dealing claims lacked merit, Van Brunt withdrew those two counts.  On September 21, 2022, this Court once again, granted Wells Fargo's Motion to Dismiss with leave to amend.  Van Brunt then filed the Third Amended Complaint on November 11, 2022.  She seeks actual damages of at least $75,000, in addition to treble damages, punitive damages, and attorneys' fees and costs.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard is only met when the pleadings contain facts that allow the court to reasonably infer a defendant's liability.  *Id.* (citing *Twombly*, 550 U.S. at 556).  As the Supreme Court and the Third Circuit have repeatedly held, a "sheer possibility" of unlawful conduct or "facts that are 'merely consistent with' a defendant's liability" will not suffice.  *Id.* (citing *Twombly*, 550 U.S. at 557); *Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010) ("Allegations that are merely consistent with a defendant's liability or show the mere possibility of misconduct are not enough.") (quotations omitted); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 291 (D.N.J. 2009) ("Ultimately, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts.") (citation and quotations omitted).

Accordingly, "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements" do not meet this standard.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014); *McTernan v. City of York*, 577 F.3d

6

521, 532 (3d Cir. 2009).  Where a plaintiff has failed to "nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see also Santiago*, 629 F.3d at 134 (same).

In the Third Circuit, where—as here—a plaintiff seeks to modify allegations in hopes of remedying factual deficiencies, and is not seeking to add information or claims that were previously unknown, "three attempts at a proper pleading is enough." *Gasoline Sales, Inc. v. Aero Oil Co*., 39 F.3d 70, 74 (3d Cir. 1994).

## ARGUMENT

### A.   Wells Fargo's Conduct Did Not Cause Van Brunt's Loss.

Van Brunt's new allegations do nothing to remediate the fact that all of her claims fail for lack of causation.  The TAC makes no allegations to overcome the fact that Van Brunt's HOA, and not Wells Fargo, caused her to lose her Property.  In addition, the new factual allegations Van Brunt does assert are entirely speculative and are premised on an attenuated string of events that do not support the conclusion that but for the trial modification denial, Van Brunt would have kept possession of her Property.

To survive a motion to dismiss, Van Brunt must plausibly plead a "loss [s]he has suffered or will suffer *as a result of the unlawful conduct*."  *Arcand*, 673 F. Supp. 2d at 300 (emphasis added).  But her allegations continue to fail at this basic level, as she cannot overcome the intervening and superseding foreclosure by the HOA,

which breaks any alleged chain of causation between the erroneous trial modification denial and the loss of the Property.  As this Court held when it dismissed the Second Amended Complaint, the HOA foreclosure sale divested Van Brunt of an ownership interest in the Property first, and her claims thus necessarily fail as a matter of law.  ECF No. 65 at 13.  Nor has she alleged facts suggesting she would have been able to keep the Property had the trial modification been approved.

According to Van Brunt, Wells Fargo fraudulently or intentionally issued the erroneous denial (TAC ¶¶ 140, 148) and concealed the error in order to foreclose on the Property (TAC ¶¶ 74, 121. 137, 142), causing Van Brunt to lose her Property (TAC ¶ 112).  But the TAC reveals a wholly separate reason Van Brunt lost her Property.  After she failed to pay years' worth of condominium association fees, her HOA sold the Property at a foreclosure sale.  *See* TAC ¶¶ 62-63.  Notwithstanding the preceding foreclosure sale by her HOA, Van Brunt alleges Wells Fargo caused the loss of her home and resulting damages.  Specifically, she contends that the erroneous denial of the trial modification "took away the opportunity for Van Brunt to obtain a permanent loan modification and remain in the Property."  TAC ¶ 112.A. As the Court previously recognized when it dismissed Van Brunt's First Amended Complaint and Second Amended Complaint, Van Brunt would have owed those fees, and thus would have "been foreclosed upon by the HOA[,] whether or not Wells Fargo had denied the trial payment plan."  ECF No. 42 at 18; *see also* ECF

No. 65 at 12 ("Plaintiff fails to demonstrate that the [H]OA foreclosure sale *did not* divest her of an ownership interest"). Thus, the HOA foreclosure sale is the unambiguously intervening and superseding cause that *actually* forced Van Brunt from the Property in 2014. TAC ¶ 70. This fact precludes Van Brunt from plausibly alleging that the erroneous trial modification denial caused the loss of the Property or any damages claimed therefrom.

