# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**DAWN VAN BRUNT**,

           Plaintiff,

   vs.

**WELLS FARGO BANK, N.A.**

        Defendant.

Case 3:19-cv-00170-ZNQ-TJB

**Oral Argument is Requested**

---

## PLAINTIFF DAWN VAN BRUNT'S RESPONSE IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

---

/s/ Javier L. Merino
Javier L. Merino
**The Dann Law Firm, PC**
1520 US Highway 130, Suite 101
North Brunswick, NJ 08902
Phone: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Dawn Van Brunt*

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................1

BACKGROUND AND FACTS ....................................................................2

LEGAL ARGUMENT...................................................................................8

   A. Legal                                        Standard

    8

   B. Van Brunt Has Established a Causal Nexus Between Wells Fargo's

   Conduct and the Loss of Her Home ...........................................................9

   C. Van Brunt Established a Claim for Common Law Fraud ....................22

   D. Van Brunt Sufficiently Pleads a Claim for Intentional Infliction of

   Emotional Distress....................................................................................23

    1.   Wells Fargo acted in reckless disregard that probable emotional

    distress would result...............................................................................24

    2.   Wells Fargo's Conduct was Extreme and Outrageous..................25

   E. Van Brunt Has Sufficiently Pled an Entitlement to Punitive Damages 31

CONCLUSION.............................................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282, 304 (D.N.J. 2009)............11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...............................9

*Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559 (D.N.J. 2016) .................19

*Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355 (N.J. 1988) ..................... passim

*Bukowski v. Wells Fargo Bank, N.A.*, 757 F.App'x 124 (3d Cir. 2018).................19

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114 (3d Cir. 2013) ......................................................................................13

*Cowan v. Doering*, 111 N.J. 451 (1988).................................................15

*Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994)........................................10

*Cruz-Mendez v. ISU/Insurance Services*, 156 N.J. 556 (1999) ...............................12

*Czar, Inc. v. Heath*, 198 N.J. 195 (2009) ................................................10

*D'Alessandro v. Ocwen Loan Servicing, LLC*, No. 18-cv-01290 (PGS)(LHG), 2018 U.S. Dist. LEXIS 86482 (D.N.J. May 23, 2018) ..................................20

*Davis v. Brooks*, 280 N.J. Super. 406 (App. Div. 1993)........................12

Dumont v. Litton Loan Servicing, LP, No. 12-cv-2677-ER-LMS, 2014 U.S. Dist. LEXIS 26880 (S.D.N.Y. Mar. 3, 2014) .............................................31

*Fink v. Ricoh Corp.*, 365 N.J. Super. 520 (Super. Ct. 2003) ...................................12

Fogarty v. Household Fin. Corp. III No. 14-4525 (RBK/JS), 2015 U.S. Dist. LEXIS

    23064, at *5 (D.N.J. Feb. 25, 2015) ............................................................ 29, 30

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) .....................................9

*Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004) ..................................................11

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582 (1997) ....................................9, 18

*Haesler v. Novartis Consumer Health, Inc.*, 426 F. Supp. 2d 227 (D.N.J. 2006) ...12

*Heyman v. Citimortgage, Inc.*, No. 14-1680-KM-MAH, 2019 U.S. Dist. LEXIS

    128238 (D.N.J. June 27, 2019)................................................................................19

*In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198 (3d Cir. 2002)...............................9

*J.S. v. R.T.H.*, 155 N.J. 330 (1998) ..........................................................................18

*Jubelt v. United Mortg. Bankers, Ltd.*, Civil Action No. 13-7150 (ES) (MAH), 2015

    U.S. Dist. LEXIS 84595 (D.N.J. June 30, 2015) .................................................20

*Komlodi v. Picciano*, 217 N.J. 387 (2014)......................................................... 13, 15

*Krebs v. S. Jersey Port Corp.*, No. 07-4561 (AET), 2008 U.S. Dist. LEXIS 133115

    (D.N.J. June 4, 2008)............................................................................................25

*Laughlin v. Bank of Am., N.A.*, Civil Action No. 13-4414, 2014 U.S. Dist. LEXIS

    79441 (D.N.J. June 11, 2014)................................................................. 18, 19, 20

*Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010)..............................................10

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255 (1997) ........................10

*Lynch v. Scheininger*, 162 N.J. 209 (2000).......................................................... 13, 15

*Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494 (D.N.J. 2009) .......10

Mickens v. Ford Motor Co., 900 F.Supp. 2d. 427, 434 (D.N.J. 2012). 20, 21, 22, 23

*Middlesex Water Co. v. 3M Co.*, No. 18cv15366 (EP) (ESK), 2022 U.S. Dist. LEXIS
198068 (D.N.J. Oct. 31, 2022) ..............................................................................13

*Mosley v. Del. River Port Auth.*, No. 99-4147 (JBS), 2000 U.S. Dist. LEXIS 22402
(D.N.J. Aug. 7, 2000) .............................................................................................25

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ................................9, 10

*Rappaport v. Nichols*, 31 N.J. 188 (1959) ................................................. 12, 13, 14

*Roberts v. Cowgill*, 316 N.J. Super. 33 (App. Div. 1998) .......................................11

*Rotenberg v. Lake Charter Bus Corp.*, 2014 U.S. Dist. LEXIS 9082, 2014 WL
284255 (D.N.J. 2014) .............................................................................................14

*Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412 (D.N.J. 2015) ...................20

*Sequiera v. JP Morgan Chase Bank, N.A.*, Civil Action No. 16-5278 (MAS) (LHG),
2019 U.S. Dist. LEXIS 55888 (D.N.J. Mar. 29, 2019) .......................................19

*Taylor v. Metzger*, 152 N.J. 490 (1998).................................................................30

*Varacallo v. Mass. Mut. Life Ins. Co.*, 332 N.J. Super. 31 (App. Div. 2000) .........10

*Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239 (D.N.J. 2001) ..............24

**Statutes**

N.J.S.A. 56:8-19........................................................................................................10

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................8

## INTRODUCTION

Plaintiff Dawn Van Brunt ("Van Brunt") filed this action against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") after receiving an unsolicited letter from Wells Fargo notifying her that Wells Fargo had wrongfully foreclosed on her home and she had been denied a loan modification more than four years before. Wells Fargo admitted that it committed what it labels a "calculation error" that caused Van Brunt's application for loan modification to be incorrectly denied. Adding insult to injury is the fact that Wells Fargo could have prevented this error in the first place. According to its own public securities filings, Wells Fargo knew of this error, and other related errors, that caused Van Brunt to lose her home at least five years prior to disclosing it to its investors and apologizing to Van Brunt. The "Apology Letter" sent by Wells Fargo offered Van Brunt an arbitrary amount of compensation that Wells Fargo unilaterally decided was fair. Wells Fargo's handling of the error, concealing it for half a decade and then contacting borrowers like Van Brunt years after the damage has been done is almost unprecedented under both New Jersey law and related federal law. Wells Fargo's callous disregard of its mistake and its conscious effort to conceal its mistake is exactly the type of conduct that New Jersey's Consumer Fraud Act is designed to prevent.

