**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAWN VAN BRUNT,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:19-cv-00170-ZNQ-TJB<br><br>(Filed Electronically) |

**WELLS FARGO BANK, N.A.'S REPLY**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**
**THE THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


ARGUMENT ..... 1

A. The HOA Foreclosure Sale Was the Cause of Van Brunt's Loss ..... 1

B. Van Brunt Fails to State Claims for Violation of the New Jersey Consumer Fraud Act and Common Law Fraud (Counts One and Two). ..... 5

1. Van Brunt's Causation Allegations Remain Impermissibly Speculative. ..... 5

2. Van Brunt's Pleading Forecloses Her Conclusory Allegations of Knowing Concealment. ..... 8

C. The IIED Allegations Fall Far Short of New Jersey's High Bar. ..... 9

D. Van Brunt's Punitive Damages Allegations Are Insufficient. ..... 14

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buckley v. Trenton Sav. Fund Soc'y*,
111 N.J. 355 (1988) ....................14

*Caputzal v. Lindsay Co.*,
48 N.J. 69, 222 A.2d 513 (1966) ....................4

*Dabush v. Mercedes-Benz USA, LLC*,
378 N.J. Super. 105 (App. Div. 2005) ....................5

*Decker v. Princeton Packet*,
224 N.J. Super. 726 (Super. Ct. App. Div. 1988) ....................10

*DeLuca v. CitiMortgage*,
543 F. App'x 194 (3d Cir. 2013) ....................5

*Duncan v. Wells Fargo Bank,*
2021 WL 22086 (D.N.J. Jan. 4, 2021) ....................13, 16

*Fogarty v. Household Fin. Corp. III*,
2015 WL 852071 (D.N.J. Feb. 25, 2015) ....................10, 11, 12

*Frungillo v. Imperia Entm't, Inc.*,
2009 WL 3229760 (D.N.J. Sep. 28, 2009) ....................14

*Gonzalez v. U.S. Bank, Nat'l Ass'n*,
2015 WL 3648984 (D.N.J. June 11, 2015) ....................13

*Hoffman v. Citibank, N.A.*,
2018 U.S. Dist. LEXIS 148059 (D.N.J. Aug. 30, 2018) ....................9, 15

*Lynch v. Scheininger*,
162 N.J. 209, 744 A.2d 113 (2000) ....................4

*Mickens v. Ford Motor Co.*,
900 F. Supp. 2d 427 (D.N.J 2012) ....................6, 8

*Monday-West v. Wells Fargo Bank,*
2022 WL 16848879 (6th Cir. Nov. 9, 2022) ....................13

*N.J. Citizen Action v. Schering-Plough Corp.*,
367 N.J. Super. 8 (App. Div.), *cert. denied*, 178 N.J. 249 (2003)........................5

*Tafaro v. Six Flags Great Adventure, LLC*,
2018 WL 1535289 (D.N.J. Mar. 29, 2018) ......................................................14

*Taylor v. Metzger*,
152 N.J. 490 (1998) ........................................................................................12

*Wells Fargo Bank, N.A. v. Rivera*,
2016 N.J. Super. Unpub. LEXIS 1285 (Super. Ct. App. Div. June 6, 2016) ...............................................................................................3

*Witherspoon v. Rent-A-Ctr., Inc.*,
173 F. Supp. 2d 239 (D.N.J. 2001)...................................................................9

**Statutes**

N.J.S.A. 2A:15-5.9 ..........................................................................................14

Van Brunt's Opposition confirms that her pleading deficiencies cannot be cured. Indeed, Van Brunt's new, wholly speculative allegations cannot overcome the conclusion that is compelled *as a matter of law*: Van Brunt's homeowner's association, and not Wells Fargo, caused her to lose her home. Van Brunt's contrary arguments rest on fundamental misstatements of the law, and the Court should reject them and dismiss the Third Amended Complaint ("TAC") with prejudice.

## ARGUMENT

### A. The HOA Foreclosure Sale Was the Cause of Van Brunt's Loss.

In an attempt to get around the Court's two previous holdings that the HOA foreclosure sale caused her loss, Van Brunt offers a host of arguments, none of which withstand scrutiny.

