**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAWN VAN BRUNT,**<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**WELLS FARGO BANK, N.A.,**<br><br>　　　　　　　　Defendant. | Civil Action No. 19-170 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss the Third Amended Complaint ("the Motion") filed by Defendant Wells Fargo Bank, N.A. ("Defendant") pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 73.) Defendant filed a memorandum of law in support of the Motion. ("Moving Br.", ECF No. 73-1). Plaintiff Dawn Van Brunt ("Plaintiff") opposed the Motion ("Opp'n Br.", ECF No. 77), and Defendant filed a reply ("Reply Br.", ECF No. 78). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motion.

**I.　　FACTUAL BACKGROUND[1]**

Plaintiff previously owned residential real property located at 4101 Dairy Court, Freehold, New Jersey ("the Property"), which she occupied as her primary residence. (Third Amended

---

[1] For purposes of this motion, the Court will take all facts alleged in the Third Amended Complaint as true. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

1

Complaint ("Third Am. Compl.") ¶ 1, ECF No. 69.) From approximately July 12, 2007 to July 11, 2017, Defendant was the servicer of a note and mortgage on the Property (collectively, the "Loan"), and the Loan was insured by The Federal Housing Authority ("FHA"). (*Id.* ¶ 3.)

The Court will rely upon the facts set forth in its prior Opinion as to Defendant's History with HAMP Regulations and Defendant's Automated Loan Modification Tools. (See ECF No. 65 at 2–5.)

### A.     **Plaintiff's Request for Modification and Foreclosure**

In 2009, Plaintiff left her job to care for her ill father and brother. (*Id.* ¶ 61.) As a result, she experienced financial difficulties and defaulted on the Loan. (*Id.*) In February 2012, Plaintiff reached out to Defendant to obtain a loan modification. (*Id.* ¶ 64.) On November 19, 2012, Defendant filed a foreclosure action against Plaintiff. (*Id.* ¶ 65.) On or about December 2, 2013, Defendant sent a letter to Plaintiff informing her that she did not qualify for a loan modification. (*Id.* ¶ 66.) Shortly after, Plaintiff appealed the modification denial, but Defendant denied the appeal through correspondence dated January 13, 2014. (*Id.* ¶ 67.)

During this time, Plaintiff also experienced financial difficulties related to her condominium association. On or about August 19, 2011, The Strickland Farm Condominium Association, Inc. (the "COA") commenced an action against Plaintiff over $1,819 in unpaid common expense assessments. (*Id.* ¶ 62.) On October 13, 2012, judgment was awarded to the COA in the amount of $4,075.15. (*Id.* ¶ 63.) On October 15, 2013, an Order Permitting the Sale of Van Brunt's Home was entered in the COA action. (*Id.* ¶ 63.) The COA scheduled an auction on Plaintiff's home for February 3, 2014. (*Id.* ¶ 68.)

Plaintiff did not take actions to stop the February 3, 2014 auction because Defendant held the first lien position mortgage and was proceeding to foreclose on her home. (*Id.* ¶ 69.) On

February 3, 2014, the COA sold Plaintiff's home at auction. (*Id*. ¶ 70.) Plaintiff and her family were forced to move out of the Property on or about September 3, 2014. (*Id*. ¶ 71.)

On July 1, 2014, Defendant obtained final judgment in its foreclosure action and scheduled an initial sale date for December 1, 2014. (*Id*. ¶ 72.) Ultimately, Defendant caused the home to be sold at auction and acquired title to the property at a sale in January 2015. (*Id*.) Defendant held the deed until May 16, 2018. (*Id*. ¶ 73.)