Despite being granted leave to amend, three times, Van Brunt's causation allegations remain entirely speculative and still hinge on the tenuous notion that obtaining the trial loan medication would "set in motion certain events that would have resulted in her retaining ownership of the property." ECF No. 65 at 13. For example, Van Brunt alleges that if Wells Fargo had granted her a loan modification, she "could and would have borrowed money from friends and/or family to pay the [HOA] debt in full" or, alternatively, she "could have and would have filed a Chapter 13 Bankruptcy Petition and repaid the [H]OA arrears over a period of up to sixty (60) months." TAC ¶¶ 95-96.

Van Brunt's alternative theories of how she "could and would have" paid off the delinquent HOA dues are devoid of facts and demonstrate that her claims remain hopelessly speculative. Van Brunt does not sufficiently allege that, had she been approved for the trial modification, she would have been able to make the required payments during the trial period; nor does she sufficiently allege that she would have

qualified for and performed under a permanent loan modification.  Indeed, Van Brunt does not even allege that, after she left her job in 2009, she obtained employment or another source of income that would have allowed her to resume making mortgage payments.  *See generally* TAC.  Nor does she adequately allege that obtaining the trial modification alone would have prevented the HOA from (1) foreclosing on her Property after she failed to pay the HOA what she owed, or (2) selling the Property to a third party.  *See generally* TAC.

In addition, she does not, allege that her friends and family had the money to successfully pay off her debts or that she ever considered filing bankruptcy when she was *actually* in the process of losing her Property.  Likewise, Van Brunt makes no allegations in the TAC that she ever attempted to borrow from friends, family, or anyone else for that matter, to keep from falling behind on her HOA dues or mortgage or to redeem her Loan.  *See generally* TAC.  Thus, Van Brunt's causation theory rests on her unsubstantiated belief that, but for the erroneous trial modification denial, she (1) could have and would have found friends and/or family to borrow from in order to pay her HOA debt in full and (2) would have been able to collect enough money from friends and family to do so, and (3) would not have lost the Property to the HOA foreclosure, which, again, had nothing to do with Wells Fargo.  As the Court explained in dismissing the First Amended Complaint and Second Amended Complaint, "Plaintiff must set forth allegations sufficient to show

10

those losses are causally connected to Defendant's alleged conduct.   It is not sufficient to make conclusory or broad-brush allegations regarding Defendant's conduct; plaintiff must specifically plead those facts."  ECF No. 42 at 9 (quotations and citation omitted); ECF No. 65 at 11.  Van Brunt's conclusory, speculative allegations in the TAC fail this test.

Van Brunt also asserts, in conclusory fashion, that if "Wells Fargo advised . . . Van Brunt that she qualified for the loan modification, [she] would have taken immediate steps to resolve the HOA Action, including, but not limited to, filing a Chapter 13 Bankruptcy Petition to repay the [HOA] arrears."  TAC ¶ 119.  Here again, Van Brunt's theory requires a series of logical leaps not supported by her factual allegations, including the unfounded assumptions that (1) her Chapter 13 bankruptcy petition would have succeeded; (2) the HOA would have been required to or would have agreed to a bankruptcy repayment plan; and (3) Van Brunt would have had sufficient funds to repay the HOA arrears through the bankruptcy.  Van Brunt's new allegations that she "would have qualified for a Debtor under a Chapter 13 bankruptcy as she was an individual with regular income with less than $250,000 in unsecured debts and $750,000 in secured debts" and that she would have "easily afforded the Chapter 13 payment needed to cure the [H]OA debt in full" are belied by the facts.  Van Brunt might not have qualified for Chapter 13 bankruptcy simply because she met the income and debt thresholds.  This is particularly true given her

history of failing to make timely monthly payments. Accordingly, Van Brunt's allegations simply reinforce that the alleged causal chain is too attenuated.

Finally, Van Brunt does not sufficiently allege that, had she been granted the trial modification, she would have later been approved for and adequately performed under a permanent loan modification. Indeed, Wells Fargo would have had no obligation to subsequently approve Van Brunt for a permanent loan modification if, for example, she failed to make timely payments during the trial period. And Van Brunt's new allegations simply maintain that she would have paid them because she would have been "financially able" to make them as they would have been 31% of her gross income. TAC ¶¶ 81, 83.¶

On this issue, several cases are instructive. In *DeLuca v. CitiMortgage*, 543 F. App'x 194, 197 (3d Cir. 2013), the Third Circuit affirmed dismissal of the borrowers' CFA and common law fraud claims because they had been offered only a trial loan modification, and any permanent modification would have been subject to qualifications, such that "any causal connection between alleged misrepresentations and any loss allegedly suffered by the DeLucas [was broken]."