Van Brunt filed the Third Amended Complaint ("AC") following the Court's Order on September 21, 2022 (Dkt. 42) granting Wells Fargo's motion to dismiss

the Second Amended Complaint. In the Third Amended Complaint, Van Brunt has addressed the concerns of the Court. Rather than accept responsibility or allow these claims to be litigated, Wells Fargo has decided to file another motion to dismiss to further deny Van Brunt any redress for its unprecedented actions.

## **BACKGROUND AND FACTS**

This action relates to foreclosure sales pertaining to a residential property located at 4101 Dairy Ct., Freehold, NJ 07728 (the "Property"). (Dkt. 69, ¶¶ 1, 62, 65). On or about July 9, 2007, Van Brunt purchased the Property, and executed a note and mortgage on the Property to secure the note (the "Loan"). (Dkt. 69, ¶ 3). Wells Fargo was the servicer of the Loan from approximately July 12, 2007 to July 11, 2017. (Dkt. 69, ¶ 3).

In 2008, the federal government started the Troubled Asset Relief Program ("TARP"), and all servicers who received funding through TARP, including Wells Fargo, were required to participate in the Home Affordable Modification Program ("HAMP"), which was designed to minimize foreclosure proceedings by incentivizing loan modifications. (Dkt. 69, ¶¶ 20-22). "HAMP guidelines require[d] Wells Fargo [to] undertake a number of specific and non-discretionary steps to determine a customer's eligibility for modification or other relief" and to "offer a trial period plan modification" to the borrower, and upon the borrower's completion of the trial period plan, "Wells Fargo [was] required permanently modify the loan."

2

(Dkt. 69, ¶¶ 23-24). Borrowers could request a loan modification by submitting standardized form assistance applications, financial worksheets, hardship affidavits, acknowledgements, and agreements, through which the borrower agreed to provide all requested information and undergo credit counseling if requested, and Wells Fargo agreed to examine the borrower's eligibility for all available modifications and, if eligible, to extend a trial period plan. (Dkt. 69, ¶ 5). "Wells Fargo utilize[d] uniform and standardized loan servicing, loan modification, and foreclosure practices nationwide. Much of [its] standardized loan servicing, loan modification, and foreclosure practices are reliant upon automated processes, systems, and tools." (Dkt. 69, ¶ 13).

In 2010, Wells Fargo developed two proprietary software tools to evaluate loan modification eligibility depending on the type of loan - the Home Preservation Application (HPA) and the SLoaD tool. (Dkt. 69, ¶ 46). Loan modification applications under Federal Housing Agency (FHA) loans, like Van Brunt's, were decided using the SLoaD tool. (Dkt. 69, ¶ 46). Wells Fargo was supposed to input the attorney's fees related to delinquent loans it had actually paid and incurred, but only up to the maximum allowable amount. (Dkt. 69, ¶ 49). Instead, Wells Fargo programmed its HPA tool to add the state maximum for attorneys fees to the fees that were actually paid and incurred rather than limit the allowable fees,- which ultimately caused the formula to erroneously reject borrowers like Ms. Van Brunt

who actually qualified for modifications. (Dkt. 69-5). In August 2013, Wells Fargo discovered this error and knew that "incorrect Attorney's Fees [were] being calculate[d] in HPA that could be impacting decisions." (Dkt. 69-7). In October 2015, the fee matrix was removed from the HPA tool. (Dkt. 69, ¶ 57). However; errors in adding excessive attorney fees for loans made with the SLoaD tool continued, causing additional wrongful loan modification denials until 2018. (Dkt. 69, ¶ 57). While reviewing a different error in March 2018, Wells Fargo "rediscovered" this attorney's fee error and finally figured out that it harmed borrowers from April 13, 2010 until October 20, 2015, including borrowers whose loans were analyzed in SLoaD. (Dkt. 69, ¶¶ 58-59).

On or about August 19, 2011, non-party The Strickland Farm Condominium Association, Inc. (the "COA") commenced an action against Van Brunt in the Superior Court of New Jersey (the "COA Action"). (Dkt. 69, ¶62, Dkt. 69-22). The COA commenced the COA Action over $1,819.00 in unpaid common expense assessments. (Dkt. 69, ¶ 62). On October 13, 2012, judgment was awarded in the amount of $4,075.15 to the COA. (Dkt. 69, ¶ 63). On October 15, 2013, an Order Permitting the Sale of the Property was entered in the COA Action. (Dkt. 69-24).

In February 2012, Van Brunt reached out to Wells Fargo in an effort to obtain a loan modification to keep the Property. (Dkt. 69, ¶ 64). Van Brunt knew that the HOA arrearage would have to be corrected before a permanent modification could

4

be implemented but delayed paying it until getting a decision from Wells Fargo. On November 19, 2012, Wells Fargo filed a foreclosure action against Van Brunt in the Monmouth County Superior Court (the "Foreclosure Case"). (Dkt. 69-25). On or about December 2, 2013, Wells Fargo told Van Brunt she did not qualify for a loan modification. (Dkt. 69-26). On or about December 18, 2013 Van Brunt appealed the modification denial, where she explained: "I am more than capable to pay my mortgage on time every month and therefore I am appealing Wells Fargo's decision." (Dkt. 69-27). On or about January 13, 2014, Wells Fargo denied the modification appeal. (Dkt. 69-28).