The Court has twice rejected Van Brunt's argument that Wells Fargo caused her to lose her Property. Instead, as the Court recognized—and as Van Brunt admits—after she failed to pay years worth of condominium association fees, her HOA sold the Property at a foreclosure sale. *See* TAC ¶¶ 62-63, 70; ECF No. 65 at 12-13; ECF No. 42 at 10. That foreclosure sale divested Van Brunt of an ownership interest in the Property, and her claims thus necessarily fail as a matter of law. ECF No. 65 at 13. Now, without alleging any facts supporting a different conclusion, Van Brunt urges the Court to reverse course.

First, Van Brunt maintains "the HOA foreclosing on the home was an intervening cause which was foreseeable or normal incidents of the risk created by Wells Fargo failing to approve Van Brunt for a loan modification." ECF No. 77 at 14. But as support, Van Brunt offers nothing new. Instead, she merely repackages her prior arguments. *Compare* ECF No. 77 at 14, 23 ("Van Brunt reasonably relied upon this misrepresentation in choosing not to contest the COA Action as there was no rational basis to do so as Wells Fargo held first lien priority") *with* ECF No. 36 at 8 ("the Wells Fargo denial extinguished any incentive she had to resolve the foreclosure and prevent the February 2014 sale"); *id*. at 7 (Wells Fargo's "Sheriff's Sale . . . extinguished her claim to her home"). In dismissing Van Brunt's First Amended Complaint and Second Amended Complaint, this Court carefully considered and rejected those arguments, "find[ing] it implausible that Wells Fargo's calculation error was a cause of [Van Brunt's] damages." ECF No. 42 at 10 (holding that Van Brunt did not "sufficiently assert a causal relationship" notwithstanding the argument that she would have had no incentive to defend the HOA action or cure her HOA default); *see also id.* at 18 (Van Brunt would have "been foreclosed upon by the HOA[] whether or not Wells Fargo had denied the trial payment plan"); *see also* ECF No. 65 at 13 ("it is the COA action that first divested Plaintiff of her ownership interest in the Property").

Next, Van Brunt again cites to the Appellate Division's holding in *Wells Fargo Bank, N.A. v. Rivera*, 2016 N.J. Super. Unpub. LEXIS 1285, at *6 (Super. Ct. App. Div. June 6, 2016), presumably to suggest that only Wells Fargo had control of the Property and could have extinguished her claim to it. ECF No. 77 at 7. That conclusion is incorrect. As this Court previously pointed out, "*Rivera* supports the contrary position in providing that the purchaser of the property at the first sheriff's sale (the result of the COA Action) acquired what remained of Plaintiff's ownership interest in the property. ***As such, it is the COA action that first divested Plaintiff of her ownership interest in the Property***." ECF No. 65 at 13 (emphasis added). In other words, the HOA's foreclosure breaks the alleged chain of causation between the erroneous trial modification denial, Wells Fargo's foreclosure, and Van Brunt's loss.

Struggling to avoid this conclusion, Van Brunt next argues that she "need not prove that [Wells Fargo's] conduct was *the* sole cause of her damages." ECF No. 77 at 10 (citing *Varacallo v. Mass. Mut. Life Ins. Co.*, 332 N.J. Super. 31, 48 (App. Div. 2000) (alterations in original). "Instead, she is only required to prove that [Wells Fargo's] conduct was ***a*** cause of damages." *Id.* (citing *Varacello*, 332 N.J. Super. at 48) (emphasis in original). That argument misses the mark. As shown above, the HOA foreclosure was *the* cause of Van Brunt losing the Property, and as the Court has already determined, that is the case "whether or not Wells Fargo had

denied the trial payment plan." ECF No. 42 at 18. Accordingly, Wells Fargo's trial modification denial was not *a* cause of Van Brunt's loss at all.

Furthermore, Van Brunt's causation allegations remain conclusory, speculative, and contradictory. Indeed, her blanket claim that she "would have . . . been able to afford" the trial payment and the permanent modification because the trial payment and final modification payment "would have been at most 31% of her income, demonstrating financial feasibility," cannot be squared with her admission that she would have had to file for bankruptcy in order to repay an over $4,000 HOA lien—over a period of five years. ECF No. 77 at 15-16; *see also* TAC ¶ 81-83.