On or about August 3, 2018, Defendant filed a Form 10-Q with the SEC, identifying a calculation error causing approximately 625 eligible borrowers to be incorrectly denied modification between April 13, 2010 and October 20, 2015. (*Id*. ¶¶ 75–76.) On or about September 20, 2018, Defendant sent a letter to Plaintiff stating that Plaintiff should have been approved for a trial period plan ("TPP"), if not for a faulty calculation. (*Id*. ¶¶ 77–79.) This letter included a check for $25,000 and asked Plaintiff to consider mediation if she felt Defendant had not "made things right." (*Id*. ¶¶ 102–03.) On or about October 8, Plaintiff completed paperwork to request mediation. (*Id*. ¶¶ 104–07.) The mediation on December 28, 2018, governed by a set of rules established by Defendant and not provided in advance to Plaintiff or her counsel, was unsuccessful. (*Id*. ¶¶ 108–09.)

    **B.**  **Plaintiff's Situation Had Defendant Granted Modification**

Plaintiff asserts that, had the modification been granted, she would have made the required payments under the TPP and the following permanent modification. (*Id*. ¶¶ 83, 86.) Plaintiff's monthly payments under a loan modification would have been at most 31% of her gross monthly income. (*Id*. ¶ 81.) The loan modification for which Plaintiff qualified would have required her to complete a three-month TPP. (*Id*. ¶ 82.) Upon completion of the TPP, Defendant would have been required to provide a permanent loan modification agreement. (*Id*. ¶ 84.) Under the

3

permanent modification, Plaintiff's payments would have been the same or less than under the TPP. (*Id.* ¶ 85.) During the TPP, Defendant would have been required to suspend their pending foreclosure action. (*Id.* ¶ 101.)

Plaintiff further asserts that she would have paid the COA judgment, preventing foreclosure. (*Id.* ¶¶ 91–93.) Plaintiff had a plan in place to acquire the funds from her personal money as well as her mother, daughter, and boyfriend to pay the COA judgment in full. (*Id.* ¶ 91.) Plaintiff alleges that a payment in full of this debt would have immediately resolved the COA foreclosure. (*Id.* ¶ 93.)

As an alternative method of addressing the COA debt, Plaintiff asserts that she would have filed a Chapter 13 Bankruptcy Petition and repaid the COA over a period up to sixty months, noting that she would have qualified as an individual with regular income, less than $250,000 in unsecured debts, and less than $750,000 in secured debts. (*Id.* ¶ 96.) In Plaintiff's loan modification application, she identified her income as $2,445 per month and her non-housing expenses as $336 per month. (*Id.* ¶ 97.) Plaintiff's income minus her modified mortgage payment and her expenses would have left her with a monthly surplus of approximately $1,351.05, more than enough to cover the payment under a sixty-month bankruptcy plan. (*Id.* ¶¶ 98–100.)

## II.     PROCEDURAL HISTORY

Plaintiff filed her first Complaint on January 7, 2019. (ECF No. 1.) Defendant filed a Motion to Dismiss the Complaint on February 15, 2019. (ECF No. 9.) Plaintiff filed a Motion for Leave to file an amended complaint on July 11, 2019. (ECF No. 27.) Defendant's motion to dismiss was administratively terminated on July 16, 2019. (ECF No. 28.) Plaintiff filed an amended complaint on July 25, 2019. (ECF No. 30.) Defendant filed a Motion to Dismiss First Amended Complaint on September 13, 2019. (ECF No. 34.)

Defendant filed a Motion to Stay Proceedings Pending Decision by the Judicial Panel on Multidistrict Litigation on March 9, 2020. (ECF No. 38.) On March 10, 2020, an order was entered granting Defendant's Motion to Stay and Defendant's Motion to Dismiss was terminated. (ECF No. 39.) On April 6, 2020, Plaintiff requested the Court to reinstate Defendant's Motion to Dismiss First Amended Complaint. (See ECF No. 40.) On April 7, 2020, Plaintiff's request was granted and the Court reinstated Defendant's Motion to Dismiss the First Amended Complaint. (See ECF No. 41.)