Likewise, in *Slimm v. Bank of Am. Corp.*, this Court (Hillman, J.) dismissed a bevy of claims because "[p]laintiffs [had] not pled—and there [was] no evidence to suggest—that the [d]efendants guaranteed or made an express promise of a final loan modification." No. 12-5846 (NLH/JS), 2013 U.S. Dist. LEXIS 62849, at *41

(D.N.J. May 2, 2013).  Van Brunt's allegation that she would have been "financially able" to make the modified payments because they would have been 31% of her income is insufficient because she makes no factual allegations, for example, that she obtained a job, had job stability, or made any financial changes that would have caused her to start making payments. TAC ¶¶ 81, 83.  Thus, as with the First Amended Complaint and the Second Amended Complaint, the TAC "pleads no facts indicating [Van Brunt] would have qualified for a permanent modification or made all of the necessary payments under a permanent modification until the mortgage was paid off."  ECF No. 42 at 10; ECF No. 65 at 13; *see also Stolba v. Wells Fargo & Co.*, No. 10-CV-6014 (WJM)(MF), 2011 U.S. Dist. LEXIS 87355, at *12 (D.N.J. Aug. 8, 2011).  This is particularly true given Van Brunt's admissions that she left her job in 2009, defaulted on her loan, and owed years' worth of fees to her HOA, causing it to foreclose on the Property.  TAC ¶¶ 61, 62.

Because Van Brunt cannot adequately allege causation, the TAC should be dismissed with prejudice.

## B.    Van Brunt Fails to State a Claim for Violation of the New Jersey Consumer Fraud Act (Count One).

The causation deficiencies discussed above specifically doom the causal nexus element of Van Brunt's CFA claim.

A plaintiff making a CFA claim must allege (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the unlawful practice and

13

the ascertainable loss. *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 114 (App. Div. 2005); *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div.), *cert. denied*, 178 N.J. 249 (2003). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). Van Brunt purports to base her CFA claim on three "separate" alleged violations (TAC ¶ 116)—one affirmative act and two knowing omissions:

(1)   A 2013 statement by Wells Fargo that purportedly "misrepresented to Van Brunt that she had not qualified for the trial modification, when in fact she *had* qualified for the trial modification program, which would have allowed her to remain in the property" (TAC ¶ 118);

(2)   Wells Fargo was delayed in "remediat[ing]" the calculation errors because Wells Fargo "waited until 2015 to even implement a partial fix." In addition, Wells Fargo waited "three (3) years before disclosing this error to Van Brunt" (TAC ¶ 120);

(3)   Van Brunt further alleges that Wells Fargo "knowingly concealed or omitted" "the 'faulty calculation'" from 2013 to 2018 (TAC ¶ 121).

The Court should reject all three theories because under either theory, Van Brunt's factual allegations do not satisfy the causal nexus requirement necessary to state a CFA claim.

### 1.   Van Brunt Cannot Plausibly Allege the Requisite Causal Nexus.

To properly allege causation under the CFA, "plaintiffs must plead a causal nexus between the alleged act of consumer fraud and the damages sustained." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 438 (D.N.J. 2012) (quotation and

citation omitted).  The facts establishing this causal nexus "must" be pled "with the particularity required by Rule 9(b)."  *Arcand*, 673 F. Supp. 2d at 303.  The TAC must accordingly plead facts that show a chain of causation from the alleged misrepresentation to an "ascertainable loss of moneys or property, real or personal." N.J.S.A. § 56:8-19.  Indeed, "[t]he limiting nature of the [causal nexus] requirement allows a private cause of action only to those who can demonstrate a loss attributable to conduct made unlawful by the CFA."  *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 246 (2005); *see also Rudel Corp. v. Heartland Payment Sys., Inc*., No. 16-2229, 2016 WL 4472944, at *5 (D.N.J. Aug. 23, 2016) ("[T]he CFA does require that plaintiffs show there is a causal link between their loss and the [defendant's] conduct that the CFA seeks to punish.").  As shown below, Van Brunt has not alleged the requisite causal nexus for at least two reasons.

> (a)  The HOA foreclosure undercuts any claim that Wells Fargo caused the alleged harm.