At the same time, the COA had scheduled an auction on the Property for February 3, 2014, where the Property was ultimately sold. (Dkt. 69, ¶¶ 68, 72). As Wells Fargo failed to offer Van Brunt the modification she was entitled to, it was illogical for Van Brunt to contest the COA foreclosure or otherwise attempt to resolve it as Wells Fargo held the first lien position mortgage and was proceeding to foreclosure on her home. (Dkt. 69, ¶ 69). So, Van Brunt did not take actions to stop the February 3, 2014 auction and effectively throw "good money after bad" despite the fact that she had the means to accumulate the funds to do so. *Id.* However, had Wells Fargo offered the modification it admitted it was required to, Van Brunt would have brought the COA account current, and her home would not have been sold.

5

The loan modification would have been at most 31 percent of Van Brunt's gross monthly income. She would have only been required to complete a three (3) month trial payment plan to qualify for the permanent modification. She would have tendered the required payments under the TPP, as under FHA's own guidelines, she was financially able to make all necessary TPP payment. Under FHA guidelines, upon completion of the TPP, she would have been entitled to receive, and Wells Fargo would have been required to provide without any discretion, a permanent loan modification agreement upon completion of the TPP. The permanent modification payment would have been the same or less than the TPP.

At the time of Wells Fargo's wrongful denial, the COA judgment was approximately $4,085.15. Had Wells Fargo extended the TPP, Van Brunt was going to accumulate the necessary funds between her personal money and gathering money from her mother, daughter, and boyfriend to pay the debt in full, which would have resolved the COA foreclosure in its entirety. She had alternative options to resolve the COA foreclosure. She could and would have borrowed money from friends and/or family to pay the debt in full. She could have and would filed a Chapter 13 Bankruptcy Petition and repaid the COA arrears over a period of up to sixty (60) months, at a cost of approximately $68.00 a month. (Dkt. 69, ¶ 70); *see* HUD Mortgagee Letter 2013-32.  Van Brunt's financials submitted in conjunction with her modification application indicate her monthly surplus would have been

6

approximately $1,351.05, after payment of her mortgage and other necessary expenses. Thus, Van Brunt would have easily afforded the Chapter 13 payment needed to cure the COA debt in full.

Van Brunt and her family were forced to move out of the Property on or about September 3, 2014. (Dkt. 69, ¶ 71). On July 1, 2014, Wells Fargo obtained a final judgment in the Foreclosure Action and scheduled the initial sale date on the Property for December 1, 2014. (Dkt. 69, ¶ 72). On January 5, 2015, Wells Fargo caused the Home to be sold at auction and acquired title to the property at the January 2015 sheriff's sale. (Dkt. 69, ¶ 72); *see Wells Fargo Bank, N.A. v. Rivera*, No. A-2042-14T4, 2016 N.J. Super. Unpub. LEXIS 1285, at *6 (App. Div. June 6, 2016). Wells Fargo maintained ownership to the Property until May 16, 2018. (Dkt. 69-29).

On or about August 3, 2018, Wells Fargo filed a Form 10-Q where it admitted the existence of the faulty calculation error. (D.E. 48, ¶¶ 75-76). On or about September 20, 2018, Wells Fargo sent correspondence to Van Brunt, and others similarly situated who were affected by the errors in Wells Fargo's loan modification software, which stated: "[W]hen you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation and we're sorry. If it had been correct, you would have been approved for a trial modification" (the "WF Letter"). (Dkt. 69-31; Dkt. 69, ¶¶ 77-79). The WF Letter enclosed a payment to purportedly compensate Van

Brunt for any loss suffered and encouraged her to attend mediation with Wells Fargo if she did not believe that Wells Fargo had "made things right." (D.E. 48, ¶¶ 81-83).

## LEGAL ARGUMENT

### A. Legal Standard

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

8

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-679.

The TAC meets and exceeds these standards.

**B. Van Brunt Has Established a Causal Nexus Between Wells Fargo's Conduct and the Loss of Her Home**

The CFA's history "is one of constant expansion of consumer protection." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 604 (1997). The statute has been "repeatedly amended and expanded…often by adding sections to address particular areas of concern and to include them specifically within its protective sweep." *Czar, Inc. v. Heath*, 198 N.J. 195, 201 (2009) (listing statutory changes). In addition to its ever-growing scope, "[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 264 (1997). "[L]ike most remedial legislation, the [CFA] should be construed liberally in favor of consumers." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (1994).

"To establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss as a result of the unlawful practice." *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010) (citing N.J.S.A. 56:8-19). To survive a motion to dismiss, Van Brunt is only required to put forth "enough factual matter (taken as true) to suggest" the elements of the nexus. *Phillips*, 515 F.3d at 234; *see also Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 503 (D.N.J.

2009) (rejecting notion "that Plaintiffs must <u>prove</u> a connection in order to succeed" on a CFA claim at the motion to dismiss stage.) Van Brunt "need not prove that [Wells Fargo's] conduct was *the* sole cause of damages." *Varacallo v. Mass. Mut. Life Ins. Co.*, 332 N.J. Super. 31, 48 (App. Div. 2000) (emphasis added). Instead she is only "required to prove only that [Wells Fargo's] conduct was *a* cause of damages." *Id.* (Emphasis added). Unlike having to establish reliance or but-for causation, "the NJCFA does not require that the allegedly unlawful conduct serve as the lone cause of Plaintiffs' loss, but merely that it be a cause." *Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282, 304 (D.N.J. 2009). Finally, "once a plaintiff has established a significant relationship between the defendant's practices and the plaintiff's ascertainable losses it becomes the defendant's responsibility to isolate particular losses which do not have the required causal connection." *Roberts v. Cowgill*, 316 N.J. Super. 33, 44 (App. Div. 1998). Once a plaintiff demonstrates a "sufficient connection between their ascertainable loss and defendant's violative conduct", defendants are required "to demonstrate that particular losses bore *no* relationship to their…infractions." *Id.* (Emphasis added). Because it is "remedial legislation," the CFA is "construe[d] liberally to accomplish its broad purpose of safeguarding the public." *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11-12 (2004).