The Court can reject Van Brunt's newest argument—that whether the HOA foreclosure caused her to lose the Property cannot be resolved on a motion to dismiss because it is a jury question. ECF No. 77 at 12-14. As Van Brunt acknowledges, courts have "determined that intervening events constituted supervening causes as a matter of law, where such events were sufficiently extraordinary or so clearly unrelated to the antecedent negligence that imposition of liability would be unreasonable." *Lynch v. Scheininger*, 162 N.J. 209, 229, 744 A.2d 113, 124 (2000) (referring to *Caputzal v. Lindsay Co*., 48 N.J. 69, 77–80, 222 A.2d 513 (1966)). As the Court has twice recognized, such is the case here, and this case is thus particularly appropriate for dismissal at the pleading stage. *See, e.g., DeLuca v. CitiMortgage*, 543 F. App'x 194, 197 (3d Cir. 2013) (dismissing borrowers' CFA claim where facts

"broke any causal connection between alleged misrepresentations and any loss allegedly suffered").

Van Brunt's causation allegations are no less speculative or conclusory than before. The Court should dismiss the TAC in its entirety with prejudice.

**B. Van Brunt Fails to State Claims for Violation of the New Jersey Consumer Fraud Act and Common Law Fraud (Counts One and Two).**

**1. Van Brunt's Causation Allegations Remain Impermissibly Speculative.**

A plaintiff making a CFA claim must allege (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the unlawful practice and the ascertainable loss. *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 114 (App. Div. 2005); *N.J. Citizen Action v. Schering-Plough Corp*., 367 N.J. Super. 8, 12-13 (App. Div.), *cert. denied*, 178 N.J. 249 (2003). As demonstrated above, Van Brunt's CFA claim fails out of the gate, because she cannot allege the requisite "causal relationship" under element (3).

In an attempt to avoid this conclusion, Van Brunt continues to speculate about what she "would" or "could" have done or what "would" or "could" have happened. As she argues, her "final modification payment would have been at most 31% of her income, demonstrating financial feasibility" and she "would have completed the TPP … (and been able to afford) the necessary TPP and permanent modification payments." ECF No. 77 at 15-16. Van Brunt further argues that she "had a plan in

place" to resolve the COA foreclosure which would have involved either "accumulating funds from her mother, daughter, and boyfriend" to "resolve[] the COA foreclosure in its entirety," ***or*** filing for and qualifying for Chapter 13 bankruptcy. *Id*. at 16-17. Finally, Van Brunt says that her "financials demonstrate how she would have been able to afford the payments needed to repay the COA arrears over a period of sixty (60) months." *Id*. at 17.

As Wells Fargo showed in its opening memorandum, however, these allegations are no less speculative than her previous allegations and do not cure her causation deficiencies. Under *Mickens v. Ford Motor Co*., allegations that a particular act "would have set in motion a chain of events that would have resulted in [the plaintiff avoiding the particular harm]" are not enough to state a plausible CFA claim. 900 F. Supp. 2d 427, 438 (D.N.J 2012). Van Brunt argues that *Mickens* does not apply because the claims there "asserted a causation theory which assumed that a *third party* (the [Division of Consumer Affairs]) would have taken several actions had the defendant not committed its unlawful action," while she "speaks to her *own* actions she would have taken to resolve the HOA foreclosure had Wells Fargo offered her a modification." ECF No. 77 at 21 (emphasis in original); *see also id*. (stating her "allegations do not depend on unfounded assumptions of actions third-parties would have taken"). However, that argument was hopelessly flawed the last time Van Brunt made it, ECF No. 62 at 15-16, and it remains so now. As

the Court observed when it dismissed the Second Amended Complaint, Van Brunt's argument that she would have filed for bankruptcy rested on the assumed actions of ***two*** third parties—namely, the bankruptcy trustee and the bankruptcy judge. *See* ECF No. 65 at 13. Now, Van Brunt urges the Court to reach a different conclusion based on allegations that assume the actions of ***five*** third parties—the bankruptcy trustee and bankruptcy judge, and now, Van Brunt's mother, daughter, and boyfriend. The Court should reject this sleight of hand.