On December 31, 2020, an opinion and order were filed granting Defendant's Motion to Dismiss and granting Plaintiff leave to file a second amended complaint. (ECF Nos. 42–43.) Plaintiff filed a Second Amended Complaint on February 8, 2021. (ECF No. 48.) Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint on May 27, 2021. (ECF No. 61.) An opinion and order were filed granting Defendant's Motion to Dismiss and granting Plaintiff leave to file a third amended complaint. (ECF Nos. 65–66.) Plaintiff filed a Third Amended Complaint on November 11, 2022. (ECF No. 69.) Defendant filed the instant motion on December 22, 2022. (ECF No. 73.)

### III.   JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

### IV.   LEGAL STANDARD

#### A.   Federal Rule of Civil Procedure 12(b)(6)

Upon reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn

therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). If the plaintiff is unable to plead sufficient facts to state a claim to relief that is plausible on its face, a motion to dismiss should be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is sufficient, a court must take three steps. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*. at 679. In sum, this court's inquiry is normally broken into three parts (1) identifying each element of the claim, (2) striking conclusory allegations, and (3) reviewing the components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. *Malleus*, 641 F.3d at 563.

B. **Federal Rule of Civil Procedure 9(b)**

Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id*. at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who,

6

what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

The heightened pleading standard set forth in Rule 9(b) applies to a plaintiff's CFA and common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims). *Slim CD, Inc. v. Heartland Payment Sys., Inc*, Civ. No. 06-2256, 2007 WL 2459349, at *11 (D.N.J. Aug. 24, 2007) (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850, 856 (3d Cir.1994)).[2]

## V. DISCUSSION

The Home Affordable Modification Program ("HAMP") does not create a private federal right of action. *Sinclair v. Citi Mortg., Inc.*, 519 F. App'x 737, 739 (3d Cir. 2013) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n. 4 (7th Cir. 2012)). Nevertheless, plaintiffs may bring claims related to HAMP violations under independent causes of action. *Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 128 (3d Cir. 2018) ("That HAMP does not provide a private cause of action, however, does not mean that it precludes state law claims altogether."); *Miller v. Bank of America Home Loan Servicing*, 110 A.3d 137, 142-143 (N.J. Super. Ct. App. Div. 2015) (noting that "[p]rior unreported opinions by the United States District Court for the District of New Jersey have discussed HAMP's bar of a private cause of action as precluding suits alleging a state contract law theory of liability," but rejecting that position).

---

[2] Plaintiff's opposition brief references only Rule 12(b)(6), but does not directly argue that Rule 9(b) should not apply. (*See* Opp'n Br. at 8.) Plaintiff also references cases that apply the Rule 9(b) standard to CFA claims. *Id.* at 9; *see Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009). In *Bukowski*, the Third Circuit reviewed three claims, including a CFA claim, under the 12(b)(6) standard. *Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 127 (3d Cir. 2018). However, whether to apply Rule 9(b) was not at issue before the Court, and the Court cites favorably cases that apply the 9(b) standard to CFA claims. *See id.* at 129; *see also* Frederico v. Home Depot, 507 F.3d 188, 202–203 (3d Cir. 2007) (affirming dismissal of CFA claim for failure to meet specificity required by Rule 9(b)); *Giordano v. Saxon Mortg. Servs., Inc.*, Civ. No. 12-7937, 2014 WL 4897190, at *5 (D.N.J. Sept. 30, 2014); *Smith v. Citimortgage, Inc.*, Civ. No. 15-7629, 2015 WL 12734793, at *5 (D.N.J. Dec. 22, 2015).