First, Van Brunt's own allegations render her causation theory implausible. As discussed *supra*, and as the Court noted when it dismissed the earlier versions of her CFA claim, Van Brunt lost her Property because of a judicial foreclosure proceeding brought by her HOA, *not* because Wells Fargo denied her a trial modification and foreclosed on the Property.  TAC ¶ 72; *see* Section A, *supra*.  For this reason, her CFA claim should be dismissed.  *Mickens*, 900 F. Supp. 2d at 438 (dismissing CFA claim because plaintiff failed to "plead a causal nexus between the

15

alleged act of consumer fraud and the damages sustained") (quotation marks, citation, and ellipses omitted); *see also Iqbal*, 556 U.S. at 678; *Allah-Bey v. Roberts*, 668 F. App'x 419, 420 (3d Cir. 2016).

> (b)   Van Brunt's conclusory, speculative allegations cannot establish a causal nexus between Wells Fargo's alleged conduct and the alleged damages.

In an attempt to salvage the CFA claim, Van Brunt now alleges not only that "[h]ad Wells Fargo properly extended the modification offer … [she] would have tendered the required payments under the Trial Period Plan, thereby entitling her to a permanent loan modification" because "the final payment under the permanent modification would have been the same or less than the trial mortgage payment," but that she would have been financially able to make all necessary payments under the FHA's own guidelines because the monthly payment would have been 31% of her monthly income.  TAC ¶¶ 83,98.  Van Brunt also alleges that had "she qualified for the [trial] loan modification, [she] would have taken immediate steps to resolve the [HOA] Action including, but not limited to, filing a Chapter 13 Bankruptcy Petition to repay the [HOA] arrears."  TAC ¶ 119.  These speculative, conclusory allegations are simply too attenuated to sufficiently allege causation.  *See* Section A, *supra*.

Regarding Van Brunt's bankruptcy allegations, *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, is instructive.  There, a consumer alleged that the defendant car

manufacturer violated the CFA by failing to certify to the Division of Consumer Affairs the existence of a car design defect. *Id.* at 438. As this Court (McNulty, J.) noted, the plaintiff's allegation "depend[ed] on the proposition that if the Division of Consumer Affairs had taken action based on [the defendant's] report of the hood defect, this would have set in motion a chain of events that would have resulted in [the plaintiff] (and others) being dissuaded from purchasing the automobiles at issue." *Id.* Accordingly, this Court dismissed the CFA claim for lack of causation, finding that the plaintiff "d[id] not allege facts to establish that the Division of Consumer Affairs" could have or would have taken the "hypothetical remedial actions" alleged if it had been informed. *Id.* at 439. As the Court explained, "[f]or his counterfactual causation allegation to be plausible," the plaintiff would have had to "allege something in the form of '[w]hen the Division of Consumer Affairs is faced by situation X, it does Y; this case presents situation X; therefore, the Division, if informed of that situation, would have done Y.' And he must plausibly allege that this logical syllogism is grounded in fact." *Id.*

Here, too, Van Brunt claims losses based on the hypothetical and speculative belief that, had she filed for bankruptcy, that process would have successfully concluded in her favor, thereby allowing her to repay the delinquent HOA fees via a Chapter 13 repayment plan. As this Court held in *Mickens*, however, allegations that a particular act "would have set in motion a chain of events that would have

17

resulted in [the plaintiff] … avoiding the particular harm]" are not enough.  900 F. Supp. 2d at 439.  Thus, Van Brunt's bankruptcy allegations cannot save her CFA claim.

Van Brunt's allegations regarding a hypothetical permanent loan modification fare no better.  Indeed, Van Brunt still does not allege any "facts indicating she would have qualified for a permanent modification or made all of the necessary payments under a permanent modification until the mortgage was paid off."  ECF No. 42 at 10.  Instead, she alleges—without any underlying facts—that the amount of any permanent modification payment would have been the same as or less than the trial payment amount and that she would have financially been able to make those payments because they would have been 31% of her income.  TAC ¶ 85, 98.  Again, however, Van Brunt never alleges that she got a job or other income that would have allowed her to resume her monthly mortgage payments, nor does she allege any facts showing that she would have been able to make every single permanent modification payment "until the mortgage was paid off."  ECF No. 42 at 10.  And as discussed *supra*, her allegations that she would have obtained money from family and friends are too speculative.  Thus, because "[Van Brunt] fails to plead a causal link between [her] loss and [Wells Fargo's] allegedly duplicitous behavior, [she] cannot meet the third requirement for a CFA claim," and that claim must be dismissed.  *See Rudel*, 2016 WL 4472944, at *5; *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp.