Here, Van Brunt alleges ascertainable loss in the form of the lost opportunity to obtain a trial, then permanent modification, and otherwise various monetary and

10

non-monetary losses which flowed from losing her home. Van Brunt need only prove a "causal nexus" between Wells Fargo's actions and these losses. Van Brunt is not required to prove that she would not have lost her home "but for" Wells Fargo's actions. *Arcand*, 673 F. Supp. 2d at 304 n.10. She is not required to prove that Wells Fargo's actions "serve as the lone cause of [her] loss". *Id.* at 304. "The question is whether [Van Brunt] can prove any set of facts consistent with…her allegations that will entitle…her to relief, not whether [Van Brunt] will ultimately prevail." *Haesler v. Novartis Consumer Health, Inc.*, 426 F. Supp. 2d 227, 229 (D.N.J. 2006).

Wells Fargo attempts to drive a wedge between its actions and Van Brunt's losses by contending that it was the HOA foreclosure, not its wrongful denial, which caused Van Brunt to lose her home. "An intervening cause…will be deemed to destroy the causal connection between a defendant's negligence or other tortious conduct where such intervening cause constitutes an unforeseeable independent act which constitutes the immediate and <u>sole</u> cause of the accident, injury or loss." *Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 575 (Super. Ct. 2003) (emphasis added); *see also Davis v. Brooks*, 280 N.J. Super. 406, 412 (App. Div. 1993). An intervening cause ". . . must be one that so entirely supercedes the operation of the first tortfeasor's negligence that it alone caused the injury, without the first tortfeasor's negligence contributing thereto in any material way." *Id.* On the other hand,

"[i]ntervening causes that are reasonably foreseeable or are normal incidents of a risk . . . do not relieve a tortfeasor of liability." *Cruz-Mendez v. ISU/Insurance Services*, 156 N.J. 556, 575 (1999) (citing *Rappaport v. Nichols*, 31 N.J. 188, 203 (1959)).

First, at the motion to dismiss stage, "[Van Brunt] does not have to set out in detail the facts upon which [s]he bases h[er] claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, [Van Brunt's] complaint merely has to state a plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "Ordinarily these questions of proximate and intervening cause are left to the jury for its factual determination." *Rappaport*, 31 N.J. at 203; *see also Komlodi v. Picciano*, 217 N.J. 387, 419 (2014) ("As with all disputed issues, the jury is the final arbiter of the facts."); *see also Middlesex Water Co. v. 3M Co.*, No. 18cv15366 (EP) (ESK), 2022 U.S. Dist. LEXIS 198068, at *15 (D.N.J. Oct. 31, 2022) ("Whether Plaintiff can establish proximate cause is a question the Court finds is appropriate for the factfinder."). Thus, whether the HOA Foreclosure is an intervening cause which breaks the chain of causation between Wells Fargo and the loss of Van Brunt's home is a question more appropriate for jury determination.

Even though she is not required to at this stage, Van Brunt has firmly established, in detail, that the HOA foreclosure is not an intervening cause which

12

absolves Wells Fargo of liability. Caselaw interpreting the doctrine of superseding cause "focus[es] on the specific facts and circumstances that raise the issue irrespective of whether the intervening event involved negligent or intentional conduct by others." *Lynch v. Scheininger*, 162 N.J. 209, 228 (2000). In *Rappaport v. Nichols*, for example, the plaintiff, individually and as administratrix of the estate of a decedent, sought damages from the owners of several taverns that knowingly had sold liquor to an intoxicated minor whose subsequent negligent operation of a motor vehicle was responsible for the decedent's death. *Id.* at 204. The tavern owners argued that, even if their conduct was unlawful and negligent, the minor's intervening negligent operation of his automobile was a superseding cause that extinguished their liability. *Id.* at 203. Rejecting that contention and reinstating plaintiffs' cause of action, the New Jersey Supreme Court observed:

> The defendants contend that, assuming their conduct was unlawful and negligent as charged in the complaint, it was nevertheless not the proximate cause of the injuries suffered. But a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability. Ordinarily these questions of proximate and intervening cause are left to the jury for its factual determination. [*Ibid.* (citations omitted).]

*Id.* at 203. The same analysis applies here. Wells Fargo attempts to distance itself from the loss of Van Brunt's home by contending that the HOA foreclosure was an intervening cause that was ultimately responsible for the home being sold at sale.

Yet, the fact that the HOA caused the home to be sold is not sufficient to destroy the causal nexus between Wells Fargo and its unlawful acts. Here, the HOA foreclosing on the home was an intervening cause which was foreseeable or normal incidents of the risk created by Wells Fargo failing to approve Van Brunt for a loan modification. Furthermore, Courts are empowered to grant summary judgment on the issue of superseding and intervening causation, *see*, *e.g.*, *Rotenberg v. Lake Charter Bus Corp.*, 2014 U.S. Dist. LEXIS 9082, 2014 WL 284255, *4 (D.N.J. 2014), but where there are disputed issues, "whether a particular risk is foreseeable [*13] . . . [is an] issue[] for the jury." *Komlodi*, 217 N.J. at 419. Thus, whether Wells Fargo caused Van Brunt to lose her home is one such issue. *See*, *e.g.*, *Cowan v. Doering*, 111 N.J. 451, 465 (1988) (whether plaintiff's leap from the window of a hospital, where doctors were aware of her suicidal propensities, was reasonably foreseeable was a question appropriately for the jury decide). Thus, whether the HOA was an intervening cause that should absolve Wells Fargo of liability is an issue best left for the jury (and not even summary judgment, much less a motion to dismiss). To the contrary, courts have determined intervening events to constitute superseding causes as a matter of law only "where such events were sufficiently extraordinary or so clearly unrelated to the antecedent negligence that imposition of liability would be unreasonable." *Lynch*, 162 N.J. at 229. Wells Fargo has failed to meet his high bar.

14

Here, the question of causation focuses on whether the HOA foreclosure was foreseeable. *See id.* at 234. "[T]hat emphasis is essentially a shorthand equivalent for the broader inquiry of whether imposing liability despite the intervening cause is reasonable under all the circumstances. *Id.* at 234-35. Again, "the question whether [this] intervening event supersedes [Wells Fargo's] liability…ordinarily is one for jury determination." *Id.*

In dismissing this count, the Court determined the complaint did not demonstrate a sufficient causal nexus between Van Brunt losing her home and Defendant's mishandling of her loan modification application. In reaching this conclusion, the Court indicated that Van Brunt pled no facts indicating she would have successfully completed the trial period to qualify for the permanent modification, or that she would have made (or would have been able to afford) the necessary payments under the trial period and permanent loan modification.