Regarding Van Brunt's new "accumulation of funds" theory, it rests on her unsubstantiated belief that, had Wells Fargo not erroneously denied her a trial modification, her family members would have found the means to give her another $4,000+ so that she could pay the HOA in full. ECF No. 77 at 16. Van Brunt's own documents demonstrate the folly of this argument: Her boyfriend and daughter were ***already*** contributing to the household expenses, s*ee* ECF No. 69-27, yet Van Brunt did not take a single step to avoid the HOA foreclosure. Indeed, she does not allege she made any payment towards the arrearage with these funds she now claims would have been easy to "accumulate."

Van Brunt's recycled bankruptcy theory fares no better. It too rests on her unsubstantiated belief that, had Wells Fargo not erroneously denied her a trial payment plan, she would have filed for Chapter 13 bankruptcy, and the bankruptcy trustee *and* the bankruptcy court would have agreed to a Chapter 13 repayment plan

that would have successfully resolved the HOA action. Accordingly, just as in *Mickens*, Van Brunt's argument is based on "hypothetical remedial actions" of third parties that are, at best, speculative. *Mickens*, at 900 F. Supp. 2d at 439. Those allegations cannot save her CFA claim.

Finally, as set forth *supra*, Van Brunt's causation allegations are conclusory, speculative, and contradictory. Her admission that she would have been forced to scrape up funds from family members, or, alternatively, file for bankruptcy in order to repay a $4,000+ HOA lien over a period of five years, belies her insistence that she would have been able to afford, and would have paid, a modified mortgage payment for the life of the loan. Because Van Brunt still has not alleged a non-speculative causal nexus connecting Wells Fargo to her alleged injury, her CFA claim should be dismissed with prejudice.

For the same reason—failure to plead any nexus between the alleged false representations and the causation of her injury—Van Brunt's common law fraud claim also fails. ECF No. 65 at 16 (citing *Cent. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, Civ. No. 09-3418, 2010 WL 1257790, at *4 (D.N.J. Mar. 29, 2010).

### 2. Van Brunt's Pleading Forecloses Her Conclusory Allegations of Knowing Concealment.

Van Brunt's CFA and common law fraud claims fail for an additional reason: Her own pleading forecloses her conclusory allegations of knowing concealment. *See* TAC ¶¶ 121, 127 (alleging that Wells Fargo violated the CFA and committed

fraud by knowingly concealing the error from 2013 to 2018). Specifically, Exhibit 2 to Van Brunt's TAC shows that Wells Fargo did not believe any customers had been harmed by the software error as of 2015. *See* ECF No. 69-2. It follows, then, that Wells Fargo could not have "knowingly concealed" the error from her. Counts One and Two should be dismissed for this reason as well.

### C. The IIED Allegations Fall Far Short of New Jersey's High Bar.

"New Jersey's exceedingly high bar for IIED" requires Van Brunt to allege "extreme and outrageous" conduct that goes well beyond "unjust, unfair, and unkind." *Hoffman v. Citibank, N.A.*, No. 3:16-cv-4491-BRM-LHG, 2018 U.S. Dist. LEXIS 148059, at *10 (D.N.J. Aug. 30, 2018) (dismissing IIED claim with prejudice). As explained in Wells Fargo's opening memorandum, for conduct to be "extreme and outrageous" it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon v. Rent-A-Ctr., Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366, (1988) (citation omitted)). Accordingly, a mistake is insufficient to support an "extreme case[]" of outrageous conduct under New Jersey's "elevated threshold." *Fogarty v. Household Fin. Corp. III*, No. 14-4525, 2015 WL 852071, *16, 18-19 (D.N.J. Feb. 25, 2015) ("[E]ven if [defendant's] decision [to seek payment or foreclosure based on allegedly fraudulent mortgage]

was wrong, it was not extreme or outrageous, and Plaintiff's claim fails as a matter of law."). Again, Van Brunt acknowledges, and this Court has already determined, that her trial loan modification was denied due to a calculation error. TAC ¶¶ 32, 38, 43-44, ECF No. 65 at 18. An error is a mistake, and Van Brunt's IIED claim accordingly cannot proceed. *See Decker v. Princeton Packet*, 224 N.J. Super. 726, 728 (Super. Ct. App. Div. 1988) ("a mistake . . . is not sufficient to give rise to a claim for money damages" in an IIED action).