Related to the erroneous loan modification calculations to this case, plaintiffs have brought a variety of claims against Wells Fargo in several jurisdictions. *See, e.g.*, *Hernandez v. Wells Fargo & Co.*, Civ. No. 18-07354, 2019 WL 2359198, at *4–10 (N.D. Cal. June 3, 2019) (evaluating class action claims under California's Homeowners Bill of Rights, Section 17200 of California Business and Professions Code, various state consumer protection laws including the New Jersey Consumer Fraud Act, intentional infliction of emotional distress, negligence, breach of contract, and wrongful foreclosure); *Coordes v. Wells Fargo Bank, N.A.*, Civ. No. 19-0052, 2019 WL 5295526, at *5–6 (E.D. Wash. Oct. 18, 2019) (evaluating claims under the Washington Consumer Protection Act and for unjust enrichment); *Curran v. Wells Fargo Bank, N.A.*, Civ. No. 20-492 , 2021 WL 6753480, at *1 (D.D.C. Mar. 11, 2021) (evaluating claims for negligence and unfair and deceptive trade practices under the D.C. Consumer Protection Procedures Act).

In this case, Plaintiff brings claims for violations of the New Jersey Consumer Fraud Act, common law fraud, and intentional infliction of emotional distress. (Third Am. Compl.) Defendant moves to dismiss all claims. (ECF No. 73.)

A.  **Count I: Consumer Fraud Act**

Plaintiff first alleges that Defendant violated the Consumer Fraud Act ("CFA"). (Third Am. Compl. ¶¶ 113–124.) Defendant seeks to dismiss the claim, arguing that Plaintiff failed to meet her burden to plausibly allege a causal connection between Defendant's denial of her TPP and the loss of her property. (Moving Br. at 7, 14–15.)

The CFA prohibits:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any

>
> merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . .

N.J.S.A. § 56:8-2.

A *prima facie* case under the CFA requires three elements: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Pavan v. GreenPoint Mortg. Funding*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)). Unlawful conduct is divided into three categories: affirmative acts, knowing omissions, and regulatory violations. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). When a plaintiff seeks to recover based on a defendant's knowing omissions, intent is also an essential element. *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 556 (2009).

Defendant does not argue that Plaintiff failed to plausibly allege unlawful conduct, an ascertainable loss, or intent. Nevertheless, identifying the alleged unlawful conduct and ascertainable loss is necessary before evaluating whether a causal nexus exists between the two. Plaintiff alleges that Defendant violated the CFA by (1) misrepresenting to Plaintiff that she had not qualified for a TPP (Third Am. Compl. ¶ 118), (2) waiting to implement a fix for the calculation errors (*id.* ¶ 120), and (3) knowingly concealing or omitting information of the calculation errors from Plaintiff from August 2013 to September 2018 (*id.* ¶ 121). Plaintiff alleges that these acts and omissions ultimately caused the COA foreclosure and other losses stemming from that foreclosure. (*Id.* ¶¶ 92, 112, 119).

Under the CFA, a plaintiff must demonstrate that the ascertainable loss was suffered "as a result of" the defendant's unlawful conduct. N.J. Stat. Ann. § 56:8-19 (2004). Accordingly, a plaintiff must allege facts that establish a causal nexus between the defendant's conduct and the plaintiff's loss. *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 303 (D.N.J. 2009). The

9

required causation is not "infinitely elastic in a but-for sense," but rather must be proximate to the unlawful act. *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 437 (D.N.J. 2012) (quoting *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 473 (1988)). However, a plaintiff need not allege that the defendant's conduct was the only cause of her loss. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332 N.J. Super. 31, 48 (App. Div. 2000) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 608 (1997)).

Defendant offers two primary lines of reasoning to support the proposition that Plaintiff failed to plausibly allege causation. First, Defendant argues that the COA foreclosure, rather than the denial of Plaintiff's TPP, caused Plaintiff to lose her property, undercutting her theory of causation. (Moving Br. at 8, 15–16.) Second, Defendant describes Plaintiff's allegations of causation as "entirely speculative," pointing to a series of gaps in factual allegations. (*Id.* at 9.) The Court will consider each argument in turn.