3d 360, 376 (D.N.J. 2015) (granting motion to dismiss CFA claim where "plaintiffs . . . fail to allege facts supporting a causal nexus between [d]efendant's alleged misrepresentations and any potential ascertainable loss").

For these reasons, Van Brunt's failure—and inability—to plead causation requires her CFA claim to be dismissed.

## C.   Van Brunt Fails to State a Claim for Common Law Fraud (Count Two).

This Court has already identified and dismissed Van Brunt's common law fraud claim for want of reliance—Van Brunt's TAC makes no new allegations to cure this issue.

Van Brunt's common law fraud claim "involves a more onerous standard," under Rule 9(b), with even more stringent intent and reliance pleading requirements that she has not met. *Hoffman v. Liquid Health Inc.*, No. 14-01838 (SRC), 2014 WL 2999280, at *10 (D.N.J. July 2, 2014).  As Van Brunt acknowledges, to state a claim for fraud, she must plausibly plead five elements: (1) a material misrepresentation of presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages.  TAC ¶ 130; *Hoffman*, 2014 WL 2999280, at *10.

The fraud claim fails for the simple reason that Van Brunt has not plausibly alleged reliance.  In fact, Van Brunt's claim that Wells Fargo's conduct "directly and proximately caused" her damages is belied by her admission that she was forced to

move from the Property because of the HOA foreclosure sale, not by anything Wells Fargo did. *See* TAC ¶¶ 72-73. In short, Van Brunt cannot claim to have relied on Wells Fargo's calculation error to her detriment where another entity caused her departure from the Property; her fraud claim accordingly cannot survive. *See Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, No. 09-3418 (MLC), 2010 WL 1257790, at *4 (D.N.J. Mar. 29, 2010) (dismissing common law fraud claim in absence of "any nexus at all to the plaintiffs from which the Court could infer reliance by the plaintiffs or causation of the plaintiffs' alleged damages"); *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 174 (2005) (reliance is the "hallmark[] of any fraud claim").

Accordingly, Van Brunt's common law fraud claim should be dismissed.[3]

## D.    Van Brunt Fails to Plead Intentional Infliction of Emotional Distress (Count Three).

Van Brunt's claim for IIED also should be dismissed. In an attempt to save her IIED claim, Van Brunt rephrases factual allegations to now allege that Wells Fargo allowed systematic errors to persist for years, ignored consent decrees, failed

---

[3] In addition, Van Brunt still fails to allege "*who* at Wells Fargo engaged in the wrongful conduct, *how* the alleged misrepresentation was conveyed to her, or *what* precisely she was told." ECF No. 42 at 11(emphasis in original) (internal quotations omitted). Since this Court has already determined that these defective fraud allegations fail to meet the heightened pleading standard set forth in Rule 9(b), and therefore cannot withstand a motion to dismiss, Van Brunt's fraud claim should be dismissed. *Id*.

to reform its verification and auditing practices, concealed discovery of additional software, failed to identify other related errors, and ignored oversight responsibilities arising from consent orders.  TAC ¶¶ 143-145.  Each of these allegations is still all premised on putative breaches of various consent orders and thus do not give rise to the level of outrageous and extreme conduct required to state an IIED claim.

To successfully plead this claim, Van Brunt must allege facts sufficient to show "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Tassel v. Ocean Cty.*, No. 16-4761 (BRM) (TJB), 2017 U.S. Dist. LEXIS 190953, at *21-22 (D.N.J. Nov. 17, 2017) (citation omitted).  In addition to failing for lack of causation, as discussed *supra*, Van Brunt's amended IIED claim still fails to allege extreme and outrageous conduct under New Jersey law.

To establish "extreme and outrageous" conduct for purposes of a motion to dismiss, a plaintiff must sufficiently plead factual allegations showing the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon v. Rent-A-Ctr., Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366, (1988) (citation omitted)).  "It is worth noting that the elevated

threshold for finding outrageous conduct is only satisfied in extreme cases under New Jersey law." *Fogarty v. Household Fin. Corp. III*, No. 14-4525 (RBK/JS), 2015 U.S. Dist. LEXIS 23064, at *55 (D.N.J. Feb. 25, 2015) (citation and internal quotation marks omitted).