Van Brunt has met and exceeded that here. Through the TAC, Van Brunt added additional facts as to the affordability of the trial period plan and the permanent modification. Van Brunt now pleads that pursuant to FHA-HAMP guidelines, the trial payment, and in turn final modification payment, would have been at most 31% of her income, demonstrating financial feasibility. TAC ¶¶ 81-82. Van Brunt then pleads how she would have made the required TPP payments had Wells Fargo properly extended the TPP. TAC ¶ 83. The TPP is only for three (3)

months, and the permanent modification payment would have been substantially the same as the trial payment. TAC ¶ 82. Completing the TPP would demonstrate that Van Brunt was "capable of making the new FHA-HAMP payment". TPP 84, n. Thus, the TAC demonstrates how Van Brunt would have completed the TPP and would have been made (and been able to afford) the necessary TPP and permanent modification payments

The court then indicated the SAC did not indicate how the permanent modification would have or could have prevented the COA's proceeding from foreclosing on the home. Through the TAC, Van Brunt added additional facts regarding how she had specifically planned the resolution of the COA foreclosure if and when a modification was offered, and how a payment of the debt in full would have immediately resolved the COA foreclosure. Van Brunt was living with her boyfriend and daughter, who were each contributing towards household income. TAC ¶ 90. Van Brunt had a plan in place to accumulate the necessary funds to pay the COA judgment in full between her personal funds and accumulating funds from her mother, daughter, and boyfriend. TAC ¶ 91. Such a payment in full would have resolved the COA foreclosure in its entirety. TAC ¶ 93.

The TAC adds additional allegations as to Plaintiff's qualification for a Chapter 13 bankruptcy, in the unlikely event she could not pay the full amount owed. TAC ¶ 96. Specifically, the TAC now pleads how Van Brunt would have qualified

as a Chapter 13 bankruptcy debtor under the Bankruptcy Code. TAC ¶ 96. Van Brunt's own financials demonstrate how she would have been able to afford the payments needed to repay the COA arrears over a period of sixty (60) months. TAC ¶¶ 97-99. Thus, Van Brunt's TAC now sufficiently pleads a CFA violation.

Wells Fargo then contends that Van Brunt does not sufficiently allege that had she been granted the trial modification, she would have later been approved for and adequately performed under a permanent modification. Wells Fargo then argues that Van Brunt's explanations of how she could and would have paid off the delinquent HOA dues are devoid of facts and render her claims speculative and claims that Van Brunt in essence must have proven that she would have successfully completed a Chapter 13 Plan had she chosen that route to resolve her HOA dues.

First and foremost, Van Brunt is not required to prove that she would have been approved for and subsequently performed under a loan modification in order to prove the "causal nexus" between the loss of her home and Wells Fargo's actions. Nor is she required, at this stage, to prove that Wells Fargo's actions were the sole cause of the loss of her home. Such a position contradicts the well-settled notion that the CFA "is a broad remedial act" "of constant expansion of consumer protection". *Gennari*, 148 N.J. at 604.  Such a position further contradicts the notion that "[o]rdinarily, issues of proximate cause are jury questions." *J.S. v. R.T.H.*, 155 N.J. 330, 351 (1998)

Wells Fargo argues that *Stolba*, *DeLuca*, and *Slimm* should control here for the proposition that even assuming the TPP was extended, it had no obligation to extend a permanent modification.. These same arguments were raised by Bank of America and rejected by this Court in *Laughlin v. Bank of Am., N.A.*, Civil Action No. 13-4414, 2014 U.S. Dist. LEXIS 79441, at *25 (D.N.J. June 11, 2014). The court's holding there rings true in this matter: "[t]he problem with [Wells Fargo's] argument, however, is that it has failed to show that any such similar provisions exist in this TPP, and none are alleged by [Van Brunt] in [her] Complaint. *Id.* at *25. Thus, "[Wells Fargo's assertion that the TPP did not obligate [Wells Fargo] to provide [Van Brunt] with a permanent loan modification as a matter of law falls short. Thus, [Wells Fargo's] motion to dismiss…on this basis must fail." *Id.* at *26.

To the extent Wells Fargo relies upon *DeLuca* for the contention that claims premised on a servicer's failure to extend a permanent modification are not viable under the CFA, caselaw since then has firmly rejected that notion and otherwise confirmed that unconscionable commercial practices related to loan modifications are covered by the CFA. *See Bukowski v. Wells Fargo Bank, N.A.*, 757 F.App'x 124, 129 (3d Cir. 2018) ("The Bukowskis ... maintain that they were misled by Wells Fargo's representations concerning their eligibility for a permanent HAMP modification, and that those representations violated the NJCFA. Because such a claim is permissible under the NJCFA, the District Court erred in dismissing the

18

Bukowskis' NJCFA claim."); *Heyman v. Citimortgage, Inc.*, No. 14-1680-KM-MAH, 2019 U.S. Dist. LEXIS 128238, at *81 (D.N.J. June 27, 2019) ("A CFA claim may arise from the collection, enforcement, or modification of a loan."); *Sequiera v. JP Morgan Chase Bank, N.A.*, Civil Action No. 16-5278 (MAS) (LHG), 2019 U.S. Dist. LEXIS 55888, at *15 (D.N.J. Mar. 29, 2019) ("Plaintiffs have sufficiently pled that the statements in the TPP reasonably induced Plaintiffs to remit payments in exchange for a loan modification, which they did not receive."); *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 594 (D.N.J. 2016) ("misrepresentation regarding mortgage modifications fall within the NJCFA since they are made in connection with the 'subsequent performance' of a mortgage under a statute."); *Jubelt v. United Mortg. Bankers, Ltd.*, Civil Action No. 13-7150 (ES) (MAH), 2015 U.S. Dist. LEXIS 84595, at *15 (D.N.J. June 30, 2015) ("Courts in this Circuit have relied on Gonzalez to hold that misrepresentations regarding mortgage modifications fall within the NJCFA, since they are made in connection with the 'subsequent performance' of 'real estate' under the statute."); *Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412, 426-27 (D.N.J. 2015) ("Plaintiffs have presented sufficient evidence to overcome summary judgment on a NJCFA claim based on Defendant's failure to properly evaluate Plaintiffs for a loan modification"); *Laughlin*, 2014 U.S. Dist. LEXIS 79441, at *18 ("a loan servicer's business practices during the loan modification process are covered by the CFA"); *D'Alessandro v. Ocwen Loan*

19

*Servicing, LLC*, No. 18-cv-01290 (PGS)(LHG), 2018 U.S. Dist. LEXIS 86482, at
*12 (D.N.J. May 23, 2018) (citing *Block* and *Laughlin*).