Van Brunt's IIED claim also fails because she has not pled that Wells Fargo "*intended* to inflict emotional distress on [her] by attempting to hide the calculation error [from her]." ECF No. 65 at 19. As the Court explained in dismissing the earlier version of this claim, "'[f]or an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress.'" *Id.* (quoting *Buckley*, 11 N.J. at 366); *see also Fogarty*, 2015 WL 852071, at 17 (filing a lis pendens on the plaintiff's property before investigating plaintiff's allegations of fraud in connection with the underlying mortgage was not "extreme" or "outrageous"). Van Brunt's intent allegations do not make sense: Wells Fargo could not have been trying to inflict emotional distress on Van Brunt by withholding information from her. *See* ECF No. 73-1 at 23.

In response, Van Brunt argues that Wells Fargo acted with reckless disregard that emotional distress would result because it failed to take "immediate action with

regards to [the errors it discovered in 2013]." ECF No. 77 at 25. Van Brunt's own allegations foreclose that theory. Quite simply, Van Brunt admits that Wells Fargo did not know of the error affecting her loan until 2018 and that it denied the trial modification because of a mistake. TAC ¶¶ 58-59; ECF No. 77 at 4. Van Brunt's factually unsupported insistence that Wells Fargo should have reached its conclusion earlier does not render its conduct outrageous. *See Fogarty*, 2015 WL 852071, at *18 ("The only support Plaintiff marshals for the outrageousness of [defendant's] actions is her conclusion that it *should* have reached the same conclusion she did with respect to the fraud claim, in light of the available evidence. But, even assuming . . . [defendant] should have determined that the [] Mortgage was obtained fraudulently, its failure to do so is not sufficiently outrageous.").[1]

Selectively quoting from *Taylor v. Metzger*, 152 N.J. 490 (1998),[2] Van Brunt also argues that Wells Fargo was "vested with significant power over Van Brunt as

---

[1] Van Brunt's attempt to distinguish *Fogarty* on the basis that there was "no allegation . . . that the lender had knowledge that the mortgage was fraudulently taken out at the time it began issuing the default notices" fails. ECF No. 77 at 29. Van Brunt's allegations foreclose this theory because she admits Wells Fargo did not know the error affected her loan until 2018, five years after Wells Fargo mistakenly denied Van Brunt's trial modification. TAC ¶¶ 58-59. Accordingly, this case is on all fours with *Fogarty*, 2015 WL 852071, at *5, where the Court recognized "the lender could not be impugned for its conduct when it did not know or had any reason to know" that the error affected the plaintiff. ECF No. 77 at 29.

[2] Van Brunt has plucked a quote from *Taylor*, devoid of any context, to give the impression that her quotation is an accurate statement of New Jersey law. But her quoted language is not a holding of the case; it is instead a quote from an Arkansas

the servicer of her mortgage loan" and, because of that dynamic, its failure to catch the error in its modification system was outrageous and reckless. ECF No. 77 at 30. *Taylor* has no application here. The case addresses dynamics between employees and employers in the workplace, not the dynamics inherent in an arms-length, lender-borrower relationship. *See Taylor*, 152 N.J. at 511. As the *Taylor* court explained, "the power dynamics of the workplace contribute to the extremity and the outrageousness of defendant's conduct. The employer-employee relationship has been regarded as a special relationship which is a factor to be considered in determining whether liability should be imposed." *Id.* Absent specific allegations that the bank encouraged the borrower "to repose special trust or confidence in its advice," New Jersey law does not regard the bank-borrower relationship as a "special relationship." *See, e.g., Gonzalez v. U.S. Bank, Nat'l Ass'n*, 2015 WL 3648984, at *5 n.1 (D.N.J. June 11, 2015). Van Brunt makes no such allegations here, and any "special relationship" theory necessarily fails.