The COA foreclosure was a cause Plaintiff's loss, but this does not imply that Wells Fargo's conduct was not. The causation element of a CFA claim does not require that the unlawful act be the only cause of the plaintiff's loss. *Varacallo*, 332 N.J. Super. at 48 (citing *Gennari*, 148 N.J. at 608). Defendant references *Mickens* as support for the conclusion that Plaintiff's claim should be dismissed on these grounds. (Moving Br. at 15.) But there, the court dismissed the claim for lack of sufficient facts supporting the plaintiff's alleged chain of causation. *See Mickens*, 900 F. Supp. 2d at 438–39. The decision in *Mickens* would better support the Defendant's second argument, addressed below. Although Defendant does not point to the proposition in *Mickens* that CFA causation must be proximate, it is worth noting that the cases upon which *Mickens* relies for this proposition would not imply a lack of causation in this case. *Id.* at 437 ("Thus, for example, a plaintiff who asserted that a dealership unfairly denied his application to lease a new car had no

claim under the CFA for expenses he incurred when his old car broke down a month later" (quoting *Feinberg v. Red Bank Volvo, Inc.*, 331 N.J. Super. 506, 511 (App. Div. 2000)). The connection between the denial of a loan modification and foreclosure is more natural than the connection between the denial of a car lease and expenses stemming from a different car breaking down.

Plaintiff has alleged sufficient facts to render plausible the causal connection between Wells Fargo's denial of her loan modification and the foreclosure of her Property. Arguing to the contrary, Defendant points to several specific links in Plaintiff's causal chain. Regarding Plaintiff's allegation that she could have paid off the COA debt in full, Defendant points to a lack of facts supporting the assertion that Plaintiff's friends and family had enough money to pay off her debts. (Moving Br. at 10.) As to Plaintiff's alternative plan to file for Chapter 13 bankruptcy, Defendant argues that Plaintiff fails to show that this course of action would have concluded in her favor. (*Id.* at 17.) Finally, regarding Plaintiff's TPP, Defendant argues that Plaintiff failed to allege that she had a job that would have allowed her to make the required payments. (*Id.* at 12, 18.) But to require Plaintiff to fill these gaps would be to ask for proof rather than plausibility. *See Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 597 (D.N.J. 2014) ("[F]actual allegations must be sufficient merely to make a claim plausible. Proof is not required." (emphasis omitted)). Plaintiff provides a calculation of what her modified mortgage payments would have been and why she could have afforded them based on her income and expenses. (Third Am. Compl. ¶¶ 97–99.) Plaintiff alleges why she would have been eligible for Chapter 13 bankruptcy (*id.* ¶ 96) and how she could have afforded the resulting COA debt payment (*id.* ¶ 100). Plaintiff also alleges that, as an alternative to bankruptcy, she had a plan to pay the COA debt in full using her own money and money borrowed from mother, daughter, and boyfriend. (*Id.* ¶¶ 89–92). At this stage, Plaintiff need not support these factual allegations with evidence; she need only

allege facts that support a plausible inference of causation. *See Iqbal*, 556 U.S. at 675; *Twombly*, 550 U.S. at 554.

The analysis of causation does not end here, however. The parties focus on the connection between Defendant's denial of a TPP and the COA foreclosure. But this picture of causation is incomplete. The CFA requires a causal connection between the alleged unlawful conduct and the resulting harm. *Arcand*, 673 F. Supp. 2d at 303. Defendant's denial of the TPP is not one of the unlawful acts that Plaintiff alleges. Instead, the alleged unlawful acts are (1) misrepresentation of Plaintiff's qualification for loan modification (Third Am. Compl. ¶ 118), (2) failure implement a fix for the calculation errors (*id.* ¶ 120), and (3) knowingly concealing or omitting information of the calculation errors (*id.* ¶ 121). Because Plaintiff seeks to recover under the CFA, she must allege that these acts, not merely the modification denial associated with them, caused her loss. The Court must, therefore, evaluate the causation of each alleged act.