For these reasons, it is well-settled that "a mistake . . . is not sufficient to give rise to a claim for money damages" in an IIED action. *Decker v. Princeton Packet*, 224 N.J. Super. 726, 728 (Super. Ct. App. Div. 1988). Here, Van Brunt acknowledges that her trial loan modification was denied due to a calculation error. In *Buckley v. Trenton Sav. Fund Soc'y*, the Appellate Division ordered a new trial where the IIED jury charge failed to distinguish between a mistake and willful conduct. 216 N.J. Super. 705, 715 (Super. Ct. App. Div. 1987). The New Jersey Supreme Court affirmed the decision, explaining that it was "reluctant to allow compensation for the intentional infliction of emotional distress . . . unless the bank's conduct is intentional, as well as reckless or outrageous" because a bank's "system[s] sometimes malfunction[]." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 368, 544 A.2d 857, 864 (1988); *cf. Hume v. Bayer*, 178 N.J. Super. 310, 319 (Law. Div. 1981). Accordingly, Van Brunt's allegations that Wells Fargo made a mistake—which it voluntarily admitted, and for which it proactively offered compensation in order to, as it said, "'make things right,'" TAC ¶ 79—do not come

close to reaching New Jersey's elevated threshold for extreme and outrageous conduct.

In addition, an IIED claim requires that "the defendant 'must intend both to do the act *and* to produce emotional distress" when engaging in the controverted conduct. *Fogarty*, 2015 U.S. Dist. LEXIS 23064, at *55. As the Court previously held, Van Brunt "admits Wells Fargo made a calculation mistake and [that it] provided [her] with a $25,000 check 'to make things right,'" thus; "the modification calculation does not satisfy New Jersey's standard for 'extreme and outrageous' conduct." ECF No. 42 at 18; *see also* ECF No.65 at 19. Van Brunt's new allegations do not change the conclusion this Court has now reached twice.

According to Van Brunt, she can get around this defect by alleging that Wells Fargo "intended to produce emotional distress *or* acted in reckless disregard of [the] fact that. . . emotional distress would result." TAC ¶ 135 (emphasis in original). But for liability to attach for reckless conduct, a plaintiff still must show that a defendant acted with "deliberate disregard of a high degree of probability that emotional distress will follow." *Ward v. Barnes*, 545 F. Supp. 2d 400, 412 (D.N.J. 2008) (interpreting New Jersey law). Van Brunt's concealment allegation is nonsensical in this context: Wells Fargo could not have been trying to inflict emotional distress on Van Brunt by withholding information from her. *Compare Fogarty*, 2015 U.S. Dist. LEXIS 23064, at *59 (rejecting allegation that conduct

engaged in before plaintiff had learned of allegedly fraudulent mortgage "could have been [under]taken with the intent of causing [plaintiff] emotional distress"). In any event, and critically, Van Brunt admits that Wells Fargo did not know that the error affected her loan. *See* TAC ¶ 142.

Finally, the TAC renews its efforts to pursue a theory this Court has twice rejected—that Wells Fargo committed IIED because it "repeatedly failed to oversee, audit, and test its servicing, modification, and foreclosure practices, including its automated calculation software," and because "investigations, fines, and consent cease and desist orders" put it "on notice of its own deficient, unsafe, and unsound practices." TAC ¶ 137. These allegations remain "misguided" and do not allege outrageous conduct. ECF No. 42 at 17; *see also* ECF No. 65 at 18-20.

This Court has already determined that failure to comply with consent orders to "maintain vigilance" does not rise to the level of outrageous conduct required to state an IIED claim. *See* ECF No. 65 at 18; *see also Duncan v. Wells Fargo Bank, N.A.*, Civ. No. 19-00172, 2021 WL 22086, at *8 (D.N.J. Jan. 4, 2021) (refusing to assume that defendants' conduct rose to the level of outrageous conduct based on prior consent orders); *cf. Dumont v. Litton Loan Servicing, LP*, No. 12-2677, 2014 WL 815244, at *19 (S.D.N.Y. Mar. 3, 2014) (holding that alleged breaches of consent orders and regulatory agreements are not sufficient to allege that a defendant took advantage of vulnerable homeowners already in distress). Other courts

analyzing IIED claims based on the same software error have held the same.  *See Monday-West v. Wells Fargo Bank, N.A.*, No. 20-6381, 2022 WL 16848879, at *9 (6th Cir. Nov. 9, 2022) (dismissing IIED claim and holding that, while Wells Fargo's alleged failure to "audit, correct and improve systems" is "far from perfect," "certainly unfortunate," and "regrettable," it "does not meet the high bar for outrageous conduct").  And this Court has held that Van Brunt cannot successfully state an IIED claim without alleging that Wells Fargo "intended . . . to produce emotional distress" by attempting to hide the calculation error.  ECF No. 65 at 19.