Wells Fargo's reliance upon *Mickens v. Ford Motor Co.* is likewise
misplaced. There, a plaintiff alleged that the defendant vehicle manufacturer violated
the CFA by failing to certify to the Division of Consumer Affairs (DCA) the
presence of a design defect in various of its makes and models. 900 F.Supp. 2d. 427,
434 (D.N.J. 2012).  There, the plaintiff's causation argument was premised on an
assumption that: (1) had defendant certified the defect as required by the Lemon
Law, the DCA would have required Ford to correct the the defect, implement a
warranty extension, and provide public notice of the defect, (2) this would have
dissuaded or "prevent[ed] Plaintiff and the class members from purchasing the
subject vehicles." *Id.* at 438. However, the court there rejected Plaintiff's causation
theory, noting that even assuming the defendant disclosed the defect, there is no
indication the plaintiff would have even known about it before purchasing his
vehicle. *Id.* Furthermore, the plaintiff did not allege that he did take or would have
taken any steps to verify the existence, or not, of any report to the Division of
Consumer Affairs before purchasing his Mustang. *Id.* He does not allege that he took
any steps to determine whether the Division of Consumer Affairs had issued any
warning or taken any action with respect to the 2006 Mustang model. *Id.* In short,
there wasno plausible factual allegation that a report to the Division of Consumer

Affairs, if it had occurred, would have "prevented" this purchase. *Id.* Furthermore, the court noted that plaintiff's causation allegation assumes the DCA would have hypothetically taken certain actions had defendant reported the defect, such as a mandate for design changes, public warning, or other remedial action. However, the court noted:

> The Complaint cites no history or established practice of, or precedent for, any particular remedial measures being taken by the Division of Consumer Affairs, particularly in response to a manufacturer's Lemon Law Section 16 notification. That is a grave defect in a Complaint whose allegations of causation rest upon assertions that the Division "would" have mandated design changes, warned the public or taken other remedial action had it only known of the defect.

*Id.* at 439. This case is distinguishable from *Mickens* for several reasons. First, the plaintiff in *Mickens* asserted a causation theory which assumed that *a third party* (the DCA) would have taken several actions had the defendant not committed its unlawful action. *Id.* at 434. There, the court found that the plaintiff could not establish causation where there were no allegations to support her theory that the third party would have taken the actions plaintiff claimed. *Id.* at 447. Here, meanwhile, Van Brunt speaks to her *own* actions she would have taken to resolve the HOA foreclosure had Wells Fargo offered her a modification. Van Brunt's allegations do not depend on unfounded assumptions of actions third-parties would have taken. For this reason alone, *Mickens* does not apply.

*Mickens* is distinguishable for another reason - Van Brunt's complaint contains detailed statements to support her contention that she would have resolved the COA foreclosure. For example, she notes that she had a plan in place to accumulate the necessary funds to pay the COA judgment in full. (Dkt. 69, ¶¶ 90-92). She also details what Wells Fargo calculated her income and expenses to be, and she demonstrates how she has surplus income to afford a Chapter 13 bankruptcy payment. (Dkt. 69, ¶ 96-100) Meanwhile, in *Mickens*, the plaintiff there "cite[d] no history or established practice of, or precedent for, any particular remedial measures being taken by the Division of Consumer Affairs, particularly in response to a manufacturer's Lemon Law Section 16 notification." *Mickens*, 900 F. Supp. at 439. Furthermore, the court noted there "nothing in the Division's regulations supports an assumption that the [DCA]would have pursued particular remedial measures if it had been informed of a defect." *Id.* at 439. Thus, the proof defects in *Mickens* do not exist here.

### C. Van Brunt Established a Claim for Common Law Fraud

The court dismissed this count on the grounds that Plaintiff failed to plead any nexus between the alleged false representation and the causation of her injury. The court relied upon its CFA nexus analysis to reach the same conclusion. To establish fraud, Van Brunt only needs to establish reliance over and above the causal nexus

she established as set forth above. Van Brunt has met and exceeded that standard here.

Van Brunt reasonably relied upon this misrepresentation in choosing not to contest the COA Action as there was no rational basis to do so as Wells Fargo held first lien priority. (Dkt. 69, ¶ 132). Van Brunt reasonably relied on the misrepresentations because there was no possible way to discover that she was wrongfully denied until Wells Fargo informed her nearly five years later of the error. (Dkt. 69, ¶ 133). Van Brunt's words in the Appeal indicate that she believe she qualified for a trial modification. (Dkt. 69-27 ("I am more than capable to pay my mortgage on time every month and therefore I am appealing Wells Fargo's decision.").

Wells Fargo claims Van Brunt fails to identify the who, how, and what to support her fraud claim. This is false. The who is identified (Wells Fargo), how is likewise specified (Wells Fargo conveyed its misrepresentation through the denial letter). Van Brunt also specifies what precisely she was told. Wells Fargo advised her "[b]ased on your documented monthly income, we are unable to create an affordable payment that meeds the requirements of the program." Thus, Van Brunt pleads this claim with sufficient specificity.

## D. Van Brunt Sufficiently Pleads a Claim for Intentional Infliction of Emotional Distress

To establish a prima facie claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (N.J. 1988)). Wells Fargo does not dispute that Van Brunt's emotional distress was severe. Otherwise, Van Brunt has established proximate causation as set forth in Section B, *supra*.

### 1. Wells Fargo acted in reckless disregard that probable emotional distress would result

A plaintiff can demonstrate the first factor by showing the defendant "intended to produce emotional distress *or* acted in reckless disregard of [the] fact that probable [] emotional distress would result." *Mosley v. Del. River Port Auth.*, No. 99-4147 (JBS), 2000 U.S. Dist. LEXIS 22402, at *43 (D.N.J. Aug. 7, 2000) (emphasis added); *see also Krebs v. S. Jersey Port Corp.*, No. 07-4561 (AET), 2008 U.S. Dist. LEXIS 133115, at *33 (D.N.J. June 4, 2008) (citing *Buckley*, 111 N.J. at 366).