Finally, Van Brunt persists with her efforts to pursue a theory this Court has twice rejected—that "various consent orders [serve] as direct evidence of Wells

---

Supreme Court case the *Taylor* court referenced in a string cite. *See Taylor*, 152 N.J. at 512 (quoting *M.B.M. Co. v. Counce*, 268 Ark. 269 (1980) ("[T]here are cases in which the extreme and outrageous nature of the conduct arises not so much from what is done as from the abuse by the defendant of a relationship with the plaintiff which gives him power to damage the plaintiff's interests.")). Van Brunt's quotation of Arkansas, rather than New Jersey, law further demonstrates that her arguments have no merit.

Fargo's knowledge of the faulty calculation error and its repeated refusals to address the same." ECF No. 77 at 30. There is no reason for the Court to hold differently than it already has—that "fail[ure] to comply with consent orders to maintain vigilance does not rise to the level of 'outrageous conduct'" required to state an IIED claim. ECF No. 65 at 19; ECF No. 42 at 17. Other judges in this District and elsewhere agree, and have dismissed IIED claims arising out of the same software error and consent order allegations at issue here. *Duncan v. Wells Fargo Bank*, N.A., Civ. No. 19-00172, 2021 WL 22086, at *8 (D.N.J. Jan. 4, 2021) (refusing to assume that defendants' conduct rose to the level of outrageous conduct based on prior consent orders); *see also Monday-West v. Wells Fargo Bank, N.A.*, No. 20-6381, 2022 WL 16848879, at *9 (6th Cir. Nov. 9, 2022) (dismissing IIED claim and holding that, while Wells Fargo's alleged failure to "audit, correct and improve systems" is "far from perfect," "certainly unfortunate," and "regrettable," it "does not meet the high bar for outrageous conduct"). Van Brunt has no answer for these cases, which presumably is why she ignores them. There is simply no reason for the Court to reconsider its prior rulings.

Because Van Brunt has not cured the deficiencies in her IIED claim, the Court should dismiss it with prejudice.

**D. Van Brunt's Punitive Damages Allegations Are Insufficient.**

In a tacit admission that she has not plausibly alleged Wells Fargo's intent, Van Brunt argues that "*[w]hatever the state of mind*, Wells Fargo has had too many chances to comply with government oversight." ECF No. 77 at 33 (emphasis added). That argument is contrary to New Jersey law, which requires Van Brunt to plausibly allege "actual malice," "a wanton and willful disregard," or any "added element of egregious conduct." *See* N.J.S.A. 2A:15-5.9; *Tafaro v. Six Flags Great Adventure, LLC*, No. 17-5607, 2018 WL 1535289, at *9 (D.N.J. Mar. 29, 2018). Indeed, "[p]unitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like." *Frungillo v. Imperia Entm't, Inc.*, No. 08-0908 (DRD), 2009 WL 3229760, at *4 (D.N.J. Sep. 28, 2009). But that is all Van Brunt alleges here. TAC ¶¶ 58-59; ECF No. 77 at 4. Her punitive damages claim thus cannot proceed. *See Tafaro*, 2018 WL 1535289, at *8–9 (D.N.J. Mar. 29, 2018) (dismissing punitive damages claims where Plaintiff failed to allege facts supporting "actual malice" or "wanton and willful disregard"); *Buckley*, 111 N.J. at 371 ("Absent conduct that is wantonly reckless or malicious, punitive damages should not be allowed . . . even if [the conduct is] viewed as intentional or deliberate.").

**CONCLUSION**

For the foregoing reasons, the Third Amended Complaint should be dismissed in its entirety, with prejudice.

Dated: February 27, 2023

***/s/ Michael E. Blaine***

Michael E. Blaine
Angela A. Smedley (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-4754
(212) 294-4700 ~ Fax
mblaine@winston.com
asmedley@winston.com

Kobi Kennedy Brinson (*pro hac vice*)
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
(704) 350-7747
(704) 350-7800 ~ Fax
kbrinson@winston.com

*Attorneys for Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that copies of the foregoing WELLS FARGO BANK, N.A.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS VAN BRUNT'S THIRD AMENDED COMPLAINT was served by notice of electronic filing and electronic mail on February 27, 2023 upon:

Javier L. Merino
DANNLAW
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
jmerino@dannlaw.com

*Attorney for Dawn Van Brunt*

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: February 27, 2023

***/s/ Michael E. Blaine***
Michael E. Blaine