Plaintiff failed to allege that Defendant's misrepresentation caused her loss. Defendant's calculation error caused them to deny Plaintiff's application. To the extent that Defendant's communications expressed that Plaintiff was ineligible for loan modification, that misrepresentation was also caused by the calculation error. Thus, the denial and the alleged misrepresentation shared a common cause. This does not, however, suggest that the misrepresentation caused the denial. Other cases involving CFA claims related to TPPs illustrate the importance of this distinction. In *Giordano*, for example, the defendant intentionally led the borrowers to believe they would be eligible for permanent loan modification, inducing continued TPP payments. *Giordano v. Saxon Mortg. Servs., Inc.*, Civ. No. 12-7937, 2014 WL 4897190, at *5 (D.N.J. Sept. 30, 2014) ("Put differently, but for the Defendant's deception, Plaintiffs would not have entered into the TPP and would have avoided the fees, penalties, and other charges

accrued while performing under the TPP."); *see also Smith v. Citimortgage, Inc.*, Civ. No. 15-7629, 2015 WL 12734793, at *6 (D.N.J. Dec. 22, 2015) (involving similar facts). In these cases, the misrepresentation of ineligibility directly caused the plaintiffs to continue payment under false pretenses. That causal connection is lacking here.

Plaintiff also neglects to allege that Defendant's failure to implement a fix for the calculation errors caused her loss. Put simply, the timeline does not support this causation. Plaintiff sought loan modification in February 2012. (Third Am. Compl. ¶ 64.) Defendant denied loan modification on or around December 2, 2013. (*Id.* ¶ 66.) Defendant first discovered that attorney's fees were being calculated incorrectly in August 2013. (*Id.* ¶ 50.) According to Plaintiff's complaint, however, the temporary fix was not available until January 2014. (*Id.* ¶ 54.) Even if Defendant implemented the fix immediately upon its proposal, and even if Plaintiff's application was processed through the automated system on the very last day of its review, the fix would have come too late to prevent Plaintiff's denial.

Finally, Plaintiff failed to allege that Defendant's concealment or omission of information regarding the calculation error caused her loss. The problem identified in August 2013 was a problem with the HPA tool. (*Id.* ¶ 50.) But Van Brunt's loan was analyzed using the SLoaD tool. (*Id.* ¶ 46.) Indeed, Defendant did not learn of the SLoaD error until 2018. (*Id.* ¶ 59.) Defendant could not, then, have concealed information of SLoaD tool errors because they were not aware of them. Even if Defendant had sent Plaintiff the "list" of potential issues with the HPA tool (*Id.* ¶ 51), Plaintiff alleges no facts to suggest how learning of a set of issues with an automated tool unrelated to the one used to calculate her loan modification would have prevented her loan modification denial.

Accordingly, Defendant's Motion to Dismiss as it relates to Count I of the Third Amended Complaint will be granted and Count I will be dismissed.

### B.  Count II: Common Law Fraud

Plaintiff next alleges a claim for common law fraud, based on Defendant's misrepresentation of Plaintiff's ineligibility for loan modification. (Third Am. Compl. ¶¶ 125–132.) Defendant moves to dismiss Plaintiff's common law fraud claim, arguing that Plaintiff has failed to adequately plead reliance. (Moving Br. at 19–20.)

In New Jersey, the elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari*, 148 N.J. at 619 (1997) (citing *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624–25 (1981)).

The reliance element of a common law fraud claim is more stringent than the CFA's causal nexus requirement. *See Fink v. Ricoh Corp.*, 365 N.J. Super. 520 (Law. Div. 2003). Thus, when a plaintiff fails to allege a causal nexus under the CFA, a common law fraud claim based on the same misrepresentation is also undermined. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527–28 (D.N.J. 2008).

Accordingly, Defendant's Motion to Dismiss as it relates to Count II of the Third Amended Complaint will be granted and Count II will be dismissed.