Van Brunt's rephrased factual allegations do not cure these problems.  Van Brunt merely alleges that Wells Fargo:

- allowed systemic errors to persist for years;

- ignored consent decrees requiring it to reform its mortgage modification and foreclosure practices;

- failed to reform its verification and auditing practices after the government found a software error led to wrongfully denied mortgage modifications;

- concealed discovery of an additional software error from regulators and customers;

- failed to identify other related errors; and

- ignored oversight responsibilities even after government consent orders required improved oversight.

As these allegations are still based on putative breaches of various consent orders, they do not and cannot rise to the level of outrageous and extreme conduct

required by New Jersey law.  Nor do these allegations demonstrate that Wells Fargo intended to produce emotional distress.  Van Brunt's IIED claim should be dismissed with prejudice.

**E.    Van Brunt Is Not Entitled to Punitive Damages Under New Jersey Law.**

Finally, Van Brunt is not entitled to an award of punitive damages, which she seeks for her common law fraud and emotional distress claims.  TAC, Prayer for Relief (D).  Under the New Jersey Punitive Damages Act, a plaintiff must prove by clear and convincing evidence that the defendant's acts or omissions were actuated by actual malice ("an intentional wrongdoing in the sense of an evil-minded act") or accompanied by a wanton and willful disregard ("a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission").  N.J.S.A. § 2A:15-5.12(a); *id.* § 2A:15-5.10.

As set forth herein, the TAC's *factual* allegations—as opposed to its speculative, hypothetical, and conclusory ones—do not substantiate Van Brunt's claims that Wells Fargo's conduct was anything but a mistake, nor do they "nudge" those claims "across the line from conceivable to plausible" as required under the most basic pleading standard.  The extraordinary relief of punitive damages is therefore not available on the basis of the TAC.  *See Twombly*, 550 U.S. at 570; *Frungillo v. Imperia Entm't, Inc.*, No. 08-0908 (DRD), 2009 U.S. Dist. LEXIS

89863, at *11 (D.N.J. Sep. 28, 2009) (citation omitted) ("Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence."); *Tafaro v. Six Flags Great Adventure, LLC*, No. 17-5607 (FLW)(LHG), 2018 U.S. Dist. LEXIS 53013, at *28 (D.N.J. Mar. 29, 2018) (dismissing claims for punitive damages "because [p]laintiff has failed to state any substantive violation . . . for which punitive damages would be available, and because [p]laintiff has failed to allege any facts showing that [d]efendants acted with 'actual malice' or 'wanton and willful disregard'").

## CONCLUSION

For the foregoing reasons, Wells Fargo Bank, N.A. respectfully submits that Van Brunt has conclusively demonstrated, in her fourth deficient Complaint, that she cannot cure the fundamental pleading defects in her claims against Wells Fargo. We request that the Court dismiss the Third Amended Complaint in its entirety, with prejudice.

Dated:  December 22, 2021

/s/ *Michal E. Blaine*
Michael E. Blaine
Angela A. Smedley (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-4754
(212) 294-4700 ~ Fax

27

mblaine@winston.com
asmedley@winston.com

Kobi Kennedy Brinson (*pro hac vice*)
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
(704) 350-7747
(704) 350-7800 ~ Fax
kbrinson@winston.com

*Attorneys for Wells Fargo Bank, N.A.*

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that copies of the foregoing WELLS FARGO

BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS VAN

BRUNT'S THIRD AMENDED COMPLAINT was served by notice of electronic filing and

electronic mail on December 22, 2023 upon:

>Javier L. Merino
>DANNLAW
>372 Kinderkamack Road, Suite 5
>Westwood, NJ 07675
>jmerino@dannlaw.com
>
>*Attorney for Dawn Van Brunt*

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements made by me are willfully false, I am subject to

punishment.


Dated:  December 22, 2023


>_/s/ Michael E. Blaine_
>Michael E. Blaine