The Complaint details how Wells Fargo was required by HAMP to offer loan modifications to certain borrowers who were in default; how Wells Fargo admittedly failed to offer Van Brunt a loan modification, and how Wells Fargo caused Van Brunt to lose her home.

24

In August 2013, Wells Fargo first discovered its errors and knew that "incorrect Attorney's Fees [were] being calculate[d] in HPA that could be impacting decisions." (Dkt. 69-6). Despite launching a preliminary review in January 2014 where loan modifications had been wrongfully denied, Wells Fargo concluded that no modifications were wrongly denied and there was no urgency to fix the error. (Dkt. 69, ¶ 141). Wells Fargo acted with reckless disregard that its actions would cause Van Brunt emotional distress through initially ignoring this problem. Had Wells Fargo taken immediate action with regards to this error, Wells Fargo would not have misrepresented to Van Brunt in December 2013 that she did not qualify for a loan modification. (Dkt. 69, ¶ 141).

## 2. Wells Fargo's Conduct was Extreme and Outrageous

For five years, Wells Fargo's loss mitigation decisioning tools systematically miscalculated eligibility for trial modifications. (Dkt. 69, ¶ 136). The error persisted despite consent orders mandating increased vigilance. (Dkt. 69, ¶ 136). Wells Fargo's conduct (e.g. failing to fix a known error despite repeated warnings from regulators to clean up its loss mitigation practices) with respect to Van Brunt demonstrates that Wells Fargo abused its position and power and otherwise acted in a manner which was extreme and outrageous. (Dkt. 69, ¶ 136). To make matters worse, Wells Fargo revisited the issue in July 2014, October 2014, and May 2015 and still failed to correct the problem. (Dkt. 69, ¶¶ 139-142). Wells Fargo concealed

25

the existence of the error until September 2018, after it "rediscovered" the error in March 2018. (Dkt. 69, ¶ 143).

Wells Fargo's attempts to liken its refusal over a period of several years to fix a known problem to the mistake at issue in *Buckley v. Trenton Sav. Fund Soc.* fail. First and foremost, *Buckley* was decided post-trial, where this is merely a motion to dismiss. 111 N.J. at 361. Second, *Buckley* concerned a bank's failure to honor a check to a customer's ex-spouse. *Id.* at 357. The plaintiff there presented a check to his ex-wife, who was unable to cash the check at the plaintiff's bank. *Id.* at 359. Plaintiff brought suit against the bank due to his ex-wife's difficulties in cashing checks. There, the court noted the careful balance that must be struck between the rights of a bank to and its customers:

> In striking that balance, we recognize that banks often conduct their business through branches, and that customers often do business with more than one branch of the same bank. The result is that over-the-counter transactions are often impersonal, a situation that can create tension between the customer's interest in cashing checks and the bank's interest in verifying the identity of its customers. In this setting, the system sometimes malfunctions. To some extent, slight emotional distress arising from the occasional dishonor of a check is one of the regrettable aggravations of living in today's society. See Restatement, supra, § 436A comment b. Accordingly, we are reluctant to allow compensation for the intentional infliction of emotional distress when a bank wrongfully dishonors a check unless the bank's conduct is intentional, as well as reckless or outrageous, and the distress is severe or results in bodily injury. See Hume, supra, 178 N.J. Super. at 319; Restatement, supra, § 46. When those conditions are met, a customer should be compensated for the emotional distress that is caused by the wrongful dishonor of a check.

*Id.* at 368. There, the Supreme Court determined that the plaintiff was unable to establish that he suffered from severe emotional distress, and based on that determination, held that "[o]ur finding of the absence of severe emotional distress renders unnecessary the determination whether the bank's conduct was extreme or outrageous or whether Mrs. Buckley's intervening conduct in complaining to Buckley broke the chain of causation between the dishonor and Buckley's claimed emotional distress." *Id.* at 369. Thus, the Supreme Court made *no* determination as to whether the bank's conduct was extreme or outrageous. It only determined that Buckely did not suffer from emotional distress - a determination reached *after* trial.

Wells Fargo otherwise quotes a selective portion of the court's holding in an attempt to draw similarities between it and this matter.[1] However, context is important. The Court only drew this conclusion in the *specific* context of "balanc[ing] the rights of the bank and its customers" "between the customer's interest in cashing checks and the bank's interest in verifying the identity of its customers" "when a bank wrongfully dishonors a check". *Id.* at 368. Here, this is not about a bank dishonoring a check because it was attempting to follow company

---

[1] For reference, the entire quote reads as follows: "we are reluctant to allow compensation for the intentional infliction of emotional distress **when a bank wrongfully dishonors a check** unless the bank's conduct is intentional, as well as reckless or outrageous, and the distress is severe or results in bodily injury." *Id.* at 368. Thus, the Court's holding is clearly limited to the circumstance where a check is dishonored - a circumstance which is inapplicable here.

policy and ascertain the identity of the individual cashing the check. This is about one of the largest financial institutions in the world refusing to fix a known modification problem for many years - a refusal which directly correlated in Van Brunt losing her home.

Wells Fargo then contends that Plaintiff must *also* prove that Wells Fargo intended both to do the act and to produce emotional distress. This is a misstatement of the law. This requirement is only applicable "for an intentional act to result in liability". However, New Jersey recognizes that alternatively, "[l]iability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Buckley*, 111 N.J. at 365. Van Brunt alleges here that Wells Fargo acted recklessly in deliberate disregard of a high degree of probably that emotional distress would follow. Thus, contrary to Wells Fargo's assertions, Van Brunt is *not* required to prove Wells Fargo intended both the act and the resulting emotional distress. Even assuming, *arguendo*, that Wells Fargo correctly states the applicable standards, its attempts to absolve itself of liability fail. Wells Fargo argues that by issuing a check to Van Brunt *years* after it forced her out of her home, it can somehow wash its hands clean of its conduct. First, to the extent this standard applies, as Defendants concede a court will look at the defendant's actions *when engaging in the controverted conduct*. Wells Fargo's actions years after Van Brunt lost her home speak nothing to its intent while it was wrongfully denying

her and while it knew its modification programs were faulty. Wells Fargo attempts to mitigate its loss by issuing a $25,000.00 check do not absolve its reckless conduct – conduct which caused Van Brunt on and off homelessness, the loss of the home that her two children grew up in, and further medical harm in the form of multiple strokes. TAC ¶ 112.