### C.  Count III: Intentional Infliction of Emotional Distress

Finally, Plaintiff alleges a claim for intentional infliction of emotional distress ("IIED"). (Third Am. Compl. ¶¶ 133–49.) Defendant moves to dismiss the count, arguing (1) Defendant's

14

alleged conduct was not "extreme and outrageous," (2) Plaintiff failed to allege intent, and (3) Plaintiff failed to allege causation.  (Moving Br. at 20–26.)

In New Jersey, a *prima facie* claim for IIED requires three elements: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988)).

Extreme and outrageous conduct is conduct that is "atrocious" and "utterly intolerable in a civilized community."  *Id.* (quoting *Buckley*, 111 N.J. at 366).  Under New Jersey law, outrageous conduct is a threshold only met in "extreme cases." *Fogarty v. Household Fin. Corp. III*, Civ. No. 14-4525, 2015 WL 852071, at *55 (D.N.J. Feb. 25, 2015) (quoting *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 23 (App. Div. 2001)).

Plaintiff alleges a series of actions and inactions by Defendant qualify as extreme and outrageous, including: (1) Defendant failed to oversee, audit, and test its servicing, modification, and foreclosure practices, despite repeated warnings from regulators and consent orders mandating increased vigilance (Third Am. Compl. ¶¶ 136–37); (2) Defendant ignored the calculation error when it initially discovered it in August 2013 and identified errors in January 2014 (*id.* ¶ 138); (3) Defendant failed to address the issues after the July 2014 summit despite knowing the risk that it could be denying loan modifications due to overstated fees (*id.* ¶ 139); (4) Defendant denied funding for the solution recommended by a new project manager in 2014 (*id.* ¶ 140); (5) Defendant continued to fail to address the problem after warnings by an operational risk consultant in May 2015, (*id.* ¶ 141); (6) Defendant concealed the error until September 2018, (*id.* ¶ 142).

Defendant argues that the calculation errors in the automated system were a mistake, and that a mistake is insufficient to meet the threshold of extreme and outrageous. (Moving Br. at 22); *see Decker v. Princeton Packet*, 224 N.J. Super. 726, 728 (App. Div. 1988). Defendant further argues that failure to oversee, audit, and test its practices in compliance with consent orders does not rise to the threshold of extreme and outrageous. (Moving Br. at 24); *see Duncan v. Wells Fargo Bank, N.A.*, Civ. No. 19-00172, 2021 WL 22086, at *8 (D.N.J. Jan. 4, 2021). Plaintiff responds by asserting that Defendant's conduct was outrageous because Defendant abused its position of power with respect to Plaintiff. (Opp'n Br. at 30); *see Taylor v. Metzger*, 152 N.J. 490, 512 (1998).

Courts in other jurisdictions have determined whether a defendant's conduct was sufficiently severe to support IIED claims under the relevant state law. *Thomas v. Wells Fargo Bank, N.A.*, Civ. No. 12-229, 2021 WL 2650360, at *9 (N.D. Ga. Jan. 19, 2021) (dismissing a claim for intentional infliction of emotional distress because "sharp or sloppy business practices" cannot support such a claim under Georgia law); *Hernandez v. Wells Fargo & Co.*, Civ. No. 18-07354, 2019 WL 2359198, at *6 (N.D. Cal. June 3, 2019) (allowing a claim to proceed for IIED because Wells Fargo "knowingly and repeatedly refused to address these problems").

As the Court has already determined in its prior decision, Defendant's alleged conduct did not rise to the level of extreme and outrageous conduct under New Jersey law. (ECF No. 65 at 17–20.) Plaintiff has failed to allege any new facts that would support a different conclusion. Indeed, Plaintiff's allegations remain substantially the same. She alleges that Defendant had reason to know of the calculation errors and failed to act appropriately in a timely manner, despite consent orders demanding increased vigilance. (Third Am. Compl. ¶¶ 133–149.) The Court has already explained why this alleged conduct does not rise to the level of extreme and outrageous

under New Jersey law, and it incorporates that reasoning here. (ECF No. 65 at 17–20.) The Court will briefly, however, summarize that reasoning and address the argument raised in Plaintiff's opposition brief.