Likewise, *Fogarty v. Household Fin. Corp. III* is distinguishable from this matter. In *Fogarty*, the plaintiff alleged that another party took out a fraudulent mortgage in his name through the defendant, Household Finance (Household). No. 14-4525 (RBK/JS), 2015 U.S. Dist. LEXIS 23064, at *5 (D.N.J. Feb. 25, 2015). The mortgage fell into default, and Household began issuing notices of default to the plaintiff. *Id.* at *8-9. Critically, there was no allegation in *Fogarty* that the lender had knowledge that the mortgage was fraudulently taken out at the time it began issuing the default notices. *Id.* at *28. The court there relied upon this to recognize that the lender could not be impugned for its conduct when it did not know or had any reason to know that the mortgage was fraudulent. *Id.* Conversely, Van Brunt's complaint demonstrates that Wells Fargo knew of its calculation error for *years* and purposely took no action before it wrongfully denied Van Brunt. Thus, *Fogarty* is distinguishable from this case.

In dismissing this Count, the court determined that the SAC did not sufficiently plead that Defendant engaged in outrageous or extreme conduct.

"[T]here are cases in which the extreme and outrageous nature of the conduct arises not so much from what is done as from the abuse by the defendant of a relationship with the plaintiff which gives him power to damage the plaintiff's interests." *Taylor v. Metzger*, 152 N.J. 490, 512 (1998). Here, Wells Fargo was vested with significant power over Van Brunt as the servicer of her mortgage loan. Wells Fargo was responsible for implementing the calculation tools in connection with deciding whether she would keep her home or not. Wells Fargo knowingly ignored numerous warnings that its modification calculation systems were faulty. Its actions in doing so were outrageous and reckless.

The TAC outlines various consent orders as direct evidence of Wells Fargo's knowledge of the faulty calculation error and its repeated refusals to address the same. The court relied upon *Dumont v. Litton Loan Servicing, LP* to reach the blanket conclusion that a failure to comply with consent order does not rise to the level of outrageous conduct. This matter is distinguishable from Dumont in that the *Dumont* court found no connection between the relevant consent orders and Plaintiff's specific allegations. No. 12-cv-2677-ER-LMS, 2014 U.S. Dist. LEXIS 26880, at *76-77 (S.D.N.Y. Mar. 3, 2014). In *Dumont*, the plaintiff alleged wrongdoing against a specific Defendant (OFC) but failed to identify any factual allegations specific to OFC. The court noted that "the TAC offers nothing suggesting that OFC had any direct contact with Plaintiffs, had any direct role in servicing

30

Plaintiffs' loans, or had any direct involvement in handling Plaintiffs' modification paperwork." *Id.* at *76. This case is distinguishable. Wells Fargo was the servicer of Van Brunt's loan. Wells Fargo implemented the faulty underwriting tool at issue. Wells Fargo issued the wrongful denial to the Plaintiff. The consent orders demonstrate Wells Fargo's knowledge of its calculation errors and repeated failures to address the same.[2]

### E. Van Brunt Has Sufficiently Pled an Entitlement to Punitive Damages

"Punitive damages may be awarded [upon proof], by clear and convincing evidence, that the harm suffered was the result ... acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. § 2A:15-5.12(a). To determine whether punitive damages should be awarded, the Court must consider all relevant evidence, including: "(1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) The conduct

---

[2] Furthermore, on December 20, 2022, Wells Fargo entered into a consent order with the Consumer Financial Protection Bureau (CFPB) concerning the *exact* loan modification glitch conduct at issue. There, the CFPB determined that Wells Fargo's conduct "caused substantial injury to [Van Brunt] that was not reasonably avoidable or outweighed by any countervailing benefit to consumers or to competition." The CFPB further found that Wells Fargo "engaged in unfair acts and practices".

of the defendant upon learning that its initial conduct would likely cause harm; and, (4) The duration of the conduct or any concealment of it by the defendant." N.J.S.A. § 2A:15-5.12(b). Actual malice is defined as an "intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. § 2A:15-5.10. Wanton and willful disregard is defined as a "deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. § 2A:15-5.10.

In her common law fraud and intentional infliction of emotional distress claims, Van Brunt alleges that her damages, directly and proximately caused by Wells Fargo, were foreseeable as Wells Fargo knew Van Brunt would lose her home after Wells Fargo improperly denied her a trial modification. (D.E. 48, ¶¶ 134, 148). Further, Wells Fargo was simultaneously pursuing foreclosure and reviewing Van Brunt's eligibility for a loan modification, or engaging in dual tracking, a currently prohibited practice. (D.E. 48, ¶¶ 64-67). Wells Fargo's conduct constitutes wanton and willful disregard because Wells Fargo was aware that it was improperly including excess attorneys' fees into the calculations made for trial modifications and took a mindset of reckless indifference to the consequences of wrongfully denying Van Brunt for a trial modification and concealing that fact from Van Brunt, Wells Fargo shareholders, and Federal and State Regulators until 2018.

Only Wells Fargo's words indicate that the error was a "mistake". Wells Fargo failed to properly and promptly investigate the extent of this error and delayed correcting it for nearly five years. Wells Fargo was required to regularly review its loss mitigation procedures - either Wells Fargo knew about the error and ignored it, or its reckless indifference to the consequences of failing to comply with government regulation resulted in incompetent reviews. Whatever the state of mind, Wells Fargo has had too many chances to comply with government oversight and failed to avoid harming its customers. The four factors of N.J.S.A. § 2A:15-5.12(b) weigh in favor of Wells Fargo being subject to punitive damages.

## **CONCLUSION**

For the reasons above, Van Brunt respectfully requests the Court deny Wells Fargo's Motion to Dismiss.

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino
**THE DANN LAW FIRM, PC**
1520 US Highway 130, Suite 101
North Brunswick, NJ 08902
Telephone: 216-373-0539
Facsimile: 216-373-0536
notices@dannlaw.com
*Counsel for Plaintiff Dawn Van Brunt*

Dated: February 6, 2023

33

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Javier L. Merino*
Javier L. Merino
THE DANN LAW FIRM, P.C.
*Counsel for Plaintiff Dawn Van Brunt*