To support a claim for IIED, conduct must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 111 N.J. at 366 (quoting Restatement (Second) of Torts § 46 cmt. d). Defendant's erroneous calculation and subsequent handling of the situation, while less than ideal, does not rise to this extreme level. *See Fogarty*, 2015 WL 852071, at *18 (finding no outrageous conduct where defendants mishandled paperwork, provided an incorrect phone number for questions, and rejected request to re-examine and rescind a mortgage-based fraud with minimum investigation). Nor does Defendant failing to comply with consent orders rise to the level of extreme and outrageous. *See Dumont v. Litton Loan Servicing, LP*, Civ. No. 12-2677, 2014 WL 815244, at *19 (S.D.N.Y. Mar. 3, 2014).

Plaintiff does not point to any case in which conduct sufficiently like Defendant's conduct supported a claim for IIED. Plaintiff's opposition brief cites *Taylor* as analogous. (Opp'n Br. at 30); *see Taylor*, 152 N.J. 490, 512 (1998). But that case dealt with a derogatory racial comment by a supervisor to a subordinate employee. *Taylor* 152 N.J. at 494–95. Plaintiff attempts to connect the cases by arguing that here, as in *Taylor*, Defendant was "vested with significant power" over Plaintiff. (Opp'n Br. at 30.) In *Taylor*, however, the New Jersey Supreme Court reasoned that a jury could have found the defendant's conduct extreme and outrageous in part due to the "power dynamics of the workplace." *Taylor* 152 N.J. at 511. Thus, the power dynamic was a unique circumstance that heightened the extreme and outrageous nature of the conduct. Here, however, the power dynamic is not a separate, compounding factor. Rather, the relationship

17

between the parties was that "[Defendant] was responsible for implementing the calculation tools in connection with deciding whether [Plaintiff] would keep her home or not." (Opp'n Br. at 30.) Far from being a unique circumstance, this power dynamic is simply a necessary part of the alleged conduct. It does not add anything to the conduct that would render it extreme and outrageous.

Because the claim will be dismissed on the grounds that Defendant's conduct does not rise to the level of extreme and outrageous, the Court need not address Defendant's arguments regarding failure to allege intent and causation.

Accordingly, Defendant's Motion to Dismiss as it relates to Count III of the Third Amended Complaint will be granted and Count III will be dismissed.

### D.     **Dismissal with Prejudice**

When a court dismisses a claim under Rule 12(b)(6), the plaintiff is entitled to amend her complaint unless doing so would be "inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). This standard originates from the tradition of denying leave to amend a complaint under Rule 15(a) for undue delay, bad faith, dilatory motive, unfair prejudice, or futility, the first four of which constitute instances where amendment would be inequitable. *Id.* at 108 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the grant or denial of an opportunity to amend is within the discretion of the Court, refusal absent justification is improper. *Id.* (quoting *Foman*, 371 U.S. at 182).

In this case, granting Plaintiff leave to amend would be futile. Plaintiff's complaint does not support a cause of action, not for want of fully articulated factual events, but rather because those events do not support her legal claims. The substance of Plaintiff's allegations has remained the same, and this Court cannot intuit from the complaint the existence of any omitted facts that would support Plaintiff's causes of action. And although no set number of unsuccessful

18

amendments proves futility, *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 n.4 (3d Cir. 2003), repeated unsuccessful amendments with little change supports the conclusion that further amendment would be futile.

Granting leave to amend would also be inequitable. Plaintiff filed her first complaint on January 7, 2019. (ECF No. 1.) The burden of litigation has already been imposed on the Defendant for more than four years. If this Court granted leave to amend, the attendant delay would be prejudicial to Defendant and therefore inequitable.

### VI.    CONCLUSION

For the reasons stated above, the Court will GRANT the Motion and DISMISS the Complaint WITH PREJUDICE.

Date: **July 11, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
